JS 44   (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

J. AMBROGI FOOD DISTRIBUTION, INC.

**DEFENDANTS**

TEAMSTERS LOCAL UNION NO. 929

**(b)** County of Residence of First Listed Plaintiff   Gloucester County, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Baker & Hostetler, Cira Centre, 12th Floor
2929 Arch Street, Philadelphia, PA 19104 (215) 568-3100

Attorneys *(If Known)*

Neal Goldstein, Esq.; Spear Wilderman, P.C.
230 So. Broad Street, Ste. 1400, Phila., PA 19102

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government
       Plaintiff
- [x] 3  Federal Question
       *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government
       Defendant
- [ ] 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                   *and One Box for Defendant)*

|                          | PTF | DEF |                                                        | PTF | DEF |
|--------------------------|-----|-----|--------------------------------------------------------|-----|-----|
| Citizen of This State    | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|----------|-------|-------|---------------------|------------|----------------|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [x] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 790 Other Labor Litigation | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 791 Employee Retirement Income Security Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
LMRA 301, 29 U.S.C. 185

Brief description of cause:
Breach of four collective bargaining agreements

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
04/26/2021

SIGNATURE OF ATTORNEY OF RECORD
**/s/ Christian R. White**

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: J. Ambrogi Food Distribution, Inc., 1400 Metropolitan Avenue, West Deptford, New Jersey 08066

Address of Defendant: Teamsters Local Union No. 929, 4345 Frankford Avenue, Philadelphia, PA 19124

Place of Accident, Incident or Transaction: West Deptford, New Jersey

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 04/26/2021    /s/ Christian R. White    311027
                    *Must sign here*
                    *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

**CIVIL: (Place a √ in one category only)**

| A. | *Federal Question Cases:* | | B. | *Diversity Jurisdiction Cases:* |
|---|---|---|---|---|
| ☐ 1. | Indemnity Contract, Marine Contract, and All Other Contracts | | ☐ 1. | Insurance Contract and Other Contracts |
| ☐ 2. | FELA | | ☐ 2. | Airplane Personal Injury |
| ☐ 3. | Jones Act-Personal Injury | | ☐ 3. | Assault, Defamation |
| ☐ 4. | Antitrust | | ☐ 4. | Marine Personal Injury |
| ☐ 5. | Patent | | ☐ 5. | Motor Vehicle Personal Injury |
| ☑ 6. | Labor-Management Relations | | ☐ 6. | Other Personal Injury *(Please specify):* _____ |
| ☐ 7. | Civil Rights | | ☐ 7. | Products Liability |
| ☐ 8. | Habeas Corpus | | ☐ 8. | Products Liability – Asbestos |
| ☐ 9. | Securities Act(s) Cases | | ☐ 9. | All other Diversity Cases |
| ☐ 10. | Social Security Review Cases | | | *(Please specify):* _____ |
| ☐ 11. | All other Federal Question Cases | | | |
| | *(Please specify):* _____ | | | |

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Christian R. White , counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 04/26/2021    /s/ Christian R. White    311027
                    *Sign here if applicable*
                    *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **J. AMBROGI FOOD DISTRIBUTION, INC.,**<br>1400 Metropolitan Avenue<br>West Deptford, New Jersey 08066<br><br>                        Plaintiff,<br><br>    vs.<br><br>**TEAMSTERS LOCAL UNION NO. 929**,<br>4345 Frankford Avenue<br>Philadelphia, Pennsylvania 19124<br><br>                        Defendant. | CASE NO. _____<br><br>JUDGE _____<br><br>**JURY TRIAL DEMAND ENDORSED HEREON** |

## COMPLAINT FOR DAMAGES AND OTHER EQUITABLE RELIEF

Plaintiff J. Ambrogi Food Distribution, Inc. (the "Company" or "JAF"), for its Complaint against Defendant Teamsters Local Union No. 929 (the "Union"), alleges and states as follows:

## NATURE OF THE CASE

1.    This is an action for damages and declaratory relief under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for the Union's breach of four collective bargaining agreements with JAF.  The collective bargaining agreements each contain a no-strike provision prohibiting the Union from causing any stoppage of work at JAF during the contracts' respective terms.  Despite this prohibition, the Union has caused work stoppages at the Company and will continue to do so in the absence of declaratory relief from the Court finding that such disruptions are unlawful.

## THE PARTIES

2.     JAF is a Pennsylvania corporation engaged in the produce distribution industry with a facility located at 1400 Metropolitan Avenue, West Deptford, New Jersey 08066 (the Company's "New Jersey facility").  The Company is an employer engaged in an industry affecting commerce as defined in Sections 2(2), (6) and (7) of the National Labor Relations Act, 29 U.S.C. §§ 152(2), (6) and (7).

3.     The Union is a labor organization representing employees in an industry affecting commerce as defined in Sections 2(5), (6) and (7) of the National Labor Relations Act, 29 U.S.C. §§ 152(5), (6) and (7).  The Union's principal office is located at 4345 Frankford Avenue, Philadelphia, Pennsylvania 19124.  Defendant Union represents employees of the Company for the purposes of collective bargaining.

## JURISDICTION AND VENUE

4.     Because this action alleges a violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce, this Court has jurisdiction under Section 301 of the Labor Management Relations Act, 29 U.S.C. §§ 185(a) and (c), and under 28 U.S.C. § 1331.

5.     Because the Union maintains its principal office in this judicial district and because the Union's duly authorized officers and/or agents are engaged in representing or acting for employee members in this judicial district, venue is proper under 28 U.S.C. § 1391(b)(2) and 29 U.S.C. § 185(c).

## RELEVANT FACTS

**A.      The Collective Bargaining Agreements.**

6.      The Union represents the Company's drivers, pullers, packers, custodians and warehouse employees working at JAF's New Jersey facility (the "bargaining unit employees").

7.      The Company and the Union are parties to the following four collective bargaining agreements that establish the wages, hours and working conditions for the bargaining unit employees, each of which is effective from July 1, 2017 through June 30, 2022:

(i)      A collective bargaining agreement covering drivers, a true and accurate copy of which is attached as Exhibit A;

(ii)      A collective bargaining agreement covering packers and custodians, a true and accurate copy of which is attached as Exhibit B;

(iii)      A collective bargaining agreement covering pullers, a true and accurate copy of which is attached as Exhibit C; and

(iv)      A collective bargaining agreement covering warehouse employees, a true and accurate copy of which is attached as Exhibit D.

The above collective bargaining agreements are collectively referred to herein as the "CBAs."

8.      Each of the CBAs constitutes a contract between an employer and a labor organization representing employees in an industry affecting commerce within the meaning of 29 U.S.C. § 185(a).

9.      Article 15 of each CBA ("Article 15") provides a grievance procedure for resolution of disputes among the parties that culminates in final and binding arbitration.

10.      Article 15, Section 3 furthermore includes a provision prohibiting the Union from instigating a stoppage of work "for any reason whatsoever:"

> Except for the failure of the Employer to abide by an arbitration award after a decision by the arbitrator, the Union agrees that there shall be no strikes, stoppages of work or slowdowns, for any reason whatsoever during the term of this Agreement.

**B.** **The Anticipatory Withdrawal Of Recognition From The Union By A Commonly Owned Entity.**

11.    Kristy's Kuts, Inc., an entity that shares common ownership with JAF, previously had a collective bargaining relationship with the Union in regard to its full-time and regular part-time non-exempt production employees.

12.    On February 10, 2021, Kristy's Kuts' full-time and regular part-time non-exempt production employees submitted a petition to Kristy's Kuts stating that a majority of the employees no longer wished to be represented by the Union.

13.    Kristy's Kuts (through its labor counsel) accordingly notified the Union on February 11, 2021 that it had received objective, good faith evidence that the Union no longer enjoyed majority support.  Based on such evidence and consistent with its obligations under the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq*., Kristy's Kuts advised the Union on February 11 that it would withdraw recognition from the Union upon expiration of the current Kristy's Kuts collective bargaining agreement on April 30, 2021 (the "anticipatory withdrawal").

14.    Union President Rocky Bryan, Jr. responded by email the following day, on February 12.  In addition to other threats contained in his February 12 email, Bryan threatened on behalf of the Union to "commence strike action against Your [*sic*] organization up to and including extending picket line [*sic*] whenever and wherever necessary" unless the parties negotiated a new collective bargaining agreement prior to April 30.

C.    **The Union's March 19, 2021 Breach Of Article 15, Section 3**.

15.    On or about March 19, 2021, Union officer John Bryan, the Union's Recording Secretary, physically prevented a non-bargaining unit individual from unloading product from a truck on JAF premises.

16.    The individual driving the truck opened the door of the cab to address John Bryan. Bryan asked the individual whether he was a member of the Union.

17.    When the driver replied that he was not a Union member, John Bryan asked "why the f**k are you driving this truck?"  Bryan also asked "who the f**k put you in this truck?"

18.    The driver attempted to close the door to the cab to continue backing the truck up to a loading dock.  John Bryan held the door open with his forearm and prevented the driver from closing the cab door.

19.    Bryan continued to prevent the driver from unloading the truck until other facility personnel came outside to address him.

20.    John Bryan was acting as an officer, agent and/or representative of the Union in preventing the Company from unloading the truck referenced in Paragraphs 15 through 19, above.

21.    By preventing the unloading of the truck as set forth in Paragraphs 15 through 19, above, the Union, through its officer, agent and representative, caused a stoppage of work at JAF.

**D.    The Union's March 25, 2021 Breach of Article 15, Section 3.**

22.    On or about March 25, 2021, Union officer Rocky Bryan, Jr. physically prevented a non-bargaining unit individual from bringing a truck with Company product onto Kristy's Kuts' premises.

23.    Rocky Bryan, Jr. parked his car in the entrance to the parking lot of the Kristy's Kuts facility, blocking the truck with Company product from entering Kristy's Kuts' premises.

24.    The driver drove the truck away from the Kristy's Kuts facility, and subsequently returned to make a second attempt to enter Kristy's Kuts' premises.

25.    Rocky Bryan, Jr. was still parked in the entrance to the Kristy's Kuts parking lot, thus continuing to block access.

26.    When the driver rolled down the window to the truck's cab, Bryan shouted that the driver was taking away a "Union job," and that Bryan is planning to "shut down" both Kristy's Kuts and JAF.

27.    The Company contacted law enforcement as a result of Bryan's blocking of ingress and egress and the stoppage of work that resulted from such unlawful activity.

28.    Kristy Ambrogi, owner of JAF, came outside after law enforcement personnel arrived.  Rocky Bryan, Jr. shouted that Ambrogi is a "b*tch," and repeated his threat to "shut down" Kristy's Kuts and JAF.

29.    Rocky Bryan, Jr. continued to block access to the Kristy's Kuts facility until being instructed to leave by law enforcement personnel.

30.    Rocky Bryan, Jr. was acting as an officer, agent and/or representative of the Union in preventing the truck with Company product from accessing Kristy's Kuts premises, as set forth in Paragraphs 22 through 29, above.

31.    By temporarily preventing the truck with Company product from entering Kristy's Kuts' premises, the Union, through its officer, agent and representative, caused a stoppage of work at JAF.

**E.    The Union's Notice Of An Unlawful "Pending Strike."**

32.    On or about April 14, 2021, the Union sent the notice attached as Exhibit E to JAF and Kristy's Kuts employees titled "TEAMSTERS LOCAL 929 UPDATE NOTICE OF PENDING STRIKE" (the "Strike Notice").

33.    The Strike Notice announced a Union meeting on April 25, 2021 to answer questions regarding the Union's plan to conduct a strike at JAF in the near future in direct violation of the no-strike language in the CBAs.

34.    Upon information and belief, the Union conducted the April 25 meeting and directed employees to engage in an unlawful strike against JAF during the week of May 2.

35.    Upon information and belief, one or more employees who attended the April 25 meeting expressed concern over participating in the Union's planned strike against JAF in direct violation of the CBAs.

36.    Upon information and belief, Rocky Bryan, acting on behalf of the Union, threatened employees who attended the April 25 meeting that he would fine them "thousands of dollars" if they do not participate in the Union's unlawful strike against JAF.

37.    Upon information and belief, Rocky Bryan, acting on behalf of the Union, threatened employees who attended the April 25 meeting that he would expel them from the Union if they do not participate in the Union's unlawful strike against JAF.

38.    Upon information and belief, Rocky Bryan, acting on behalf of the Union, threatened employees who attended the April 25 meeting that he would ensure that they never

work in another Union-represented job if they do not participate in the Union's unlawful strike against JAF.

39.    Upon information and belief, Rocky Bryan, acting on behalf of the Union, told the employees who attended the April 25 meeting that his goal in striking is to shut down JAF, in willful disregard of the provisions in the CBAs quoted above that explicitly prohibit all "strikes, stoppages of work [and] slowdowns, for any reason whatsoever during the term of [the CBAs]."

40.    Rocky Bryan, Jr.'s February 12 email threatening on behalf of the Union to "commence strike action against Your [*sic*] organization up to and including extending picket line [*sic*] whenever and wherever necessary" combined with (i) his repeated threats on March 25 to "shut down" both Kristy's Kuts and JAF, (ii) John Bryan's unlawful activity on March 19, and (iii) the threats made on behalf of the Union by Rocky Bryan, Jr. at the Union's April 25 meeting demonstrate that the Union intends to continue instigating intermittent stoppages of work to disrupt JAF's operations.

41.    Because the Company deals largely with perishable inventory on a regular basis, such intermittent stoppages of work present the threat of significant monetary damages and loss of customers.

## COUNT ONE: VIOLATION OF COLLECTIVE BARGAINING AGREEMENTS

42.    The Company re-alleges and incorporates by reference the allegations set forth above.

43.    Article 15, Section 3 of the CBAs to which the Company and the Union are parties (*see* Exs. A through D) prohibits the Union from instigating a strike or stoppage of work "for any reason whatsoever" in regard to the Company's operations.

44.     Article 15, Section 3 of the CBAs is therefore a limitation on the Union's statutory right to strike that effectively forbids strikes and stoppages of work "for any reason whatsoever" during the entire term of the CBAs.

45.     The Union, through its officers, agents and representatives identified in the above paragraphs, has instigated intermittent stoppages of work in regard to the Company's operations and has stated its imminent intention to instigate a strike at JAF.

46.     The Union, through its officers, agents and representatives, has therefore violated the prohibition against strikes and stoppages of work "for any reason whatsoever," as set forth in Article 15, Section 3 of the CBAs.

47.     The Union's actions in the above paragraphs constitute a repudiation of the CBAs.

48.     Because the Company deals largely with perishable inventory, the Union's violation of the CBAs has caused and will continue to cause damages to the Company as a natural and probable consequence, the precise amount of which cannot be ascertained at this time but which the Company reasonably believes will amount to between Three and Four Million Dollars ($3,000,000 to $4,000,000).

49.     In addition, the Union's violation has caused and will continue to cause immediate irreparable damage to the business, valuable reputation and goodwill of the Company in that it will be unable to meet its contractual commitments to its customers.

## COUNT TWO:  DECLARATORY JUDGMENT

50.     The Company re-alleges and incorporates by reference the allegations set forth above.

51.     Article 15, Section 3 of the CBAs is therefore a limitation on the Union's statutory right to strike that effectively forbids strikes and stoppages of work "for any reason whatsoever" during the entire term of the CBAs.

52.     There is a substantial controversy of immediate sufficiency and reality in that based on the communications by Mr. Bryan and the notice of pending strike, that the Union will continue to strike in direct violation of the CBAs.

53.     The Company is entitled to a judicial declaration that the CBAs prohibit the Union from ordering, maintaining, sanctioning or permitting a strike or stoppage of work at JAF.

54.     The Company is entitled to a judicial declaration that the Union's planned strike at JAF will violate the CBAs

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests:

A.     Judgment pursuant to 28 U.S.C. § 2201 finding that the Company and the Union are parties to the CBAs attached as Exhibits A through D, and that such CBAs prohibit the Union from ordering, maintaining, sanctioning or permitting a strike or stoppage of work at JAF;

B.     Judgment pursuant to 28 U.S.C. § 2201 finding that the Union's "pending strike" at JAF will violate the CBAs;

C.     Judgment pursuant to 28 U.S.C. § 2201 finding that the Union's instigation of intermittent stoppages of work at JAF on March 19 and 25 were in violation of the CBAs;

D.     Monetary damages in an amount to be determined at trial;

E.     Pre- and post-judgment interest in an amount to be determined at trial;

10

F.      Costs and other legal fees; and

G.      Any other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demands a trial by jury of all issues alleged in its Complaint that are so triable

pursuant to Rule 38 of the Federal Rules of Civil Procedure.


Dated: April 26, 2021                              Respectfully submitted,

                                                   */s/ Christian R. White*
                                                   Christian R. White (PA Bar No. 311027)
                                                   crwhite@bakerlaw.com
                                                   BAKER & HOSTETLER LLP
                                                   Cira Centre, 12th Floor
                                                   2929 Arch Street
                                                   Philadelphia, PA 19104
                                                   Telephone: (215) 568-3100
                                                   Facsimile: (215) 568-3439

                                                   Mark W. DeLaquil *
                                                   mdelaquil@bakerlaw.com
                                                   BAKER & HOSTETLER LLP
                                                   1050 Connecticut Ave. N.W.,
                                                   Suite 1100
                                                   Washington, DC 20036
                                                   Telephone: (202) 861-1527
                                                   Facsimile: (202) 861-1783

                                                   Todd A. Dawson *
                                                   tdawson@bakerlaw.com
                                                   BAKER & HOSTETLER LLP
                                                   Key Tower, Suite 2000
                                                   127 Public Square
                                                   Cleveland, OH 44114-1214
                                                   Telephone: (216) 621-0200
                                                   Facsimile: (216) 696-0740

                                                   **Pro hac vice applications forthcoming*

                                                   *Attorneys for Plaintiff*
                                                   *J. Ambrogi Food Distribution, Inc.*

# EXHIBIT A



# AGREEMENT

between

J. AMBROGI FOOD DIST., INC.
DRIVERS

and

TEAMSTERS LOCAL UNION NO. 929

affiliated with

INTERNATIONAL BROTHERHOOD OF TEAMSTERS
PENNSYLVANIA CONFERENCE OF TEAMSTERS
and
JOINT COUNCIL 53

TERM OF CONTRACT:

JULY 1, 2017 TO JUNE 30, 2022

# INDEX

ARTICLE 1 - UNION RECOGNITION ..................................................................................................1
ARTICLE 2 - UNION SECURITY AND CHECKOFF .....................................................................1
ARTICLE 3 - TRANSFER OF COMPANY TITLE OR INTEREST .........................................2
ARTICLE 4 - UNION ACTIVITIES ...................................................................................................2
ARTICLE 5 - PROTECTION OF RIGHTS........................................................................................3
ARTICLE 6 – SENIORITY ....................................................................................................................3
ARTICLE 7 - MAINTENANCE OF STANDARDS .......................................................................5
ARTICLE 8 - SHOP STEWARDS .......................................................................................................5
ARTICLE 9 - VACATIONS....................................................................................................................6
ARTICLE 10 - HEALTH, WELFARE AND INSURANCE ........................................................8
ARTICLE 11 - TEAMSTERS PENSION FUND .............................................................................8
ARTICLE 12 - LOCAL 929 RETIREMENT PLAN ....................................................................10
ARTICLE 13 - INSPECTION AND PRIVILEGES .....................................................................11
ARTICLE 14 - DISCHARGE OR SUSPENSION ........................................................................11
ARTICLE 15 - GRIEVANCE PROCEDURE - ARBITRATION ............................................13
ARTICLE 16 - FUNERAL LEAVE ...................................................................................................14
ARTICLE 17 - WAGES..........................................................................................................................14
ARTICLE 18 - WORK WEEK .............................................................................................................14
ARTICLE 19 - HOLIDAYS ..................................................................................................................15
ARTICLE 20 - SUPPLYING HELP ...................................................................................................16
ARTICLE 21 - GENERAL PROVISIONS.......................................................................................16
ARTICLE 22 - MILITARY SERVICE...............................................................................................18
ARTICLE 23 - COMPENSATION CLAIMS ..................................................................................18
ARTICLE 24 - MANAGEMENT RIGHTS......................................................................................18
ARTICLE 25 - EQUIPMENT, ACCIDENTS AND REPORTS ...............................................18
ARTICLE 26 - WORK ASSIGNMENTS..........................................................................................19
ARTICLE 27 - EMPLOYEE'S BAIL .................................................................................................19
ARTICLE 28 - ABSENCE.....................................................................................................................20
ARTICLE 29 - JURY DUTY.................................................................................................................20
ARTICLE 30 - SICK DAYS..................................................................................................................21
ARTICLE 31 - LATENESS AND ABSENCE POLICY ..............................................................21
ARTICLE 32 - LABOR/MANAGEMENT COMMITTEE........................................................22
ARTICLE 33 - IBT D.R.I.V.E. AUTHORIZATION AND DEDUCTION...........................22
ARTICLE 34 - TEAMSTERS LOCAL 929 ....................................................................................23
POLITICAL ACTION COMMITTEE ("PAC") ...........................................................................23
ARTICLE 35 - TERMINATION CLAUSE.......................................................................................23

THIS AGREEMENT entered into as of this 1st day of July 2017, by and between J. **AMBROGI FOOD DISTRIBUTION, INC. (DRIVERS)** (hereinafter referred to as the "Employer") and **TEAMSTERS LOCAL UNION NO. 929** of Philadelphia, Pennsylvania (hereinafter referred to as the "Union"), affiliated with the International Brotherhood of Teamsters, PA Conference of Teamsters and Joint Council No. 53.

NOW THIS 1st day of July 2017, the parties hereto agree as follows:

In this agreement, whenever a word is used in the masculine gender, it is intended to and does include both men and women equally.

## ARTICLE 1 - UNION RECOGNITION

The Employer recognizes the Union as the sole and exclusive bargaining agency during the life of this Agreement for all classifications of employees covered by this contract and coming under the jurisdiction of the Union in Philadelphia, Pennsylvania and vicinity as provided by the National Labor Relations Act in Case No. 4-RC-18550.

## ARTICLE 2 - UNION SECURITY AND CHECKOFF

1.    Union Security

All present employees who are members of the Local Union on the effective date of this Agreement shall remain members of the Local Union in good standing as a condition of employment. All present employees who are not members of the Local Union and all employees who are hired hereafter shall become and remain members in good standing of the Local Union as a condition of employment on and after the 31st day following the effective date of this section or the date of this Agreement, whichever is the later. This provision shall be made and become effective as of such time as it may be made and become effective under the provisions of the National Labor Relations Act, but not retroactively.

The failure of any person to become a member of the Union at the required time shall obligate the Employer, upon written notice from the Union to such effect and to the further effect that Union membership was available to such person on the same terms and conditions generally available to other members, to forthwith discharge such person. Further, the failure of any person to maintain his Union Membership in good standing as required herein shall, upon written notice to the Employer by the Union to such effect, obligate the Employer to discharge such person.

In the event of any change in the law during the term of this Agreement the Employer agrees that the Union will be entitled to receive the maximum Union Security which may be lawfully permissible.

No provision of this Article shall apply in any state to the extent that it may be prohibited

by state law. If under applicable state law additional requirements must be met before any such provision may become effective, such additional requirements shall first be met.

If any provisions of this Article is invalid under the law of any state wherein this Agreement is executed, such provision shall be modified to comply with the requirements of state law or shall be re-negotiated for the purpose of adequate replacement. If such negotiation shall not result in a mutually satisfactory agreement, the Union shall be permitted all legal or economic recourse.

2.    Check off

The Employer agrees to deduct from the pay of all employees covered by this Agreement the dues, initiation fees and/or uniform assessments of the Local Union having jurisdiction over such employees and agrees to remit to said Local Union all such deductions prior to the end of the month for which the deduction is made. Where laws require written authorization by the employees, the same is to be furnished in the form required. No deduction shall be made which is prohibited by applicable law.

The Employer shall add to the list submitted to the Union the names of all new employees hired since the last list was submitted and delete the names of employees who are no longer employed.

## ARTICLE 3 - TRANSFER OF COMPANY TITLE OR INTEREST

This Agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. It is understood by this section that the parties hereto shall not use any leasing device to a third party to evade this contract.

The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, assignee, etc., of the operation covered by this Agreement or any part thereof Such notice shall be in writing with a copy to the Union at the time the seller, transferor or lessor executes a contract of the type of transaction as herein described.

In the event the Employer fails to give the notice herein required, it shall be liable to the Union and to the employees covered for all damages sustained as a result of such failure to give such notice.

## ARTICLE 4 - UNION ACTIVITIES

Any employee member of the Union acting in any official capacity whatsoever shall not be discriminated against for his acts as such officer of the Union so long as such acts do not interfere with the conduct of the Employer's business nor shall any employee covered by this Agreement be discriminated against, discharged, laid off or otherwise punished because of Union membership or activities.

## ARTICLE 5 - PROTECTION OF RIGHTS

1.    Picket Lines

It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action nor shall such employee be permanently replaced in the event an employee refuses to enter upon any property involved in a primary labor dispute, or refuses to go through or work behind any primary picket line, including the primary picket line of Unions party to this Agreement, and including primary picket lines at the Employer's places of business.

2.    Struck Goods

It shall not be a violation of this Agreement and it shall not be a cause for discharge or disciplinary action nor shall such employee be permanently replaced if any employee refuses to perform any service which his Employer undertakes to perform as an ally of any Employer or person whose employees are on strike, and which service, but for such strikes, would be performed by the employees of the Employer or person on strike.

## ARTICLE 6 – SENIORITY

1.    Seniority

Straight seniority shall prevail particularly as to layoffs, and re-employment, promotions, transfers from one job to another or from one department to another within the bargaining unit, or for assignments for overtime work and shall be conditioned upon the ability of the employee to perform the duties of the job to which seniority privileges may otherwise entitle him.

2.    Layoffs and Recall

a.    In the event of layoffs, employees shall be laid off in order of their seniority by job classification and shall be recalled in the inverse order to their layoff. An employee to be laid off in his job classification shall bump the employee with less seniority in a job paying the same or less in which he is experienced and shall receive the rate of pay of the job to which he bumps. If an employee's job is abolished he shall be free to bump anywhere his seniority will allow, provided he is capable of performing the job.

b.    When the bargaining unit workforce is again increased, the employees are to return to work in the reverse order in which they were laid off according to their seniority roster.

c.    A registered letter mailed to the employee's last known mailing address will constitute reasonable effort by the Employer to re-engage employee laid off. A registered copy of such letter shall be mailed to the Union.

3.    Injury Absence

Any employee who has been injured in the course of his employment shall retain and accrue his seniority during such absence for a maximum of one year for reemployment purposes only.

4.    Loss of Seniority

All rights of an employee accrued to him under this Article shall be lost in the event of a break in his continuous service for the employer caused by any one of the following:

  a. Violation of employer's absenteeism or lateness policy;
  b. Dishonesty;
  c. Insubordination;
  d. Engaging in any form of sexual, religious or racial harassment;
  e. Consumption of alcoholic beverages on Company premises, reporting to work intoxicated or consuming intoxicating beverages during working hours;
  f. Using or being under the influence of intoxicating beverages, marijuana, hallucinogens or other illegal drugs or narcotics on Company premises or while conducting Company business.
  g. Voluntary termination of employment;
  h. Any discharge for just cause or job forfeiture;
  i. When recalled after layoff, upon the failure to return to work within five (5) workdays after the employee has received notification in accordance with Section 2 (c);
  j. Acceptance of other employment while on leave;
  k. Layoff in excess of one (1) year:
  l. Non-work-related illness or disability in excess of six (6) months, unless extended by mutual agreement of the parties.

When an employee whose continuous service has been broken by any of the causes listed in the above section is re-employed subsequent thereto, the employee shall begin as a new employee of the Employer.

5.    Seniority List

A seniority list showing the classification of each employee shall be posted by the Employer at a place accessible to the employees and a copy thereof mailed to the Union.

6.    Probationary Period

The probationary period for employees shall consist of ninety (90) consecutive calendar days of employment from the date of beginning employment, during which time the employees

shall not be covered in any way by the terms and conditions of this Agreement, and may be disciplined or discharged for any reason whatsoever at the exclusive discretion of the Employer without recourse to the grievance or arbitration provisions of this Agreement. In order to permit the Company to further observe the qualifications and suitability of any probationary employee, it may request the Union's consent to an extension of an additional thirty (30) days, provided such request is in writing. The Union shall not unreasonably withhold its agreement to this request. If still employed at the end of such period, the seniority of the employee shall be effective as of the beginning of employment and his name shall be added forthwith to the employees' seniority list and notice thereof shall be furnished by the Employer to the Union.

## ARTICLE 7 - MAINTENANCE OF STANDARDS

1.    Protection of Conditions

The Employer agrees that all conditions of employment relating to wages, hours of work and general working conditions which the parties hereto have inadvertently or mistakenly failed to address and agree upon in this Agreement shall be maintained at the level in effect at the signing of this Agreement. This provision shall be inapplicable with respect to each and every subject that is mentioned and agreed upon or addressed in the text of this Agreement.

It is agreed that the provisions of this section shall not apply to inadvertent or bona fide errors made by the Employer or the Union in applying the terms and conditions of this Agreement if such error is corrected within ninety (90) days from the date of error.

This provision does not give the Employer the right to impose or continue wages, hours, and working conditions less than those contained in this Agreement.

2.    Extra Contract Agreements

The Employer agrees not to enter into any agreement or contract with his employees, individually or collectively, which in any way conflicts with the term and provisions of this Agreement. Any such agreement shall be null and void.

All new Company policies will be negotiated with the Union.

## ARTICLE 8 - SHOP STEWARDS

1.    The Employer recognizes the right of the Union to designate shop stewards and alternates.

2.    The authority of the shop stewards and alternates so designated by the Union shall be limited to, and shall not exceed, the following duties and activities:

5

  a. The investigation and presentation of grievances in accordance with the provisions of the collective bargaining agreement;

  b. The collection of dues, when authorized by appropriate Local Union Action;

  c. The transmission of such messages and information which shall originate with, and are authorized by the Local Union or its officers, provided such messages and information:

    1. Have been reduced to writing, or
    2. If not reduced to writing, are of a routine nature and do not involve work stoppage, slowdowns, refusal to handle goods, or any other interference with the Employer's business

3. Shop stewards and alternates have no authority to take strike action, or any other action interrupting the Employer's business, except as authorized by official action of the Union.

4. The Employer recognizes these limitations upon the authority of job stewards and their alternates, and shall not hold the Union liable for any unauthorized acts. The Employer in so recognizing such limitations shall have the authority to impose proper discipline, including discharge, in the event the shop steward has taken unauthorized strike action, slowdown, or work stoppage in violation of this Agreement.

5. Stewards shall be permitted to investigate, present and process grievances on or off the property of the Employer. Such time spent in handling grievances shall be considered working hours in computing daily and/or weekly overtime.

6. Shop Stewards or alternate shall be entitled to leave of one (1) day off each calendar year with pay for shop steward training and education.

## ARTICLE 9 - VACATIONS

1. Employees shall be paid forty (40) straight time hours for each week of vacation for which they qualify.

2. All employees shall earn vacation on a "pro-rata" basis as follows:

  a. Every regular employee who has been continuously employed in the employ of the Employer for a period of one (1) year shall be entitled to receive one (1) weeks' vacation with pay.

  b. Every regular employee with three (3) years of continuous service shall be entitled to two (2) weeks' vacation with pay.

6

   c.  Every regular employee who has been continuously in the employ of the Employer for a period of five (5) years or more shall be entitled to receive three (3) weeks' vacation with pay.

   d.  Every regular employee who has been continuously in the employ of the Employer for a period of ten (10) years shall be entitled to receive three (3) additional vacation days.

   e.  Every regular employee who has been continuously in the employ of the Employer for a period of fifteen (15) years or more shall be entitled to receive four (4) weeks' vacation with pay.

   f.  Every regular employee who has been continuously in the employ of the Employer for a period of twenty (20) years or more shall be entitled to receive four (4) weeks' vacation with pay equal to fifty (50) hours of pay at his straight time hourly rate for each week of vacation.

  3.  a.  The Employer shall have the right to schedule the number of employees in each classification who shall receive vacations at a particular time. Employees within a particular classification must select their vacations according to their seniority, unless mutually agreed to by the Union and the Employer. The vacation period of each qualified employee shall be set with due regard to the desire, seniority (with respect to those requests submitted by March 1) and preference of the employees, consistent with the efficient operation of the Employer's business. Vacations shall be scheduled on a year-round basis.

   b.  As to an employee eligible for a four (4) weeks' vacation, the Employer shall have the option, after working same out with the Union, of paying the employee or having him take the fourth (4th) week off. The fourth (4th) weeks' vacation need not be consecutive. When the employee works the fourth (4th) week, the employee shall receive his vacation pay plus pay for the time worked. Upon the request of a regular employee who has been continuously in the employ of the Employer for a period of twenty (20) or more years, the Employer may buy back one or more complete weeks of unused vacation. For each vacation week that the Employer agrees to buy back, the employee shall receive fifty-five (55) hours of pay at his straight time hourly rate. This provision shall not apply to requests to buy back partial weeks of unused vacation; the Employer shall not be required to consider or respond to a request to buy back partial weeks of unused vacation.

   c.  The vacation period for eligible employees shall consist of consecutive days, provided that in the case of employees entitled to two (2) weeks' vacation, the Employer may split the vacation into two (2) separate one-week periods with the consent of the eligible employee.

   d.  If, in the future, Employer and Union agree that a man-power shortage has developed, an employee may be required to work during the vacation period, but in such event, every regular employee who has been continuously in the employ of the Employer for a period of less than twenty (20) years shall receive, in addition to his earnings for that week, vacation

pay equal to fifty (50) hours at his straight time hourly rate, and every regular employee who has been continuously in the employ of the Employer for a period of twenty (20) years or more shall be entitled to receive, in addition to his earnings for that week, vacation pay equal to fifty-five (55) hours of pay at his straight time hourly rate.

    e.  If any employee's vacation falls in a week in which a holiday recognized by this Agreement falls, the employee shall receive an additional day's vacation or a day's pay at the straight time rate in lieu thereof to be determined by the Employer.

    f.  Vacation pay shall be paid to the eligible employee before he starts his vacation.

    g.  Upon permanent layoff or under circumstances that do not involve circumstances described in Article 13, paragraphs 1 b, d, e, and paragraphs 2 a, b, c or d, any employee on the seniority list with one or more years of service shall be entitled to vacation pay on a pro rata basis.

    h.  Returning servicemen who would be entitled to receive a vacation under the Uniformed Services Employment and Reemployment Rights Act, by virtue of this Agreement, shall receive a vacation, or pay in lieu thereof, as set forth above. The number of days after his return, but prior to his anniversary date of the year in which the vacation is to be granted, which a serviceman may have missed from work and still qualify for the vacation, shall be apportioned to the time since his return to work. For example, if a serviceman has returned to work six (6) months prior to his anniversary date of the year in which the vacation is to be granted, he shall not have missed work more than twenty-five (25) days on which work was available to him. If he returned three (3) months prior to his anniversary date of the year in which the vacation is to be granted he shall not have missed more than twelve (12) days on which work was made available. (If a fraction results in any computation of the percentage, the next lower number of days shall be considered.)

    i.  The anniversary of the employment date of each employee shall determine to what vacation he or she is entitled.

## ARTICLE 10 - HEALTH, WELFARE AND INSURANCE

### SEE MASTER AGREEMENT

## ARTICLE 11 - TEAMSTERS PENSION FUND

   1.  Effective July 1, 2017, the Employer agrees to remit contributions to the Teamsters Pension Fund of Philadelphia and Vicinity, (hereinafter referred to as the "Fund") in the manner described in the Sections below.

   2.  Effective July 1, 2017, the Employer will remit contributions at the rate of thirty-

six dollars and eighty-one cents ($36.81) per week per employee to the Fund.

Effective July 1, 2018, the Employer will remit contributions at the rate of thirty-eight dollars and sixty-five cents ($38.65) per week per employee to the Fund.

Effective July 1, 2019, the Employer will remit contributions at the rate of forty dollars and fifty-nine cents ($40.59) per week per employee to the Fund.

Effective July 1, 2020, the Employer will remit contributions at the rate of forty-two dollars and sixty-two cents ($42.62) per week per employee to the Fund.

Effective July 1, 2021, the Employer will remit contributions at the rate of forty-four dollars and seventy-five cents ($44.75) per week per employee to the Fund.

3.     The contributions to the Fund shall be made for each seniority employee for each week worked or paid. Contributions for new employees will commence on the first day following the day that the employee has completed his probationary period.

4.     The sums required above shall be remitted monthly to the Fund. Such monthly payments shall be submitted to the Fund on or before the 28th day of the month following the month in which these monies were accrued.

5.     Should the Employer become delinquent in its contributions to the Fund, the Union may suspend the operations of the Employer three (3) working days after receipt of a verification by telegram, registered or certified mail, that the Employer is delinquent in its contributory obligations to the Fund. Copies of the verification shall be sent to the Administrator of the Fund, the Employer and the Local Union.

6.     Failure on the part of the Employer to contribute as specified hereinabove shall make the Employer liable for all claims, damages, attorneys' fees and costs, plus all arrears in payments, plus ten percent (10%) as liquidated damages.

7.     The Employer shall complete and deliver to the Fund, on forms supplied by the Fund, an Employer's Contribution Report stating the name and social security number for each employee employed by the Employer along with the contributions accrued during the calendar month.

8.     The Trustees of the Fund or their duly accredited representatives shall have the authority to audit the payroll, tax and wage records of the Employer for all individuals performing work within the scope of and/or covered by this Agreement, for the purpose of determining the accuracy of contributions to the Fund and adherence to the requirements of this Agreement regarding coverage and contributions. For purposes of such audit, the Trustees or their designated representatives shall have access to the payroll, wage and tax records of all employees.

9.     By execution of this Agreement, the Employer authorizes the Employer's

Association to enter into appropriate trust agreements necessary for the administration of the Fund and agrees to be bound by the terms of said trust agreements, thereby waiving all notice thereof and ratifying all actions already taken or to be taken by the Trustees within the scope of their authority.

10.    If an employee is granted a leave of absence by the Employer and if the employee wishes to continue Pension coverage during the period of the approved leave of absence, the Employer shall collect from said employee, prior to the leave of absence being effective, sufficient monies to pay the required contributions into the Fund during the period of absence.

## ARTICLE 12 - LOCAL 929 RETIREMENT PLAN

1.    The Employer will contribute to the Local 929 Retirement Plan (hereinafter referred to as the "Retirement Plan") in the manner described in the sections below for each hour worked, or if not worked, paid for pursuant to the terms of this Agreement covering holidays, vacations and paid sick leave (not worked) to a maximum of forty (40) hours per week.

2.    Effective July 1, 2017 through June 30, 2022, Employer shall continue to contribute into the Retirement Plan the sum of one dollar and twenty-five cents ($1.25) per hour per employee.

3.    Contributions shall be made as set forth in section 2 above for each regular employee covered by this Agreement on the Employer's payroll, for each hour worked, or if not worked, paid for pursuant to the terms of this Agreement covering holidays, vacations and paid sick leave (not worked) to a maximum of forty (40) hours per week.

4.    The sums required by section 2 above shall be remitted monthly to the Retirement Plan. Such monthly payments shall be received by the Administrator of the Plan on or before the 28th day of the month following the month in which these monies were accrued.

5.    The Union may suspend the operations of a delinquent Employer three (3) working days after receipt of a verification by telegram that such Employer is delinquent. Copies of the verification shall be sent by the Administrator of the Retirement Plan to the Employer and the Local Union. The Employer shall be liable to each of his employees for any earnings lost because of operations being suspended.

6.    Failure on the part of the Employer to contribute as specified hereinabove, shall make him liable for all claims, damages, attorneys' fees, court costs, plus all arrears in payments plus ten percent (10%) liquidated damages.

7.    a.    Each Employer shall complete and deliver to the Administrator of the Retirement Plan, an Employer's Remittance Report, stating the names, social security number, and total contributions paid or due by the Employer to the Retirement Plan for each regular employee employed by the Employer during the previous calendar month in accordance with the rules and regulations covering such remittances.

     b.     The Trustees of the Retirement Plan shall have the right to require any Employer covered by this Agreement to make available to the Trustees or their duly accredited representatives, all time cards, payroll records, social security records, withholding tax records, and state or municipal wage and income tax records for any or all employees covered by this Agreement.

     8.     By the execution of this Agreement, the Employer authorized entry into appropriate Trust Agreements necessary for the administration of such Fund and to designate the Employer Trustee under such Agreement, hereby waiving all notice thereof and ratifying all actions already taken or to be taken by such Trustees within the scope of their authority.

     9.     An employee shall be required to abide by the rules established by the Board of Trustees of the Retirement Plan.

## ARTICLE 13 - INSPECTION AND PRIVILEGES

     Authorized agents of the Union shall have access to the Employer's establishment during working hours for the purpose of adjusting disputes, investigating working conditions, collection of dues, examining time sheets and any other related and relevant records, pertaining to the computation of compensation or fringe benefits of any individuals, ascertaining that the Agreement is being adhered to provided, however, that there is no interruption of the Employer's working schedule. Union will stop in the Company's office first prior to gaining access to the Employer's establishment.

## ARTICLE 14 - DISCHARGE OR SUSPENSION

     1.     The Employer may discharge or suspend any employee with just cause. In all cases involving the discharge or suspension of an employee, the Company must immediately notify the employee of his discharge or suspension and the reason therefore. Notice shall also be given to the Shop Steward, and written notice shall be mailed to the Local Union office within one (1) working day from the time of the discharge or suspension. Examples of misconduct justifying discharge, suspension or other discipline include but are not limited to the following:

     a.     Violation of employer's absenteeism or lateness policy;
     b.     Dishonesty;
     c.     Calling an unauthorized strike or walkout;
     d.     Engaging in any form of sexual, religious or racial harassment;
     e.     Using, consuming or being under the influence of intoxicating or alcoholic beverages, marijuana, hallucinogens or other illegal drugs or narcotics on Company premises or while conducting Company business;
     f.     Theft or attempted theft of Company property, customer's property or other employees' property;
     g.     Unauthorized use of Company property;

| | |
|---|---|
| h. | Wearing or carrying weapons of any type on Company premises or in a Company vehicle; |
| i. | Defacement of Company property or premises; |
| j. | Assault or battery committed on the Employer, co-workers, or any Employer's representative or customers. |

2.    In respect to discharge, the Employer must give at least one (1) warning notice of the specific complaint against such employee in writing, and a copy of the same to the Union and the Shop Steward.  The warning notice as herein provided shall not remain in effect for a period of more than twelve (12) months from the date of the occurrence upon which the complaint and warning notice are based, except that no warning notice need be given to an employee before he is discharged if the cause of such discharge is:

| | |
|---|---|
| a. | Insubordination; |
| b. | Failure to perform assigned duties in a satisfactory manner; |
| c. | Driving a Company vehicle without a valid driver's license; |
| d. | Carrying unauthorized passengers in Employer's vehicle; |
| e. | Absence without notification for one or more consecutive days (except for emergency); |
| f. | Physical assault or battery on Employer, a supervisor, co-worker or any Employer's representative or customer; |
| g. | Theft or embezzlement of Employer monies or property regardless of value or length of service; |
| h. | Conviction of any felony; |
| i. | Suspension or revocation of driver's license because of driving under the influence of alcohol or illegal substance(s), or concealment of the suspension of said driving privileges; |
| j. | Sleeping on the job; |
| k. | Reporting to work while under the influence of alcohol and/ illegal substances; |
| l. | Possession or use of weapons while on duty and/or while on Employer's property; |
| m. | Possession of alcohol and/or illegal substances while on duty and/or while on Employer property or in Employer's vehicle. |
| n. | Falsification of an employee time card, or punching/marking a time card that is not the employee's own time card. |
| o. | Intentional or willful destruction or sabotaging of Employer's property and/or equipment or its contractor(s) or agent(s); |
| p. | Dishonesty. |

3.    Any employee discharged, must be paid in full for all wages owed him by the Employer within five (5) days from the date of discharge.  Earned vacation pay shall also be paid in circumstances enumerated in paragraphs 1a, f and 2e.

4.    A discharged or suspended employee must advise his Local Union in writing, within two (2) working days after receiving notification of such action against him, of his desire to appeal the discharge or suspension.  Notice of appeal from discharge or suspension must be

made to the Employer in writing within five (5) days from the date of discharge or suspension and return to his home terminal, whichever is later.

5.    Should it be proven that an injustice has been done a discharge or suspended employee, he shall be fully reinstated in his position and compensated at his usual rate of pay for lost work opportunity.  If the Union and the Employer are unable to agree as to the settlement of the case, then it may be referred to the grievance procedure as set forth in this Agreement.

## ARTICLE 15 - GRIEVANCE PROCEDURE - ARBITRATION

All grievances or disputes arising under the terms of this Agreement shall be handled in accordance with the manner provided in this Article.

1.    Grievances must be reduced to writing and presented within five (5) working days of their occurrence.  Individual grievances arising under the terms of this Agreement shall be adjusted in the first instance between the Union's steward and the Employer or his representative.  If such individual grievances are not successfully adjusted in the first instance, the matter shall be adjusted, if possible by negotiations between the officers and representatives of the Union and the designated representatives of the Employer.  In the case of grievances presented either by the Local Union or the Employer arising under the terms of this Agreement involving general interpretation of the Agreement or of general or uniform operations hereunder, or affecting all or a substantial number of the employees generally, the procedure set forth in the immediately preceding sentence shall be followed initially.

2.    In the event that during the term of this Agreement there shall be any grievance, controversy, or dispute arising under the terms of this Agreement, there shall be no suspension of work on the part of the employees, but there shall be an earnest effort to settle any such differences, and same shall be taken up for adjustment as hereinabove provided.  If such matter cannot be adjusted by the representatives of the Employer and the Local Union, then it may be submitted to arbitration in accordance with the rules of the American Arbitration Association.  The decision of the arbitrator shall be final and binding upon the parties to this agreement.  The cost of the arbitration shall be shared equally by the parties.

Within forty-eight (48) hours after notice by either party to the other of a desire to arbitrate, one arbitrator shall be selected by and represent the Employer, and one arbitrator shall be selected by and represent the Union.  The two so chosen, shall, within five (5) days after such notice select a third arbitrator within said period.  The selection shall be made and conducted under the prevailing rules of the American Arbitration Association.

3.    Except for the failure of the Employer to abide by an arbitration award after a decision by the arbitrator, the Union agrees that there shall be no strikes, stoppages of work or slowdowns, for any reason whatsoever during the term of this Agreement.

## ARTICLE 16 - FUNERAL LEAVE

In case of death in an employee's immediate family (i.e. spouse, mother, father, sister, brother, children, grandparents, grandchild, mother-in-law, father-in-law) the Employer shall grant such employee a maximum of three (3) days off with pay for the express purpose of attending services for the deceased. The employee must provide the Employer with documentation verifying the death of the employee's immediate family member.

## ARTICLE 17 - WAGE

All Employees are to receive the following across-the-board wage increases:

| | |
|---|---|
| Effective 7/1/17 | $0.75 per hour |
| Effective 7/1/18 | $0.50 per hour |
| Effective 7/1/19 | $0.50 per hour |
| Effective 7/1/20 | $0.40 per hour |
| Effective 7/1/21 | $0.40 per hou |

The starting rate for employees shall be as follows:

Drivers

In addition to the yearly contract raises, employees who are not at the top rate shall receive an increase of twenty-five cents ($0.25) per hour every three (3) months until such employee reaches the top rate in his classification.

Top Rates Drivers

| | |
|---|---|
| Effective 7/1/17 | $20.60 |
| Effective 7/1/18 | $21.10 |
| Effective 7/1/19 | $21.60 |
| Effective 7/1/20 | $22.00 |
| Effective 7/1/21 | $22.40 |

## ARTICLE 18 - WORK WEEK

1.    The regular work week in local area operations shall consist of five (5) days of eight (8) hours each, exclusive of meal period, Monday through Sunday. There shall be two (2) days off for each work week. Days off shall be awarded to the employees based upon seniority based upon the number of slot for days off that occur during any work day. A sixth (6th) day is clarified to be the employee's normal day off. Each employee who commences his regularly scheduled workday at the regularly scheduled time shall be guaranteed eight (8) hours of work.

2.    Employees may be required by Employer to work in excess of the regular work week schedules or work day schedules. All employees shall be compensated at the rate of time

and one-half (1½) the regular hourly rate for all hours worked in excess of eight (8) hours in one (1) day and forty (40) hours in one (1) week. There shall be no pyramiding of overtime. All employees shall be required to punch in at the start of the day, and to punch out at the end of the day. The Employer shall pay the employees based on all hours, scheduled, regular and overtime.

3.    All employees shall be required to punch in at the start of the day, and to punch out at the end of the day. The Employer shall pay the employees based on all hours scheduled, regular and overtime

4.    All employees shall continue to receive a one-half hour paid lunch period. Lunch period does not count toward over-time in a day.

5.    All employees shall be entitled to two (2) fifteen (15) minute rest periods per eight (8) hour day.

## ARTICLE 19 - HOLIDAYS

1.    In any week in which one of the following legal holidays falls, that is, New Year's Day, Martin Luther King's Birthday, Presidents' Day, Memorial Day, 4th of July, Labor Day, Easter Monday, Thanksgiving Day, Day after Thanksgiving, and Christmas Day, the regular work week shall be four (4) eight (8) hour days from Monday to Saturday and the Company shall pay holiday pay for such holiday consisting of eight (8) hours regular straight time pay.

2.    All regular employees may be required by the Employer to work on any of the aforesaid holidays, but in such event, they shall be paid their Holiday Pay plus their straight time rate for the first eight (8) hours of work and then one and one half times their straight time rate for each hour in excess of eight (8) on such holiday.

3.    Regular employees shall be paid for each recognized holiday or the day celebrated as such, if not worked, on the basis of eight (8) hours at their straight time rate of pay, provided they work any day during the pay period and the full scheduled shift/work day before and after the holiday, unless they were absent on either of such two (2) days because of illness or injury, excluding workers compensation injury, and did not provide the Employer with a verifiable doctor's note.

An employee who is scheduled to work a "working holiday" (e.g. President's Day, Day after Thanksgiving, Martin Luther King's Birthday, and Easter Monday) and calls out sick must produce a verifiable doctor's note to be paid a sick day for that lost day.

4.    When a legal named holiday occurs on Saturday all regular employees shall receive holiday pay, consisting of eight (8) hours straight time pay.

5.    When a legal named holiday occurs on Sunday, the holiday shall be celebrated on Monday.

6.    Personal Holidays

    a.    Each employee shall be entitled to five (5) personal holidays per year provided seventy-two (72) hours' notice is given. Approved personal holidays are not subject to bumping. New employees hired after June 6, 2007 will accrue one (1) day of personal holiday quarterly the first two years of employment.

    b.    Company will buy back any unused Personal Holidays at the end of the calendar year.

7.    Black Out/Restrictive Periods

    a.    In order to ensure sufficient staffing during the peak holiday business periods, the Company shall have the right to limit and/or deny requests for vacations, personal days, or leaves of absence during the seven days preceding the following holidays:

| | |
|---|---|
| New Year's Day | Independence Day (July 4th) |
| Valentine Day | Labor Day |
| Easter | Thanksgiving |
| Mother's Day | Christmas |
| Memorial Day | |

## ARTICLE 20 - SUPPLYING HELP

Subject to existing law, if an Employer requests men from the Union (and such request shall not be mandatory), the Union shall attempt to supply competent and experienced help. In the event the men supplied by the Union are not, for good and sufficient reasons, satisfactory to the Employer, he may at his option request the Union for replacement. The wages, hours and other conditions of employment of any employee covered by this Agreement shall be as herein provided whether such employee has become a member of the Union or not.

If the Employer requests and the Union does not supply the Employer with competent and experienced help within forty-eight (48) hours, the Employer may hire new employees from any source but he is to give preference to satisfactory employees with experience in his industry. This clause shall not obligate the Employer to request help from the Union to provide men.

## ARTICLE 21 - GENERAL PROVISIONS

1.    If a driver is ordered to leave his vehicle or to report to a vehicle at a point other than the terminal city of the run, his transportation by train or bus shall be paid by cash in advance from or to such other point. He shall be paid for his time spent going to or returning from such point at regular rates and at overtime rates for overtime hours.

2.      Any employee who is scheduled to work on a day that will be an overtime day shall be paid at least for six (6) hours work.

3.      Employer will use its best efforts to assign drivers to the same truck.

4.      Employer will not be required to give his employees a definite starting time. (Continue Present System).

5.      Non-Discrimination

      a.      The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, national origin, disability or age. Nor will they limit, segregate or classify employees in any way to deprive any individual employee of employment opportunities because of race, color, religion, sex, national origin, disability or age.

      b.      The Company and the Union agree that there will be no discrimination by the Company or the Union against any employee because of his or her membership in the Union or because of any employee's activity and/or support of the Union.

6.      The Union recognizes that the Employer covered by this Agreement must compete with other means of transportation, must keep abreast of developments in methods of distribution, and must operate efficiently and economically if Employer is to meet rising costs of operation, including rates of pay and working conditions to members of the Union. Accordingly, the Union agrees that it will cooperate with Employer to the end that his business may be operated to the utmost efficiency and further agrees that it will not interfere in any way with the Employer's right to operate and manage its business, provided that nothing herein will permit the Employer to violate any of the terms and conditions of this Agreement.

7.      The Employer shall not hire extra equipment until his own usable equipment and supply of employees is exhausted. In hiring extra equipment, the Employer, where possible, shall give preference to operators honoring the level of wages, hours, and working conditions of this Agreement.

8.      Lie Detector Test

      The Company shall not require, request or suggest that an employee or applicant for employment take a polygraph or any other form of lie detector test.

9.      The assignment of work to drivers shall be on a daily basis based on seniority of the drivers, conditioned upon the drivers to perform the duties of the job.

## ARTICLE 22 - MILITARY SERVICE

Employees enlisting or entering the military service or naval service of the United States pursuant to the provisions of the Universal Training and Service Act, as amended, shall be granted all rights and privileges provided by the Act.

## ARTICLE 23 - COMPENSATION CLAIMS

The Employer agrees to cooperate toward the prompt settlement of employee on-the-job injury claims when such claims are due and owing as required by law. The Employer shall provide Workmen's Compensation protection for all employees even though not required by state law or the equivalent thereof if the injury arose out of or in the course of employment.

An employee who is injured on the job, and is sent home, or to a hospital, or who must obtain medical attention, shall receive pay at the applicable hourly rate for the balance of his regular shift on that day. An employee who has returned to his regular duties after sustaining a compensable injury who is required by the Workmen's Compensation doctor to receive additional medical treatment during his regularly scheduled working hours shall be entitled to receive pay at the applicable hourly rate for time spent at the treating physician's office.

## ARTICLE 24 - MANAGEMENT RIGHTS

The Union recognizes that, except as otherwise expressly limited in this Agreement, it is the exclusive function of the Employer to operate and manage its business, including but not limited to the right to maintain order, efficiency, and to generally operate the facility and its distribution of products; to hire, direct, classify, temporarily reassign, assign, schedule, transfer, evaluate, promote, demote, and lay off employees, and also to suspend, discipline, or to discharge employees for just cause, to make, alter and implement reasonable rules and regulations to be observed by employees; to establish job descriptions and determine job assignments; to determine the classifications, size and duties of the work force at any given time or shift; to establish reasonable production standards; to determine work methods, materials, and equipment; to determine staffing patterns, shifts and reasonable overtime requirements; to assign and allocate work within and between departments; to reorganize, discontinue, or enlarge any department or portions thereof; to determine the kind, type and location of facilities; to implement new and different operational methods and procedures and to introduce new or different services, methods or facilities.

## ARTICLE 25 - EQUIPMENT, ACCIDENTS AND REPORTS

The Employer shall not require employees to take out on the streets or highways any vehicle that is not in safe operating condition or equipped with the safety appliances prescribed by law. It shall not be a violation of this Agreement where employees refuse to operate such equipment unless such refusal is unjustified. All equipment which is refused because of not being mechanically sound or properly equipped shall be appropriately tagged so that it cannot be

used by other drivers until the maintenance department has adjusted the complaint.

Under no circumstances will an employee be required or assigned to engage in any activity involving dangerous conditions of work or danger to person or property or in violation of any applicable statute or court order, or in violation of a government regulation relating to safety of person or equipment. The term "Dangerous Conditions of Work" does not relate to the type of cargo which is hauled or handled. Any employee involved in any accident shall immediately report said accident and any physical injury sustained. When required by his Employer, the employee, before starting his next shift, shall make out an accident report in writing on forms furnished by the Employer and shall turn in all available names and addresses of witnesses to the accident. Failure to comply with the provisions shall subject such employee to disciplinary action by the Employer.

Employees shall immediately, or at the end of their shift, report all defects of equipment. Such reports shall be made on a suitable form furnished by the Employer and shall be made in multiple copies, one copy to be retained by the Employee. The Employer shall not ask or require any employee to take out equipment that has been reported by any other employee as being in an unsafe operating condition until same has been approved as being safe by the mechanical department.

When the occasion arises where an employee gives written report on forms in use by the Employer of a vehicle being in an unsafe working or operating condition, and receives no consideration from the Employer, he shall take the matter up with the officers of the Union who will take the matter up with the Employer.

## ARTICLE 26 - WORK ASSIGNMENTS

The Employer agrees to respect the jurisdictional rules of the Union and shall not direct or require their employees or persons other than the employees in the bargaining units here involved to perform work which is recognized as the work of the employees in said units. This is not to interfere with bona fide contracts with bona fide unions.

## ARTICLE 27 - EMPLOYEE'S BAIL

1.    Employees will be bailed out of jail if accused of any offense in connection with the faithful discharge of their duties, and any employee forced to spend time in jail or in courts shall be compensated at his regular rate of pay. In addition, he shall be entitled to reimbursement for his meals, transportation, court costs, etc. provided, however, that faithful discharge of duties shall in no case include compliance with any other involving commission of a felony. In case an employee shall be subpoenaed as a Company witness, he shall be reimbursed for all time lost and expenses incurred.

2.    Suspension or Revocation of License

In the event an employee shall suffer a suspension or revocation of his Chauffeur's license because of a succession of size and weight penalties, caused by the employee complying with his Employer's instructions to him, the Employer shall provide employment for such employee at not less than his regular earnings at the time of such suspension for the entire period thereof, subject, however, to the seniority and layoff provisions applicable to him at the time of such suspension.

## ARTICLE 28 - ABSENCE

1.    Time off for Union Activities

The Employer agrees to grant the necessary time off, without discrimination or loss of seniority rights and without pay, to any employee designated by the Union to attend a labor convention or serve in any capacity on other official Union business, provided forty-eight (48) hours written notice is given to the Employer by the Union, specifying length of time off. The Union agrees that, in making its request for time off for Union activities, due consideration shall be given to the number of men affected in order that there shall be no disruption of the Employer's operations due to lack of available employees.

2.    Leave of Absence

Any employee desiring leave of absence from his employment shall secure written permission from both the Union and Employer. The maximum leave of absence shall be for ninety (90) days and may be extended for like periods. Permission for same must be secured from both the Union and the Employer. During the period of absence, the employee shall not engage in gainful employment in the same industry. Failure to comply with this provision shall result in the complete loss of seniority rights for the employee involved. Inability to work because of proven sickness or injury shall not result in the loss of seniority rights; provided that such inability to work does not last beyond one (1) year.

The employee must make suitable arrangements for continuation of Health and Welfare and Pension payments before the leave may be approved by either the Union or the Employer.

An employee on a paid leave of absence or disability leave for a non-work- related injury or illness shall not continue to accrue paid leave (vacation leave, sick days or personal leave) or be entitled to holiday pay beyond the first ninety (90) days of the leave. An employee on an unpaid leave of absence shall not accrue paid leave during the period of unpaid leave.

## ARTICLE 29 - JURY DUTY

When an employee is required to perform jury duty, he will be paid the difference between the pay he receives as juror and his normal regular straight time wages for the period of jury duty, provided that, if required by Employer, he works on days when not actually serving on the jury duty.

20

## ARTICLE 30 - SICK DAYS

Each employee shall be entitled to four (4) sick days per calendar year. Said sick days shall not be cumulative from year to year. If at the end of each contract year such sick day or sick days have not been taken, the Employer shall pay such employee eight (8) hours pay at his prevailing straight time hourly rate for each sick day or days not used. All new employees hired after June 6, 2007 will accrue one (1) sick day quarterly for the first two years of employment.

## ARTICLE 31 - LATENESS AND ABSENCE POLICY

1.    ABSENCE:

An employee shall be disciplined according to the schedule set forth below upon the occurrence of an unexcused absence:

| | |
|---|---|
| First absence | Written warning |
| Second absence | Two (2) day suspension |
| Third absence | Five (5) day suspension |
| Fourth absence | Subject to discharge |

An unexcused absence consists of one or more consecutive days of absence by an employee who did not notify the Company more than one hour before the start of his shift that he is unable to report for work and did not obtain permission for the absence from the Employer. Any employee who is absent without permission for three (3) or more consecutive working days shall be considered to have voluntarily quit his employment. Any employee who is absent on a holiday when work is scheduled shall be subject to discipline in accordance with the penalty schedule set forth above. An absence due to illness or injury that is not a paid sick day under the Agreement shall be deemed "unexcused" unless the employee is hospitalized or the absence is covered by the federal FMLA or New Jersey's Family Leave Act. The Employer reserves the right to require documentation of any such absence.

2.    LATENESS:

A lateness shall be defined as any employee who reports to his work station more than five (5) minutes and less than three (3) hours beyond his/her posted starting time or more than five (5) minutes beyond his/her return from lunch time. The penalties for lateness shall be as follows:

| | |
|---|---|
| First lateness | Verbal warning |
| Second lateness | First written warning |
| Third lateness | Two day suspension |
| Fourth lateness | Five day suspension |
| Five lateness: | Subject to discharge |

Any employee reporting to his work station late from any paid break period will be subject to disciplinary action as set forth in this Article.

Any absence, lateness, warning letter or disciplinary action taken pursuant to the above shall not remain in effect, nor be admissible in any proceeding between the parties hereto as evidence of the Employer's basis for disciplinary action for a period of more than twelve (12) months from the date of such absence, lateness, warning letter or discipline. Each absence, lateness, warning letter or disciplinary action shall be deemed to be removed from the employee's work record subsequent to the expiration of such twelve (12) month period. Any disciplinary action taken by the Employer pursuant hereto shall not be subject to the grievance and appeals procedures until an employee is discharged.

## ARTICLE 32 - LABOR/MANAGEMENT COMMITTEE

During the course of the Agreement, the Employer and Union shall jointly maintain and support a Labor/Management Committee, which shall meet at least annually (once every year), at the request of either party, to discuss matters of mutual concern as they arise including but not limited to, the dissemination of general information of interest to the parties, discussions on the administration of this Agreement; the discussion of grievances which have not been processed beyond complying with the initial pre-arbitration steps of the grievance process when such discussions are mutually agreed to by the parties; notify the Union of changes contemplated by the Employer which may affect members of the Union; and provide the Union representative the opportunity to share the views of their members and/or make suggestions on the subjects of interest to their members, including alleged inequities in the treatment of employees in the bargaining unit.

No more than three (3) Union representatives, in addition to the President of Local 929, shall participate on the Labor/Management Committee.

Meeting shall be scheduled after the work day of the Union Representative so as to not result in the loss of pay of any Union member.

The Labor/Management Committee shall not be authorized to negotiate or bargain over the terms of this Agreement and no representations made during a Labor/Management Committee meeting shall be construed to modify the terms of this Agreement in the absence of a written agreement signed by the parties.

## ARTICLE 33 - IBT D.R.I.V.E. AUTHORIZATION AND DEDUCTION

The Employer agrees to deduct from the paycheck of all employees who submit authorization cards and are covered by this Agreement voluntary contributions to D.R.I.V.E. D.R.I.V.E. shall notify the Employer of the amounts designated by each contributing employee that are to be deducted from his/her paycheck on a weekly basis for all weeks worked. The phrase "weeks worked" excludes any week other than a week in which the employee earned a wage. The Employer shall transmit to:

National D.R.I.V.E.

22

P.O. Box 758637
Baltimore, MD 21275

Send on a monthly basis, in one check the total amount deducted along with the name of each employee on whose behalf a deduction is made, the employee's social security number and the amount deducted from the employee's paycheck. No such authorization shall be recognized if in violation of State and Federal law. No deductions shall be made which is prohibited by applicable law.

## ARTICLE 34 - TEAMSTERS LOCAL 929
## POLITICAL ACTION COMMITTEE ("PAC")

The Employer shall deduct, from the gross wages or salary of each employee who voluntarily executes the Teamsters Local 929 Political Action Committee (PAC) payroll deduction authorization form that is Appendix 2 to this Agreement, the contributions at the frequency of deduction so authorized on that form, and remit those contributions to the Union at the same time that the Employer remits to the Union the Union dues that are separately voluntarily authorized by employees to be deducted from their gross wages or salaries and remitted to the Union pursuant to this Article. The Employer must remit PAC contributions and Union dues to the Union by separate checks or wire transfers. With each PAC contribution remittance, the Employer shall provide the Union with a written itemization setting forth as to each contributing employee his or her name, address, occupation, rate of PAC payroll deduction by the payroll or other applicable period, and contribution amount. The parties acknowledge that the Employer's costs of administration of this PAC payroll deduction have been taken into account by the parties in their negotiation of this Agreement and have been incorporated in the wage, salary and benefits provisions of this Agreement.


## ARTICLE 35 - TERMINATION CLAUSE

This Agreement shall be in full force and effect from July 1, 2017 to and including June 30, 2022 and shall continue in full force and effect from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other at least sixty (60) days prior to the date of expiration.

It is further provided that where no such cancellation or termination notice is served and the parties desire to continue said Agreement but also desire to negotiate changes or revisions in this Agreement, either party may serve upon the other a notice, at least sixty (60) days prior to the expiration date of this Agreement, advising that such party desires to continue this Agreement but also desires to revise or change terms or conditions of such Agreement.

IN WITNESS WHEREOF, the undersigned have affixed their signatures as legal representatives of the Employer and the Union respectively this day _9_ of _Sept_ 2017, to be effective as of _July 1._, 2017.

23

_[signature]_
WITNESS

_[signature]_
J. AMBROGI FOOD DISTRIBUTION, INC.

_[signature]_
WITNESS

_[signature]_
TEAMSTERS LOCAL UNION NO. 929

KATHLEEN A. THOMAS
NOTARY PUBLIC OF NEW JERSEY
ID # 2384889
My Commission Expires 4/20/2019

# EXHIBIT B



**AGREEMENT**

between

**J. AMBROGI FOOD DIST., INC. PACKERS/CUSTODIANS**

and

**TEAMSTERS LOCAL UNION NO. 929**

affiliated with

INTERNATIONAL BROTHERHOOD OF TEAMSTERS
PENNSYLVANIA CONFERENCE OF TEAMSTERS

and

JOINT COUNCIL 53

TERM OF CONTRACT:

JULY 1, 2017 TO JUNE 30, 2022

# INDEX

ARTICLE 1 - UNION RECOGNITION ................................................................................1
ARTICLE 2 - UNION SECURITY AND CHECKOFF ......................................................1
ARTICLE 3 - TRANSFER OF COMPANY TITLE OR INTEREST................................2
ARTICLE 4 - UNION ACTIVITIES ...................................................................................2
ARTICLE 5 - PROTECTION OF RIGHTS ........................................................................3
ARTICLE 6 - SENIORITY...................................................................................................3
ARTICLE 7 - MAINTENANCE OF STANDARDS ..........................................................5
ARTICLE 8 - SHOP STEWARDS.......................................................................................5
ARTICLE 9 - VACATIONS.................................................................................................6
ARTICLE 10 - HEALTH, WELFARE, AND INSURANCE ............................................8
ARTICLE 11 - PENSION.....................................................................................................8
ARTICLE 12 - RETIREMENT PLAN ................................................................................9
ARTICLE 13 - INSPECTION PRIVILEGES...................................................................11
ARTICLE 14 - DISCHARGE OR SUSPENSION ...........................................................11
ARTICLE 15 - GRIEVANCE PROCEDURE – ARBITRATION ...................................13
ARTICLE 16 - FUNERAL LEAVE ..................................................................................13
ARTICLE 17 - WAGES ....................................................................................................14
ARTICLE 18 - WORK WEEK ..........................................................................................14
ARTICLE 19 - HOLIDAYS ..............................................................................................15
ARTICLE 20 - SUPPLYING HELP..................................................................................16
ARTICLE 21 - GENERAL PROVISIONS........................................................................17
ARTICLE 22 - MILITARY SERVICE...............................................................................17
ARTICLE 23 - COMPENSATION CLAIMS ...................................................................18
ARTICLE 24 - MANAGEMENT RIGHTS ......................................................................18
ARTICLE 25 - EQUIPMENT, ACCIDENTS AND REPORTS ......................................18
ARTICLE 26 - WORK ASSIGNMENTS..........................................................................19
ARTICLE 27 - EMPLOYEE'S BAIL ...............................................................................19
ARTICLE 28 - ABSENCE .................................................................................................19
ARTICLE 29 - JURY DUTY..............................................................................................20
ARTICLE 30 - SICK DAYS...............................................................................................20
ARTICLE 31 - LATENESS AND ABSENCE POLICY...................................................21
ARTICLE 32 - LABOR/MANAGEMENT COMMITTEE...............................................22
ARTICLE 33 - IBT D.R.I.V.E. AUTHORIZATION AND DEDUCTION ......................22
ARTICLE 34 - TEAMSTERS LOCAL 929 ......................................................................23
POLITICAL ACTION COMMITTEE ("PAC") ...............................................................23
ARTICLE 35 - TERMINATION CLAUSE ......................................................................23

THIS AGREEMENT entered into as of this _____ day of _____, 2017 by and between **J. AMBROGI FOOD DISTRIBUTION, INC., (PACKERS)** (hereinafter referred to as the "Employer") and **TEAMSTERS LOCAL UNION NO. 929** of Philadelphia, Pennsylvania, (hereinafter referred to as the "Union"), affiliated with the International Brotherhood of Teamsters, PA Conference of Teamsters and Joint Council No. 53

NOW THIS 1st day of July 2017, the parties hereto agree as follows:

## ARTICLE I - UNION RECOGNITION

The Employer recognizes the Union as the sole and exclusive bargaining agency during the life of this Agreement for all classifications of employees covered by this contract and coming under the jurisdiction of the Union in Philadelphia, Pennsylvania and vicinity as provided by the National Labor Relations Act in Case No. 4-RC-18550.

## ARTICLE 2 - UNION SECURITY AND CHECKOFF

1.      Union Security

All present employees who are members of the Local Union on the effective date of this Agreement shall remain members of the Local Union in good standing as a condition of employment.  All present employees who are not members of the Local Union and all employees who are hired hereafter shall become and remain members in good standing of the Local Union as a condition of employment on and after the 31st day following the beginning of their employment or on and after the 31st day following the effective date of this section or the date of this Agreement, whichever is the later.  This provision shall be made and become effective as of such time as it may be made and become effective under the provisions of the National Labor Relations Act, but not retroactively.

The failure of any person to become a member of the Union at the required time shall obligate the Employer, upon written notice from the Union to such effect and to the further effect that Union membership was available to such person on the same terms and conditions generally available to other members, to forthwith discharge such person.  Further, the failure of any person to maintain his/her Union Membership in good standing as required herein shall, upon written notice to the Employer by the Union to such effect, obligate the Employer to discharge such person.

In the event of any change in the law during the term of this Agreement the Employer agrees that the Union will be entitled to receive the maximum Union Security which may be lawfully permissible.

No provision of this Article shall apply in any state to the extent that it may be prohibited by state law.  If under applicable state law additional requirements must be met before any such provision may become effective, such additional requirements shall first be met.

1

If any provision of this Article is invalid under the law of any state wherein this Agreement is executed, such provision shall be modified to comply with the requirements of state law or shall be re-negotiated for the purpose of adequate replacement. If such negotiation shall not result in a mutually satisfactory agreement, the Union shall be permitted all legal or economic recourse.

2 .    Check off

The Employer agrees to deduct from the pay of all employees covered by this Agreement the dues, initiation fees and/or uniform assessments of the Local Union having jurisdiction over such employees and agrees to remit to said Local Union all such deductions prior to the end of the month for which the deduction is made. Where laws require written authorization by the employees, the same is to be furnished in the form required. No deduction shall be made which is prohibited by applicable law.

3 .    The Employer shall add to the list submitted to the Union the names of all new employees hired since the last list was submitted and delete the names of employees who are no longer employed.

## ARTICLE 3 - TRANSFER OF COMPANY TITLE OR INTEREST

This Agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. It is understood by this section that the parties hereto shall not use any leasing device to a third party to evade this contract.

The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, assignee, etc., of the operation covered by this Agreement or any part thereof. Such notice shall be in writing with a copy to the Union at the time the seller, transferor or lessor executes a contract of the type of transaction as herein described.

In the event the Employer fails to give the notice herein required, it shall be liable to the Union and to the employees covered for all damages sustained as a result of such failure to give such notice.

## ARTICLE 4 - UNION ACTIVITIES

Any employee member of the Union acting in any official capacity whatsoever shall not be discriminated against for his acts as such officer of the Union so long as such acts do not interfere with the conduct of the Employer's business nor shall any employee covered by this Agreement be discriminated against, discharged, laid off or otherwise punished because of Union membership or activities.

## ARTICLE 5 - PROTECTION OF RIGHTS

1.     Picket Lines

It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action nor shall such employee be permanently replaced in the event an employee refuses to enter upon any property involved in a primary labor dispute, or refuses to go through or work behind any primary picket line, including the primary picket line of Unions party to this Agreement, and including primary picket lines at the Employer's places of business.

2.     Struck Goods

It shall not be a violation of this Agreement and it shall not be a cause for discharge or disciplinary action nor shall such employee be permanently replaced if any employee refuses to perform any service which his/her Employer undertakes to perform as an ally of an Employer or person whose employees are on strike, and which service, but for such strikes, would be performed by the employees of the Employer or person on strike.

## ARTICLE 6 - SENIORITY

1.     Seniority

Straight seniority shall prevail particularly as to layoffs, and re-employment, promotions, transfers from one job to another or from one department to another within the bargaining unit, or for assignments for overtime work and shall be conditioned upon the ability of the employee to perform the duties of the job to which seniority privileges may otherwise entitle him/her.

2.     Layoffs and Recall

a.     In the event of layoffs, employees shall be laid off in order of their seniority by job classification and shall be recalled in the inverse order to their layoff. An employee to be laid off in his/her job classification shall bump the employee with less seniority in a job paying the same or less in which he/she is experienced and shall receive the rate of pay of the job to which he/she bumps. If an employee's job is abolished he/she shall be free to bump anywhere his/her seniority will allow, provided he/she is capable of performing the job.

b.     When the bargaining unit workforce is again increased, the employees are to return to work in the reverse order in which they were laid off according to their seniority roster.

c.     A registered letter mailed to the employee's last known mailing address will constitute reasonable effort by the Employer to re-engage employee laid off. A registered copy of such letter shall be mailed to the Union.

3

3.    Injury Absence

Any employee who has been injured in the course of his/her employment shall retain and accrue his/her seniority during such absence (for a maximum of two years) for re-employment purposes only.

4.    Loss of Seniority

All rights of an employee accrued to him/her under this Article shall be lost in the event of a break in his/her continuous service for the employer caused by any one of the following:

    a.    Violation of employer's absenteeism or lateness policy;
    b.    Dishonesty;
    c.    Insubordination;
    d.    Engaging in any form of sexual, religious or racial harassment;
    e.    Consumption of alcoholic beverages on Company premises, reporting to work intoxicated or consuming intoxicating beverages during working hours;
    f.    Using or being under the influence of intoxicating beverages, marijuana, hallucinogens or other illegal drugs or narcotics on Company premises or while conducting Company business.
    g.    Voluntary termination of employment;
    h.    Any discharge for just cause or job forfeiture;
    i.    When recalled after layoff, upon the failure to return to work within five (5) workdays after the employee has received notification in accordance with Section 2 (c);
    j.    Acceptance of other employment while on leave;
    k.    Layoff in excess of one (1) year:
    l.    Non-work-related illness or disability in excess of six (6) months, unless extended by mutual agreement of the parties.

When an employee whose continuous service has been broken by any of the causes listed in the above section is re-employed subsequent thereto, the employee shall begin as a new employee of the Employer.

5.    Seniority List

A seniority list showing the classification of each employee shall be posted by the Employer at a place accessible to the employees and a copy thereof mailed to the Union.

6.    Probationary Period

The probationary period for employees shall consist of ninety (90) consecutive calendar days of employment from the date of beginning employment, during which time the employees shall not be covered in any way by the terms and conditions of this Agreement, and may be

4

disciplined or discharged for any reason whatsoever at the exclusive discretion of the Employer without recourse to the grievance or arbitration provisions of this Agreement. In order to permit the Company to further observe the qualifications and suitability of any probationary employee, it may request the Union's consent to an extension of an additional thirty (30) days, provided such request is in writing. The Union shall not unreasonably withhold its agreement to this request. If still employed at the end of such period, the seniority of the employee shall be effective as of the beginning of employment and his/her name shall be added forthwith to the employees' seniority list and notice thereof shall be furnished by the Employer to the Union.

## ARTICLE 7 - MAINTENANCE OF STANDARDS

1.    Protection of Conditions

The Employer agrees that all conditions of employment relating to wages, hours of work and general working conditions which the parties hereto have inadvertently or mistakenly failed to address and agree upon in this Agreement shall be maintained at the level in effect at the signing of this Agreement. This provision shall be inapplicable with respect to each and every subject that is mentioned and agreed upon or addressed in the text of this Agreement.

It is agreed that the provisions of this section shall not apply to inadvertent or bona fide errors made by the Employer or the Union in applying the terms and conditions of this Agreement if such error is corrected within ninety (90) days from the date of error.

This provision does not give the Employer the right to impose or continue wages, hours, and working conditions less than those contained in this Agreement.

2.    Extra Contract Agreements

The Employer agrees not to enter into any agreement or contract with his employees, individually or collectively, which in any way conflicts with the terms and provisions of this Agreement. Any such agreement shall be null and void.

All new Company policies will be negotiated with the Union.

## ARTICLE 8 - SHOP STEWARDS

1.    The Employer recognizes the right of the Union to designate shop stewards and alternates.

2.    The authority of shop stewards and alternates so designated by the Union shall be limited to, and shall not exceed, the following duties and activities:

a.    The investigation and presentation of grievances in accordance with the provisions of the collective bargaining agreement;

5

    b.    The collection of dues, when authorized by appropriate Local Union Action;

    c.    The transmission of such messages and information which shall originate with, and are authorized by the Local Union or its officers, provided such messages and information

        1.    Have been reduced to writing, or

        2.    If not reduced to writing, are of a routine nature and do not involve work stoppage, slowdowns, refusal to handle goods, or any other interference with the Employer's business.

3.    Shop stewards and alternates have no authority to take strike action, or any other action interrupting the Employer's business, except as authorized by official action of the Union.

4.    The Employer recognizes these limitations upon the authority of job stewards and their alternates, and shall not hold the Union liable for any unauthorized acts.  The Employer in so recognizing such limitations shall have the authority to impose proper discipline, including discharge, in the event the shop steward has taken unauthorized strike action, slowdown, or work stoppage in violation of this Agreement.

5.    Stewards shall be permitted to investigate, present and process grievances on or off the property of the Employer.  Such time spent in handling grievances shall be considered working hours in computing daily and/or weekly overtime.

6.    Shop Stewards or alternates shall be entitled to leave of one (1) day off each calendar year with pay for shop steward training and education.

## ARTICLE 9 - VACATIONS

1.    Employees shall be paid forty (40) straight time hours for each week of vacation for which they qualify.

2.    All employees shall earn vacation on a "pro-rata" basis as follows:

    a.    Every regular employee who has been continuously employed in the employ of the Employer for a period of one (1) year shall be entitled to receive one (1) week's vacation with pay.

    b.    Employees with three (3) years of continuous service shall be entitled to two (2) weeks' vacation with pay.

    c.    Every regular employee who has been continuously in the employ of the Employer for a period of five (5) years or more shall be entitled to receive three (3) weeks' vacation with pay.

          d.      Every regular employee who has been continuously in the employ of the Employer for a period of ten (10) years shall be entitled to receive four (4) weeks' vacation with pay.

        3.     a.      The Employer shall have the right to schedule the number of employees in each classification who shall receive vacations at a particular time. Employees within a particular classification must select their vacations according to their seniority, unless mutually agreed to by the Union and the Employer. The vacation period of each qualified employee shall be set with due regard to the desire, seniority and preference of the employees, consistent with the efficient operation of the Employer's business. Vacations shall be scheduled on a year round basis.

          b.      As to an employee eligible for a four (4) weeks' vacation, the Employer shall have the option, after working same out with the Union, of paying the employee or having him/her take the fourth (4th) week off. The fourth (4th) weeks' vacation need not be consecutive. When the employee works the fourth (4th) week, the employee shall receive his/her vacation pay plus pay for the time worked.

          c.      The vacation period for eligible employees shall consist of consecutive days, provided that in the case of employees entitled to two (2) weeks' vacation, Employer may split the vacation into two (2) separate one-week periods with the consent of the eligible employee.

          d.      If, in the future, Employer and Union agree that a man-power shortage has developed, an employee may be required to work during the vacation period, but in such event, he/she shall receive, in addition to his earnings for that week, vacation pay equal to fifty (50) hours at his/her straight time hourly rate.

          e.      If an employee's vacation falls in a week in which a holiday recognized by this Agreement falls, the employee shall receive an additional day's vacation or a day's pay at the straight time rate in lieu thereof to be determined by the Employer.

          f.      Vacation pay shall be paid to the eligible employee before he/she starts his/her vacation.

          g.      Upon permanent layoff or under circumstances that do not involve circumstances described in Article 13, paragraphs 1 b, d, e, and paragraphs 2 a, b, c, or d, any employee on the seniority list with one or more years of service shall be entitled to vacation pay on a pro rata basis.

          h.      Returning servicemen/women who would be entitled to receive a vacation under the Uniformed Services Employment and Reemployment Rights Act, by virtue of this Agreement, shall receive a vacation, or pay in lieu thereof, as set forth above. The number of days after his/her return, but prior to his/her anniversary date of the year in which the vacation is to be granted, which a serviceman/woman may have missed from work and still qualify for the vacation, shall be apportioned to the time since his/her return to work. For example, if a

serviceman/woman has returned to work six (6) months prior to his/her anniversary date of the year in which the vacation is to be granted, he/she shall not have missed work more than twenty-five (25) days on which work was available to him/her. If he/she returned three (3) months prior to his/her anniversary date of the year in which the vacation is to be granted he/she shall not have missed more than twelve (12) days on which work was made available. (If a fraction results in any computation of the percentage, the next lower number of days shall be considered.)

       i.    The anniversary of the employment date of each employee shall determine to what vacation he or she is entitled.

## ARTICLE 10 - HEALTH, WELFARE, AND INSURANCE

SEE MASTER AGREEMENT

## ARTICLE 11 - PENSION

1.    Effective July 1, 2017 the Employer agrees to remit contributions to the Teamsters Pension Fund of Philadelphia and Vicinity, (hereinafter referred to as the "Fund") in the manner described in the Sections below.

2.    Effective July 1, 2017, the Employer will remit contributions at the rate of twenty-eight dollars and thirty-five cents ($28.35) per week per employee to the Fund.

Effective July 1, 2018, the Employer will remit contributions at the rate of twenty-nine dollars and seventy-seven cents ($29.77) per week per employee to the Fund.

Effective July 1, 2019, the Employer will remit contributions at the rate of thirty-one dollars and twenty-six cents ($31.26) per week per employee to the Fund.

Effective July 1, 2020, the Employer will remit contributions at the rate of thirty-two dollars and eighty-two cents ($32.82) per week per employee to the Fund.

Effective July 1, 2021, the Employer will remit contributions at the rate of thirty-four dollars and forty-six cents ($34.46) per week per employee to the Fund.

3.    The contributions to the Fund shall be made for each seniority employee for each week worked or paid. Contributions for new employees will commence on the first day following the day that the employee has completed his probationary period.

4.    The sums required above shall be remitted monthly to the Fund. Such monthly payments shall be submitted to the Fund on or before the 28th day of the month following the month in which these monies were accrued.

5.    Should the Employer become delinquent in its contributions to the Fund, the Union may suspend the operations of the Employer three (3) working days after receipt of a verification by telegram, registered or certified mail, that the Employer is delinquent in its contributory obligations to the Fund.  Copies of the verification shall be sent to the Administrator of the Fund, the Employer and the Local Union.

6.    Failure on the part of the Employer to contribute as specified hereinabove shall make the Employer liable for all claims, damages, attorneys' fees and costs, plus all arrears in payments, plus ten percent (10%) as liquidated damages.

7.    The Employer shall complete and deliver to the Fund, on forms supplied by the Fund, an Employer's Contribution Report stating the name and social security number for each employee employed by the Employer along with the contributions accrued during the calendar month.

8.    The Trustees of the Fund or their duly accredited representatives shall have the authority to audit the payroll, tax and wage records of the Employer for all individuals performing work within the scope of and/or covered by this Agreement, for the purpose of determining the accuracy of contributions to the Fund and adherence to the requirements of this Agreement regarding coverage and contributions.  For purposes of such audit, the trustees or their designated representatives shall have access to the payroll, wage and tax records of all employees.

9.    By execution of this Agreement, the Employer authorizes the Employer's Association to enter into appropriate trust agreements necessary for the administration of the Fund and agrees to be bound by the terms of said trust agreements, thereby waiving all notice thereof and ratifying all actions already taken or to be taken by the Trustees within the scope of their authority.

10.    If an employee is granted a leave of absence by the Employer and if the employee wishes to continue Pension coverage during the period of the approved leave of absence, the Employer shall collect from said employee, prior to the leave of absence being effective, sufficient monies to pay the required contributions into the Fund during the period of absence.

## ARTICLE 12 - RETIREMENT PLAN

1.    The Employer will contribute to the Local 929 Retirement Plan (hereinafter referred to as the "Retirement Plan") in the manner described in the sections below for each hour worked, or if not worked, paid for pursuant to the terms of this Agreement covering holidays, vacations and paid sick leave (not worked) to a maximum of forty hours per week.

2.    Effective July 1, 2017, Employer shall contribute into the Retirement Plan the sum of one dollar and thirty cents ($1.30) per hour per employee.

Effective July 1, 2018, Employer shall contribute into the Retirement Plan the sum of one dollar and thirty and thirty-five cents ($1.35) per hour per employee.

Effective July 1, 2019, Employer shall contribute into the Retirement Plan the sum of one dollar and forty cents ($1.40) per hour per employee.

Effective July 1, 2020, Employer shall contribute into the Retirement Plan the sum of one dollar and forty-five cents ($1.45) per hour per employee.

Effective July 1, 2021, Employer shall contribute into the Retirement Plan the sum of one dollar and fifty cents ($1.50) per hour per employee.

3.    Contributions shall be made as set forth in section 2 above for each regular employee covered by this Agreement on the Employer's payroll, for each hour worked, or if not worked, paid for pursuant to the terms of this Agreement covering holidays, vacations and paid sick leave (not worked) to a maximum of forty (40) hours per week.

4.    The sums required by section 2 above shall be remitted monthly to the Retirement Plan.  Such monthly payments shall be received by the Administrator of the Plan on or before the 28th day of the month following the month in which these monies were accrued.

5.    The Union may suspend the operations of a delinquent Employer three (3) working days after receipt of a verification by telegram that such Employer is delinquent. Copies of the verification shall be sent by the Administrator of the Retirement Plan to the Employer and the Local Union.  The Employer shall be liable to each of his employees for any earnings lost because of operations being suspended.

6.    Failure on the part of the Employer to contribute as specified hereinabove, shall make him liable for all claims, damages, attorney's fees, court costs, plus all arrears in payments plus ten percent (10%) liquidated damages.

7.    a.    Each Employer shall complete and deliver to the Administrator of the Retirement Plan, an Employer's Remittance Report, stating the names, social security number, and total contributions paid or due by the Employer to the Retirement Plan for each regular employee employed by the Employer during the previous calendar month in accordance with the rules and regulations covering such remittances.

b.    The Trustees of the Retirement Plan shall have the right  to require any Employer covered by this Agreement to make available to the Trustees or their duly accredited representatives, all time cards, payroll records, social security records, withholding tax records, and state or municipal wage and income tax records for any or all employees covered by this Agreement.

8.    By the execution of this Agreement, the Employer authorizes entry into appropriate Trust Agreements necessary for the administration of such Fund and to designate the

Employer Trustees under such Agreement, hereby waiving all notice thereof and ratifying all actions already taken or to be taken by such Trustees within the scope of their authority.

9.      An employee shall be required to abide by the rules established by the Board of Trustees of the Retirement Plan.

## ARTICLE 13 - INSPECTION PRIVILEGES

Authorized agents of the Union shall have access to the Employer's establishment during working hours for the purpose of adjusting disputes, investigating working conditions, collection of dues, examining time sheets and any other related and relevant records, pertaining to the computation of compensation or fringe benefits of any individuals, ascertaining that the Agreement is being adhered to provided, however, that there is no interruption of the Employer's working schedule.  Union will stop in the Company's office first prior to gaining access to the Employer's establishment.

## ARTICLE 14 - DISCHARGE OR SUSPENSION

1.      The Employer may discharge or suspend any employee with just cause.  In all cases involving the discharge or suspension of an employee, the Company must immediately notify the employee of his/her discharge or suspension and the reason therefore.  Notice shall also be given to the Shop Steward, and written notice shall be mailed to the Local Union office within one (1) working day from the time of the discharge or suspension.  Examples of misconduct justifying discharge, suspension or other discipline include but are not limited to the following:

      a.    Violation of employer's absenteeism or lateness policy;
      b.    Dishonesty;
      c.    Calling an unauthorized strike or walkout;
      d.    Engaging in any form of sexual, religious or racial harassment;
      e.    Using, consuming or being under the influence of intoxicating or alcoholic beverages, marijuana, hallucinogens or other illegal drugs or narcotics on Company premises or while conducting company business;
      f.    Theft or attempted theft of Company property, customer's property or other employees' property;
      g.    Unauthorized use of Company property;
      h.    Wearing or carrying weapons of any type on Company premises or in a Company vehicle;
      i.    Defacement of Company property or premises;
      j.    Assault or battery committed on the Employer, co-worker, or any Employer's representative or customers.

2.      In respect to discharge, the Employer must give at least one (1) warning notice of the specific complaint against such employee in writing, and a copy of the same to the Union and

the Shop Steward. The warning notice as herein provided shall not remain in effect for a period of more than twelve (12) months from the date of the occurrence upon which the complaint and warning notice are based, except that no warning notice need be given to an employee before he/she is discharged if the cause of such discharge is:

a.   Insubordination;
b.   Failure to perform assigned duties in a satisfactory manner;
c.   Driving a Company vehicle without a valid driver's license;
d.   Carrying unauthorized passengers in Employer's vehicle; and
e.   Absence without notification for one or more consecutive days (except for emergency).
f.   Physical assault or battery on Employer, a supervisor, co-worker or any Employer's representative or customer;
g.   Theft or embezzlement of Employer monies or property regardless of value or length of service;
h.   Conviction of any felony;
i.   Sleeping on the job;
j.   Willful destruction of Employer's property and/or equipment;
k.   Reporting to work while under the influence of alcohol and/or illegal substances and/or possession of alcohol and/or illegal substances while on duty and/or while on Employer property or vehicle;
l.   Possession or use of weapons while on duty and/or while on Employer's property;
m.   Falsification of an employee time card, or punching/marking a time card that is not the employee's own time card.
n.   Intentional or willful destruction or sabotaging of Employer's property and/or equipment or its contractor(s) or agent(s);
o.   Dishonesty.

3.   Any employee discharged, must be paid in full for all wages owed him/her by the Employer within five (5) days from the date of discharge. Earned vacation pay shall also be paid in circumstances enumerated in paragraphs 1 a, f, and 2 e.

4.   A discharged or suspended employee must advise his/her Local Union in writing, within two (2) working days after receiving notification of such action against him/her, of his/her desire to appeal the discharge or suspension. Notice of appeal from discharge or suspension must be made to the Employer in writing within five (5) days from the date of discharge or suspension and return to his/her home terminal, whichever is later.

5.   Should it be proven that an injustice has been done a discharged or suspended employee, he/she shall be fully reinstated in his/her position and compensated at his/her usual rate of pay for lost work opportunity. If the Union and the Employer are unable to agree as to the settlement of the case, then it may be referred to the grievance arbitration procedure as set forth in this Agreement.

## ARTICLE 15 - GRIEVANCE PROCEDURE -- ARBITRATION

All grievances or disputes arising under the terms of this Agreement shall be handled in accordance with the manner provided in this Article.

1.    Grievances must be reduced to writing and presented within five (5) working days of their occurrence.  Individual grievances arising under the terms of this Agreement shall be adjusted in the first instance between the Union's steward and the Employer or his representative.  If such individual grievances are not successfully adjusted in the first instance, the matter shall be adjusted, if possible by negotiations between the officers and representatives of the Union and the designated representatives of the Employer.  In the case of grievances presented either by the Local Union or the Employer arising under the terms of this Agreement involving general interpretation of the Agreement or of general or uniform operations hereunder, or affecting all or a substantial number of the employees generally, the procedure set forth in the immediately preceding sentence shall be followed initially.

2.    In the event that during the term of this Agreement there shall be any grievance, controversy, or dispute arising under the terms of this Agreement, there shall be no suspension of work on the part of the employees, but there shall be an earnest effort to settle any such differences, and same shall be taken up for adjustment as hereinabove provided.  If such matter cannot be adjusted by the representatives of the Employer and the Local Union, then it may be submitted to arbitration in accordance with the rules of the American Arbitration Association.  The decision of the arbitrator shall be final and binding upon the parties to this agreement.  The cost of the arbitration shall be shared equally by the parties.

Within forty-eight (48) hours after notice by either party to the other of a desire to arbitrate, one arbitrator shall be selected by and represent the Employer, and one arbitrator shall be selected by and represent the Union.  The two so chosen, shall, within five (5) days after such notice select a third arbitrator within said period.  The selection shall be made and conducted under the prevailing rules of the American Arbitration Association.

3.    Except for the failure of the Employer to abide by an arbitration award  after a decision by the arbitrator, the Union agrees that there shall be no strikes, stoppages of work, or slowdowns, for any reason whatsoever during the term of this Agreement.

## ARTICLE 16 - FUNERAL LEAVE

In case of death in an employee's immediate family (i.e. spouse, mother, father, sister, brother, children, grandparents, grandchild, mother-in-law, father-in-law) the Employer shall grant such employee a maximum of three (3) days off with pay for the express purpose of attending services for the deceased.  The employee must provide the Employer with documentation verifying the death of the employee's immediate family member.

## ARTICLE 17 - WAGES

The starting rate for Packers and Custodians shall be as follows:

$10.00 per hour

Yearly Increase:

| | |
|---|---|
| Effective7/1/17 | $0.30 per hour |
| Effective 7/1/18 | $0.20 per hour |
| Effective 7/1/19 | $0.20 per hour |
| Effective 7/1/20 | $0.25 per hour |
| Effective 7/1/21 | $0.30 per hour |

Employees who are not at $10.00 per hour as of July 1, 2017, will have their rate increased to $10.00 per hour effective July 1, 2017 in lieu of receiving the negotiated increase effective 7/1/17. In addition to the yearly contract raises, employees who are not at the top rate shall receive an increase of twenty-five cents ($0.25) per hour, or part thereof, every three (3) months until such employee reaches the top rate in his classification.

Top Rates – Packers and Custodians:

| | |
|---|---|
| Effective7/1/17 | $13.55 |
| Effective 7/1/18 | $13.75 |
| Effective 7/1/19 | $13.95 |
| Effective 7/1/20 | $14.20 |
| Effective 7/1/21 | $14.50 |

## ARTICLE 18 - WORK WEEK

1.      The regular workweek in local area operations shall consist of five (5) days of eight (8) hours each, exclusive of meal period, Monday through Sunday. There shall be two days off for each workweek. Only one employee who works during the day shift will be allowed a day off on Saturday. Days off shall be awarded to the employees based upon seniority within the bargaining unit and based upon the number of slots for days off that occur during any workday. One employee in the bargaining unit based upon seniority may choose a Monday to Friday regular work week on a semi-annual basis, subject to the right of the Employer to reschedule those employees to cover vacation absences at their straight time rate. Paid sick days, personal holidays, vacation days and holidays all count as days worked. Company and Union agree that a sixth (6th) day is clarified to be the day worked after the employee is paid forty (40) regular hours or paid forty (40) hours in combination of regular pay and benefit day/s; (e.g. thirty-two (32) regular and eight (8) sick) until the sick day accrual is exhausted.

14

2.      Employees may be required by Employer to work in excess of the regular workweek schedules or work day schedules. All employees shall be compensated at the rate of time and one-half (1 ½) the regular hourly rate for all hours worked in excess of eight (8) hours in one (1) day and forty (40) hours in one (1) week. There shall be no pyramiding of overtime.

3.      All employees shall be required to punch in at the start of the day, and to punch out at the end of the day. The Employer shall pay the employees based on all hours, scheduled, regular and overtime.

4.      All employees shall receive a one-half hour paid lunch period. Lunch period does not count toward overtime in a day.

5.      All employees shall be entitled to two (2) fifteen (15) minute rest periods per eight (8) hour day. Company will also provide employees a fifteen (15) minute break after one (1) hour of overtime.

6.      The Company will guarantee seven (7) hours work for each Packer who reports for work at his regularly scheduled time.

## ARTICLE 19 - HOLIDAYS

1.      In any week in which one of the following legal holidays falls, that is, New Year's Day, Martin Luther King's Birthday, President's Day, Memorial Day, 4th of July, Labor Day, Easter Monday, Thanksgiving Day, Day after Thanksgiving, and Christmas Day, the regular work week shall be four (4) eight (8) hour days from Monday to Saturday and the Company shall pay holiday pay for such holidays consisting of eight (8) hours regular straight time pay.

2.      Any employee may be required by the Employer to work on any of the aforesaid holidays, but in such event, he/she shall be paid their Holiday Pay plus their straight time rate for the first eight (8) hours of work and then one and one-half times their straight time rate for each hour of work in excess of eight (8) on such holiday.

3.      All regular employees shall be paid for each recognized holiday or the day celebrated as such, if not worked, on the basis of eight (8) hours at their straight time rate of pay, provided they work any day during the payroll period and the full scheduled shift/work day before and after the holiday, unless they were absent on either of such two (2) days because of illness or injury excluding workers compensation injury, and did provide the Employer with a verifiable doctor's note. An employee who is scheduled to work a "working holiday" (e.g. Presidents' Day) and calls out sick must provide a doctor's note in order to be paid a sick day for that lost day.

4.      When a legal named holiday occurs on Saturday all regular employees shall receive holiday pay, consisting of eight (8) hours straight time pay.

5.      When a legal named holiday occurs on Sunday the holiday shall be celebrated on Monday.

6.      Personal Holidays

a.      Each employee shall be entitled to five (5) personal holidays per year provided seventy-two (72) hours' notice is given.  Approved personal holidays are not subject to bumping.

b.      All employees hired after June 6, 2007 will accrue one (1) day of personal holiday quarterly the first two years of employment and will receive five (5) personal days starting January 1 of the next year.

c.      Company will buy back unused personal holidays at the end of the calendar year at eight (8) hours per unused day.

7.      Black Out/Restrictive Periods

a.      In order to ensure sufficient staffing during the peak holiday business periods, the Company shall have the right to limit and/or deny requests for vacations, personal days, or leaves of absence during the seven days preceding the following holidays:

| | |
|---|---|
| New Year's Day | Independence Day (July 4th) |
| Valentine Day | Labor Day |
| Easter | Thanksgiving |
| Mother's Day | Christmas |
| Memorial Day | |

## ARTICLE 20 - SUPPLYING HELP

Subject to existing law, if an Employer requests employees from the Union (and such request shall not be mandatory), the Union shall attempt to supply competent and experienced help.  In the event the employees supplied by the Union are not, for good and sufficient reasons, satisfactory to the Employer, he may at his option request the Union for replacement.  The wages, hours and other conditions of employment of any employee covered by this Agreement shall be as herein provided whether such employee has become a member of the Union or not.

If the Employer requests and the Union does not supply the Employer with competent and experienced help within forty-eight (48) hours, the Employer may hire new employees from any source but he is to give preference to satisfactory employees with experience in his industry.  This clause shall not obligate the Employer to request help from the Union to provide men/women.

## ARTICLE 21 - GENERAL PROVISIONS

1.    Any employee who is scheduled to work on a day that will be an overtime day shall be paid for at least six (6) hours work.

2.    Employer will not be required to give his employees a definite starting time.

3.    Non-Discrimination:

    a.    The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, national origin, age or disability. Nor will they limit, segregate or classify employees in any way to deprive any individual employee of employment opportunities because of race, color, religion, sex, national origin, age or disability.

    b.    The Company and the Union agree that there will be no discrimination by the Company or the Union against any employee because of his or her membership in the Union or because of any employee's activity and/or support of the Union.

4.    The Union recognizes that the Employer covered by this Agreement must compete with other means of transportation, must keep abreast of developments in methods of distribution and must operate efficiently and economically if they are to meet rising costs of operation, including rates of pay and working conditions of members of the Union. Accordingly, the Union agrees that it will cooperate with the Employer to the end that his business may be operated to the utmost efficiency and further agrees that it will not interfere in any way with the Employer's right to operate and manage its business, provided that nothing herein will permit the employer to violate any of the terms and conditions of this Agreement.

5.    Lie Detector Test

The Company shall not require, request or suggest that an employee or applicant for employment take a polygraph or any other form of lie detector test.

6.    Company will provide insulated freezer coats only. Employer will replace each employee's coat on a yearly basis provided that the employee first returns his/her current coat to the Employer.

## ARTICLE 22 - MILITARY SERVICE

Employees enlisting or entering the military service or naval service of the United States pursuant to the provisions of the Universal Training and Service Act, or as amended, shall be granted all rights and privileges provided by the Act.

## ARTICLE 23 - COMPENSATION CLAIMS

The Employer agrees to cooperate toward the prompt settlement of employee on-the-job injury claims when such claims are due and owing as required by law. The Employer shall provide Workmen's Compensation protection for all employees even though not required by state law or the equivalent thereof if the injury arose out of or in the course of employment.

An employee who is injured on the job, and is sent home, or to a hospital, or who must obtain medical attention, shall receive pay at the applicable hourly rate for the balance of his/her regular shift on that day. An employee who has returned to his/her regular duties after sustaining a compensable injury who is required by the Workmen's Compensation doctor to receive additional medical treatment during his/her regularly scheduled working hours shall be entitled to the necessary time with pay.

## ARTICLE 24 - MANAGEMENT RIGHTS

The Union recognizes that, except as otherwise expressly limited in this Agreement, it is the exclusive function of the Employer to operate and manage its business, including but not limited to the right to maintain order, efficiency, and to generally operate the facility and its distribution of products; to hire, direct, classify, temporarily reassign, assign, schedule, transfer, evaluate, promote, demote, and lay off employees, and also to suspend, discipline, or to discharge employees for just cause, to make, alter and implement reasonable rules and regulations to be observed by employees; to establish job descriptions and determine job assignments; to determine the classifications, size and duties of the work force at any given time or shift; to establish reasonable production standards; to determine work methods, materials, and equipment; to determine staffing patterns, shifts and reasonable overtime requirements; to assign and allocate work within and between departments; to reorganize, discontinue, or enlarge any department or portions thereof; to determine the kind, type and location of facilities; to implement new and different operational methods and procedures and to introduce new or different services, methods or facilities.

## ARTICLE 25 - EQUIPMENT, ACCIDENTS AND REPORTS

It shall not be a violation of this Agreement where employees refuse to operate equipment unless such refusal is unjustified. All equipment which is refused because of not being mechanically sound or properly equipped, shall be appropriately tagged so that it cannot be used by other employees until the maintenance department has adjusted the complaint.

Under no circumstances will an employee be required or assigned to engage in any activity involving dangerous conditions of work or danger to person or property or in violation of any applicable statute or court order, or in violation of a government regulation relating to safety of person or equipment. The term "Dangerous Conditions of Work" does not relate to the type of cargo which is hauled or handled. Any employee involved in any accident shall immediately report said accident and any physical injury sustained. When required by his Employer, the

employee, before starting his next shift, shall make out an accident report in writing on forms furnished by the Employer and shall turn in all available names and addresses of witnesses to the accident. Failure to comply with the provision shall subject such employee to disciplinary action by the Employer.

Employees shall immediately, or at the end of their shift, report all defects of equipment. Such reports shall be made on a suitable form furnished by the Employer and shall be made in multiple copies, one copy to be retained by the Employee. The Employer shall not ask or require any employee to take out equipment that has been reported by any other employee as being in an unsafe operating condition until same has been approved as being safe by the mechanical department.

When the occasion arises where an employee gives written report on forms in use by the Employer of a vehicle being in an unsafe working or operating condition, and receives no consideration from the Employer, he/she shall take the matter up with the officers of the Union who will take the matter up with the Employer.

## ARTICLE 26 - WORK ASSIGNMENTS

The Employer agrees to respect the jurisdictional rules of the Union and shall not direct or require their employees or persons other than the employees in the bargaining units here involved to perform work which is recognized as the work of the employees in said units. This is not to interfere with bona fide contracts with bona fide unions.

## ARTICLE 27 - EMPLOYEE'S BAIL

1.      Employees will be bailed out of jail if accused of any offense in connection with the faithful discharge of their duties, and any employee forced to spend time in jail or in courts shall be compensated at his/her regular rate of pay. In addition, he/she shall be entitled to reimbursement for his/her meals, transportation, court costs, etc. provided, however, that faithful discharge of duties shall in no case include compliance with any other involving commission of a felony. In case an employee shall be subpoenaed as a company witness, he/she shall be reimbursed for all time lost and expenses incurred.

## ARTICLE 28 - ABSENCE

1.      Time off for Union Activities

The Employer agrees to grant the necessary time off, without discrimination or loss of seniority rights and without pay, to any employee designated by the Union to attend a labor convention or serve in any capacity on other official Union business, provided forty-eight (48) hours written notice is given to the Employer by the Union, specifying length of time off. The Union agrees that, in making its request for time off for Union activities, due consideration shall

be given to the number of employees affected in order that there shall be no disruption of the Employer's operations due to lack of available employees.

2.    Leave of Absence

Any employee desiring leave of absence from his/her employment shall secure written permission from both the Union and Employer. The maximum leave of absence shall be for ninety (90) days and may be extended for like periods. Permission for same must be secured from both the Union and Employer. During the period of absence, the employee shall not engage in gainful employment. Failure to comply with this provision shall result in the complete loss of seniority rights for the employee involved. Inability to work because of proven sickness or injury shall not result in the loss of seniority rights, provided, that such inability to work does not last beyond one (1) year.

The employee must make suitable arrangements for continuation of Health and Welfare and Pension payments before the leave may be approved by either the Union or the Employer.

An employee on a paid leave of absence or disability leave for a non-work-related injury or illness shall not continue to accrue paid leave (vacation leave, sick days or personal leave) or be entitled to holiday pay beyond the first ninety (90) days of leave. An employee on an unpaid leave of absence shall not accrue paid leave during the period of unpaid leave.

## ARTICLE 29 - JURY DUTY

When an employee is required to perform jury duty, he/she will be paid the difference between the pay he/she receives as juror and his/her normal regular straight time wages for the period of jury duty, provided that, if required by Employer, he/she works on days when not actually serving on the jury duty.

## ARTICLE 30 - SICK DAYS

Each employee shall be entitled to four (4) sick days per calendar year. Said sick days shall not be cumulative from year to year. If at the end of each contract year such sick day or sick days have not been taken, the Employer shall pay such employee eight (8) hours pay at his/her prevailing straight time hourly rate for each sick day or days not used.

Employees hired after June 6, 2007 will accrue one (1) sick day quarterly for the first two (2) years of employment. Such employees will receive four (4) sick days starting January 1 of the next year.

## ARTICLE 31 - LATENESS AND ABSENCE POLICY

1 .    ABSENCE:

An employee shall be disciplined according to the schedule set forth below upon the occurrence of an unexcused absence:

| | |
|---|---|
| First absence | First written warning |
| Second absence | Two (2) day suspension |
| Third absence | Five (5) day suspension |
| Fourth absence | Subject to discharge |

An unexcused absence consists of one or more consecutive days of absence by an employee who did not notify the Company more than one hour before the start of his shift that he is unable to report for work and did not obtain permission for the absence from the Employer. Any employee who is absent without permission for three (3) or more consecutive working days shall be considered to have voluntary quit their employment. Any employee who is absent on a holiday when work is scheduled shall be subject to discipline in accordance with the penalty schedule set forth above. An absence due to illness or injury that is not a paid sick day under the Agreement shall be deemed "unexcused" unless the employee is hospitalized or the absence is covered by the federal FMLA or New Jersey's Family Leave Act. The Employer reserves the right to require documentation of any such absence.

An employee on a paid leave of absence or disability leave for a non-work- related injury or illness shall not continue to accrue paid leave (vacation leave, sick days or personal leave) or be entitled to holiday pay beyond the first ninety (90) days of the leave. An employee on an unpaid leave of absence shall not accrue paid leave during the period of unpaid leave.

2 .    LATENESS:

A lateness shall be defined as any employee who reports to their work station more than five (5) minutes and less than three (3) hours beyond his/her posted starting time or more than five (5) minutes beyond his/her return from lunch time. The penalties for lateness shall be as follows:

| | |
|---|---|
| First lateness | Verbal warning |
| Second lateness | First written warning |
| Third lateness | Two day suspension |
| Fourth lateness | Five day suspension |
| Five lateness | Subject to discharge |

Any employee reporting to their work station late from any paid break period will be subject to disciplinary action as set forth in this Article.

Any absence, lateness, warning letter or disciplinary action taken pursuant to the above shall not remain in effect, nor be admissible in any proceeding between the parties hereto as

evidence of the employer's basis for disciplinary action for a period of more than twelve (12) months from the date of such absence, lateness, warning letter or discipline. Each absence, lateness, warning letter or disciplinary action shall be deemed to be removed from the employee's work record subsequent to the expiration of such twelve (12) month period. Any disciplinary action taken by the Employer pursuant hereto shall not be subject to the grievance and appeals procedures until an employee is discharged.

## ARTICLE 32 - LABOR/MANAGEMENT COMMITTEE

During the course of the Agreement, the Employer and Union shall jointly maintain and support a Labor/Management Committee, which shall meet at least annually (once every year), at the request of either party, to discuss matters of mutual concern as they arise including but not limited to, the dissemination of general information of interest to the parties, discussions on the administration of this Agreement; the discussion of grievances which have not been processed beyond complying with the initial pre-arbitration steps of the grievance process when such discussions are mutually agreed to by the parties; notify the Union of changes contemplated by the Employer which may affect members of the Union; and provide the Union representative the opportunity to share the views of their members and/or make suggestions on the subjects of interest to their members, including alleged inequities in the treatment of employees in the bargaining unit.

No more than three (3) Union representatives, in addition to the President of Local 929, shall participate on the Labor/Management Committee.

Meeting shall be scheduled after the work day of the Union Representative so as to not result in the loss of pay of any Union member.

The Labor/Management Committee shall not be authorized to negotiate or bargain over the terms of this Agreement and no representations made during a Labor/Management Committee meeting shall be construed to modify the terms of this Agreement in the absence of a written agreement signed by the parties.

## ARTICLE 33 - IBT D.R.I.V.E. AUTHORIZATION AND DEDUCTION

The Employer agrees to deduct from the paycheck of all employees who submit authorization cards and are covered by this Agreement voluntary contributions to D.R.I.V.E. D.R.I.V.E. shall notify the Employer of the amounts designated by each contributing employee that are to be deducted from his/her paycheck on a weekly basis for all weeks worked. The phrase "weeks worked" excludes any week other than a week in which the employee earned a wage. The Employer shall transmit to:

National D.R.I.V.E.
P.O. Box 758637
Baltimore, MD 21275

Send on a monthly basis, in one check the total amount deducted along with the name of each employee on whose behalf a deduction is made, the employee's social security number and the amount deducted from the employee's paycheck. No such authorization shall be recognized if in violation of State and Federal law. No deductions shall be made which is prohibited by applicable law.

## ARTICLE 34 - TEAMSTERS LOCAL 929
## POLITICAL ACTION COMMITTEE ("PAC")

The Employer shall deduct, from the gross wages or salary of each employee who voluntarily executes the Teamsters Local 929 Political Action Committee (PAC) payroll deduction authorization form that is Appendix 2 to this Agreement, the contributions at the frequency of deduction so authorized on that form, and remit those contributions to the Union at the same time that the Employer remits to the Union the Union dues that are separately voluntarily authorized by employees to be deducted from their gross wages or salaries and remitted to the Union pursuant to this Article. The Employer must remit PAC contributions and Union dues to the Union by separate checks or wire transfers. With each PAC contribution remittance, the Employer shall provide the Union with a written itemization setting forth as to each contributing employee his or her name, address, occupation, rate of PAC payroll deduction by the payroll or other applicable period, and contribution amount. The parties acknowledge that the Employer's costs of administration of this PAC payroll deduction have been taken into account by the parties in their negotiation of this Agreement and have been incorporated in the wage, salary and benefits provisions of this Agreement.

## ARTICLE 35 - TERMINATION CLAUSE

This Agreement shall be in full force and effect from July 1 2017 to and including June 30, 2022 and shall continue in full force and effect from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other at least sixty (60) days prior to the date of expiration.

It is further provided that where no such cancellation or termination notice is served and the parties desire to continue said Agreement but also desire to negotiate changes or revisions in this Agreement, either party may serve upon the other a notice, at least sixty (60) days prior to the expiration date of this Agreement, advising that such party desires to continue this Agreement but also desires to revise or change terms or conditions of such Agreement.

IN WITNESS WHEREOF, the undersigned have affixed their signatures as legal representatives of the Employer and the Union respectively this _9_ day of September, 2017, to be effective as of July 1, 2017.

WITNESS:

WITNESS:

J. AMBROGI FOOD DIST., INC

TEAMSTERS LOCAL UNION 929

KATHLEEN A. THOMAS
NOTARY PUBLIC OF NEW JERSEY
ID # 2364869
My Commission Expires 4/20/2019

24

Packers/Custodian

# EXHIBIT C



# AGREEMENT

between

## J. AMBROGI FOOD DIST., INC.
## PULLERS

and

## TEAMSTERS LOCAL UNION NO. 929

affiliated with

## INTERNATIONAL BROTHERHOOD OF TEAMSTERS
## PENNSYLVANIA CONFERENCE OF TEAMSTERS

and

## JOINT COUNCIL 53

TERM OF CONTRACT:

JULY 1, 2017 TO JUNE 30, 2022

# INDEX

ARTICLE 1 - UNION RECOGNITION................................................................1
ARTICLE 2 - UNION SECURITY AND CHECKOFF...............................................1
ARTICLE 3 - TRANSFER OF COMPANY TITLE OR INTEREST ...........................2
ARTICLE 4 - UNION ACTIVITIES ...................................................................2
ARTICLE 5 - PROTECTION OF RIGHTS .........................................................3
ARTICLE 7 - MAINTENANCE OF STANDARDS ................................................5
ARTICLE 8 - SHOP STEWARDS ....................................................................6
ARTICLE 9 - VACATIONS..............................................................................6
ARTICLE 10 - HEALTH, WELFARE, AND INSURANCE .....................................8
ARTICLE 11 - TEAMSTERS PENSION FUND ..................................................8
ARTICLE 12 - LOCAL 929 RETIREMENT PLAN................................................10
ARTICLE 13 - INSPECTION PRIVILEGES .......................................................11
ARTICLE 14 - DISCHARGE OR SUSPENSION .................................................11
ARTICLE 15 - GRIEVANCE PROCEDURE – ARBITRATION ................................13
ARTICLE 16 - FUNERAL LEAVE ....................................................................14
ARTICLE 17 - WAGES .................................................................................14
ARTICLE 18 - WORK WEEK .........................................................................15
ARTICLE 19 - HOLIDAYS .............................................................................16
ARTICLE 20 - SUPPLYING HELP ..................................................................17
ARTICLE 21 - GENERAL PROVISIONS ..........................................................18
ARTICLE 22 - MILITARY SERVICE.................................................................18
ARTICLE 23 - COMPENSATION CLAIMS ........................................................19
ARTICLE 24 - MANAGEMENT RIGHTS ..........................................................19
ARTICLE 25 - EQUIPMENT, ACCIDENTS AND REPORTS .................................19
ARTICLE 26 - WORK ASSIGNMENTS.............................................................20
ARTICLE 27 – EMPLOYEE'S BAIL .................................................................20
ARTICLE 28 - ABSENCE ..............................................................................20
ARTICLE 29 - JURY DUTY ...........................................................................21
ARTICLE 30 - SICK DAYS ............................................................................21
ARTICLE 31 - LATENESS AND ABSENCE POLICY...........................................22
ARTICLE 32 - LABOR/MANAGEMENT COMMITTEE.........................................23
ARTICLE 33 - IBT D.R.I.V.E. AUTHORIZATION AND DEDUCTION .....................23
ARTICLE 34 - TEAMSTERS LOCAL 929 .........................................................24
POLITICAL ACTION COMMITTEE ("PAC") ....................................................24
ARTICLE 35 - TERMINATION CLAUSE ..........................................................24

THIS AGREEMENT entered into as of this 1st day of July 2017, by and between **J. AMBROGI FOOD DISTRIBUTION, INC., (PULLERS)** (hereinafter referred to as the "Employer") and **TEAMSTERS LOCAL UNION NO. 929** of Philadelphia, Pennsylvania, (hereinafter referred to as the "Union"), affiliated with the International Brotherhood of Teamsters, PA Conference of Teamsters and Joint Council No. 53.

NOW THIS 1st day of July 2017, the parties hereto agree as follows:

In this agreement, whenever a word is used in the masculine gender, it is intended to and does include both men and women equally.

## ARTICLE 1 - UNION RECOGNITION

The Employer recognizes the Union as the sole and exclusive bargaining agency during the life of this Agreement for all classifications of employees covered by this contract and coming under the jurisdiction of the Union in Philadelphia, Pennsylvania and vicinity as provided by the National Labor Relations Act in Case No. 4-RC-18550.

## ARTICLE 2 - UNION SECURITY AND CHECKOFF

1.    Union Security

All present employees who are members of the Local Union on the effective date of this Agreement shall remain members of the Local Union in good standing as a condition of employment. All present employees who are not members of the Local Union and all employees who are hired hereafter shall become and remain members in good standing of the Local Union as a condition of employment on and after the 31st day following the beginning of their employment or on and after the 31st day following the effective date of this section or the date of this Agreement, whichever is the later. This provision shall be made and become effective as of such time as it may be made and become effective under the provisions of the National Labor Relations Act, but not retroactively.

The failure of any person to become a member of the Union at the required time shall obligate the Employer, upon written notice from the Union to such effect and to the further effect that Union membership was available to such person on the same terms and conditions generally available to other members, to forthwith discharge such person. Further, the failure of any person to maintain his Union Membership in good standing as required herein shall, upon written notice to the Employer by the Union to such effect, obligate the Employer to discharge such person.
In the event of any change in the law during the term of this Agreement the Employer agrees that the Union will be entitled to receive the maximum Union Security which may be lawfully permissible.

1

No provision of this Article shall apply in any state to the extent that it may be prohibited by state law. If under applicable state law additional requirements must be met before any such provision may become effective, such additional requirements shall first be met.

If any provision of this Article is invalid under the law of any state wherein this Agreement is executed, such provision shall be modified to comply with the requirements of state law or shall be re-negotiated for the purpose of adequate replacement. If such negotiation shall not result in a mutually satisfactory agreement, the Union shall be permitted all legal or economic recourse.

2.    Check off

The Employer agrees to deduct from the pay of all employees covered by this Agreement the dues, initiation fees and/or uniform assessments of the Local Union having jurisdiction over such employees and agrees to remit to said Local Union all such deductions prior to the end of the month for which the deduction is made. Where laws require written authorization by the employees, the same is to be furnished in the form required. No deduction shall be made which is prohibited by applicable law.

3.    The Employer shall add to the list submitted to the Union the names of all new employees hired since the last list was submitted and delete the names of employees who are no longer employed.

## ARTICLE 3 - TRANSFER OF COMPANY TITLE OR INTEREST

This Agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. It is understood by this section that the parties hereto shall not use any leasing device to a third party to evade this contract.

The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, assignee, etc., of the operation covered by this Agreement or any part thereof. Such notice shall be in writing with a copy to the Union at the time the seller, transferor or lessor executes a contract of the type of transaction as herein described.

In the event the Employer fails to give the notice herein required, it shall be liable to the Union and to the employees covered for all damages sustained as a result of such failure to give such notice.

## ARTICLE 4 - UNION ACTIVITIES

Any employee member of the Union acting in any official capacity whatsoever shall not be discriminated against for his acts as such officer of the Union so long as such acts do not interfere with the conduct of the Employer's business nor shall any employee covered by this

Agreement be discriminated against, discharged, laid off or otherwise punished because of Union membership or activities.

## ARTICLE 5 - PROTECTION OF RIGHTS

1.    Picket Lines

It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action nor shall such employee be permanently replaced in the event an employee refuses to enter upon any property involved in a primary labor dispute, or refuses to go through or work behind any primary picket line, including the primary picket line of Unions party to this Agreement, and including primary picket lines at the Employer's places of business.

2.    Struck Goods

It shall not be a violation of this Agreement and it shall not be a cause for discharge or disciplinary action nor shall such employee be permanently replaced if any employee refuses to perform any service which his Employer undertakes to perform as an ally of an Employer or person whose employees are on strike, and which service, but for such strikes, would be performed by the employees of the Employer or person on strike.

## ARTICLE 6 - SENIORITY

1.    Seniority

Straight seniority shall prevail particularly as to layoffs, and re-employment, promotions, transfers from one job to another or from one department to another within the Pullers bargaining unit, or for assignments for overtime work within the Pullers bargaining unit and shall be conditioned upon the ability of the employee to perform the duties of the job to which seniority privileges may otherwise entitle him.

2.    Layoffs and Recall

a.    In the event of layoffs, employees shall be laid off in order of their seniority by job classification and shall be recalled in the inverse order to their layoff. An employee to be laid off in his job classification shall be permitted to bump the employee with less seniority in a job within either the Pullers bargaining unit or the Warehouse bargaining unit paying the same or less in which he is experienced and shall receive the rate of pay of the job to which he bumps. If an employee's job is abolished he shall be free to bump anywhere within the Warehouse unit or the Pullers unit which his seniority will allow, provided he is capable of performing the job. The employee who is displaced by the initial bump shall not be permitted to bump into another position nor shall any other employee have any right to bump into another position.

3

b.      When the Pullers bargaining unit workforce is again increased, the employees are to return to work in their job classification as of their layoff and in the reverse order in which they were laid off according to their seniority roster.

c.      A registered letter mailed to the employee's last known mailing address will constitute reasonable effort by the Employer to re-engage employee laid off. A registered copy of such letter shall be mailed to the Union.

3.      Injury Absence

Any employee who has been injured in the course of his employment shall retain and accrue his seniority during such absence for a maximum of one year for reemployment purposes only.

4.      Loss of Seniority

All rights of an employee accrued to him under this Article shall be lost in the event of a break in his continuous service for the employer caused by any one of the following:

   a. Violation of employer's absenteeism or lateness policy;
   b. Dishonesty;
   c. Insubordination;
   d. Engaging in any form of sexual, religious or racial harassment; Consumption of alcoholic beverages on Company premises, reporting to work intoxicated or consuming intoxicating beverages during working hours;
   e. Using or being under the influence of intoxicating beverages, marijuana, hallucinogens or other illegal drugs or narcotics on Company premises or while conducting Company business.
   f. Voluntary termination of employment;
   g. Any discharge for just cause or job forfeiture;
   h. When recalled after layoff, upon the failure to return to work within five (5) workdays after the employee has received notification in accordance with Section 2 (c);
   i. Acceptance of other employment while on leave;
   j. Layoff in excess of one (1) year.
   l. Non-work related illness or disability in excess of six months, unless extended by mutual agreement of the parties.

When an employee whose continuous service has been broken by any of the causes listed in the above section is re-employed subsequent thereto, the employee shall begin as a new employee of the Employer.

4

5.     Seniority List

A seniority list showing the classification of each employee shall be posted by the Employer at a place accessible to the employees and a copy thereof mailed to the Union.

6.     Probationary Period

The probationary period for employees shall consist of ninety (90) consecutive calendar days of employment from the date of beginning employment, during which time the employees shall not be covered in any way by the terms and conditions of this Agreement, and may be disciplined or discharged for any reason whatsoever at the exclusive discretion of the Employer without recourse to the grievance or arbitration provisions of this Agreement.  In order to permit the Company to further observe the qualifications and suitability of any probationary employee, it may request the Union's consent to an extension of an additional thirty (30) days, provided such request is in writing. The Union shall not unreasonably withhold its agreement to this request.  If still employed at the end of such period, the seniority of the employee shall be effective as of the beginning of employment and his name shall be added forthwith to the employees" seniority list and notice thereof shall be furnished by the Employer to the Union.

## ARTICLE 7 - MAINTENANCE OF STANDARDS

1.     Protection of Conditions

The Employer agrees that all conditions of employment relating to wages, hours of work and general working conditions which the parties hereto have inadvertently or mistakenly failed to address and agree upon in this Agreement shall be maintained at the level in effect at the signing of this Agreement. This provision shall be inapplicable with respect to each and every subject that is mentioned and agreed upon or addressed in the text of this Agreement.

It is agreed that the provisions of this section shall not apply to inadvertent or bona fide errors made by the Employer or the Union in applying the terms and conditions of this Agreement if such error is corrected within ninety (90) days from the date of error.

This provision does not give the Employer the right to impose or continue wages, hours, and working conditions less than those contained in this Agreement.

2.     Extra Contract Agreements

The Employer agrees not to enter into any agreement or contract with his employees, individually or collectively, which in any way conflicts with the term and provisions of this Agreement.  Any such agreement shall be null and void.

All new Company policies will be negotiated with the Union.

## ARTICLE 8 - SHOP STEWARDS

1.    The Employer recognizes the right of the Union to designate shop stewards and alternates.

2.    The authority of shop stewards and alternates so designated by the Union shall be limited to, and shall not exceed, the following duties and activities:

a.    The investigation and presentation of grievances in accordance with the provisions of the collective bargaining agreement;

b.    The collection of dues, when authorized by appropriate Local Union Action;

c.    The transmission of such messages and information which shall originate with, and are authorized by the Local Union or its officers, provided such messages and information

1.    Have been reduced to writing, or

2.    If not reduced to writing, are of a routine nature and do not involve work stoppage, slowdowns, refusal to handle goods, or any other interference with the Employer's business.

3.    Shop stewards and alternates have no authority to take strike action, or any other action interrupting the Employer's business, except as authorized by official action of the Union.

4.    The Employer recognizes these limitations upon the authority of job stewards and their alternates, and shall not hold the Union liable for any unauthorized acts. The Employer in so recognizing such limitations shall have the authority to impose proper discipline, including discharge, in the event the shop steward has taken unauthorized strike action, slowdown, or work stoppage in violation of this Agreement.

5.    Stewards shall be permitted to investigate, present and process grievances on or off the property of the Employer. Such time spent in handling grievances shall be considered working hours in computing daily and/or weekly overtime.

6.    Shop Stewards or alternates shall be entitled to leave of one (1) day off each calendar year with pay for shop steward training and education.

## ARTICLE 9 - VACATIONS

1.    Employees shall be paid forty (40) straight time hours for each week of vacation for which they qualify.

6

2.     All employees shall earn vacation on a "pro-rata" basis as follows:

    a.    Every regular employee who has been continuously employed in the employ of the Employer for a period of one (1) year shall be entitled to receive one (1) week's vacation with pay.

    b.    Employees with three (3) years of continuous service shall be entitled to two (2) weeks" vacation with pay.

    c.    Every regular employee who has been continuously in the employ of the Employer for a period of five (5) years or more shall be entitled to receive three (3) weeks" vacation with pay.

    d.    Every regular employee who has been continuously in the employ of the Employer for a period of ten (10) years shall be entitled to receive four (4) weeks" vacation with pay.

3.    a.    The Employer shall have the right to schedule the number of men in each classification who shall receive vacations at a particular time. Employees within a particular classification must select their vacations according to their seniority, unless mutually agreed to by the Union and the Employer. The vacation period of each qualified employee shall be set with due regard to the desire, seniority and preference of the employees, consistent with the efficient operation of the Employer's business. Vacations shall be scheduled on a year-round basis.

    b.    As to a man eligible for a four (4) weeks" vacation, the Employer shall have the option, after working same out with the Union, of paying the man or having him take the fourth (4th) week off. The fourth (4th) weeks" vacation need not be consecutive. When the man works the fourth (4th) week, the man shall receive his vacation pay plus pay for the time worked.

    c.    The vacation period for eligible employees shall consist of consecutive days, provided that in the case of employees entitled to two (2) weeks" vacation, Employer may split the vacation into two (2) separate one-week periods with the consent of the eligible employee.

    d.    If, in the future, Employer and Union agree that a man-power shortage has developed, an employee may be required to work during the vacation period, but in such event, he shall receive, in addition to his earnings for that week, vacation pay equal to fifty (50) hours at his straight time hourly rate.

    e.    If an employee's vacation falls in a week in which a holiday recognized by this Agreement falls, the employee shall receive an additional day's vacation or a day's pay at the straight time rate in lieu thereof to be determined by the Employer.

f.      Vacation pay shall be paid to the eligible employee before he starts his vacation.  Vacation pay as well as any vacation bought back in lieu of being taken will be based on the employee's average weekly wages over the six (6) weeks preceding the payment date.

g.      Upon permanent layoff or under circumstances that do not involve circumstances described in Article 14, paragraphs 1 b, d, e, and paragraphs 2 a, b, c or d, any employee on the seniority list with one or more years of service shall be entitled to vacation pay on a pro rata basis.

h.      Returning servicemen who would be entitled to receive a vacation under the Uniformed Services Employment and Reemployment Rights Act, by virtue of this Agreement, shall receive a vacation, or pay in lieu thereof, as set forth above. The number of days after his return, but prior to his anniversary date of the year in which the vacation is to be granted, which a serviceman may have missed from work and still qualify for the vacation, shall be apportioned to the time since his return to work.  For example, if a serviceman has returned to work six (6) months prior to his anniversary date of the year in which the vacation is to be granted, he shall not have missed work more than twenty-five (25) days on which work was available to him.  If he returned three (3) months prior to his anniversary date of the year in which the vacation is to be granted he shall not have missed more than twelve (12) days on which work was made available. (If a fraction results in any computation of the percentage, the next lower number of days shall be considered.)

i.      The anniversary of the employment date of each employee shall determine to what vacation he or she is entitled.

## ARTICLE 10 - HEALTH, WELFARE, AND INSURANCE

See Master Agreement

## ARTICLE 11 - TEAMSTERS PENSION FUND

1.      Effective July 1, 2017, the Employer agrees to remit contributions to the Teamsters Pension Fund of Philadelphia and Vicinity, (hereinafter referred to as the "Fund") in the manner described in the Sections below.

2.      Effective July 1, 2017, the Employer will remit contributions at the rate of thirty-one dollars and fifty cents ($31.50) per week per employee to the Fund.

Effective July 1, 2018, the Employer will remit contributions at the rate of thirty-three dollars and eight cents ($33.08) per week per employee at the Fund.

Effective July 1, 2019 the Employer will remit contributions at the rate of thirty-four dollars and seventy-three cents ($34.73) per week per employee to the Fund.

Effective July 1, 2020, the Employer will remit contributions at the rate of thirty-six dollars and forty-seven cents ($36.47), per week per employee to the Fund.

Effective July 1, 2021, the Employer will remit contributions at the rate of thirty-eight dollars and twenty-nine cents ($38.29) per week per employee to the Fund.

3.    The contributions to the Fund shall be made for each seniority employee for each week worked or paid.  Contributions for new employees will commence on the first day following the day that the employee has completed his probationary period.

4.    The sums required above shall be remitted monthly to the Fund.  Such monthly payments shall be submitted to the Fund on or before the 28th day of the month following the month in which these monies were accrued.

5.    Should the Employer become delinquent in its contributions to the Fund, the Union may suspend the operations of the Employer three (3) working days after receipt of a verification by telegram, registered or certified mail, that the Employer is delinquent in its contributory obligations to the Fund.  Copies of the verification shall be sent to the Administrator of the Fund, the Employer and the Local Union.

6.    Failure on the part of the Employer to contribute as specified hereinabove shall make the Employer liable for all claims, damages, attorney's fees and costs, plus all arrears in payments, plus ten percent (10%) as liquidated damages.

7.    The Employer shall complete and deliver to the Fund, on forms supplied by the Fund, an Employer's Contribution Report stating the name and social security number for each employee employed by the Employer along with the contributions accrued during the calendar month.

8.    The Trustees of the Fund or their duly accredited representatives shall have the authority to audit the payroll, tax and wage records of the Employer for all individuals performing work within the scope of and/or covered by this Agreement, for the purpose of determining the accuracy of contributions to the Fund and adherence to the requirements of this Agreement regarding coverage and contributions.  For purposes of such audit, the Trustees or their designated representatives shall have access to the payroll, wage and tax records of all employees.

9.    By execution of this Agreement, the Employer authorizes the Employer's Association to enter into appropriate trust agreements necessary for the administration of the Fund and agrees to be bound by the terms of said trust agreements, thereby waiving all notice thereof and ratifying all actions already taken or to be taken by the Trustees within the scope of their authority.

9

10.     If an employee is granted a leave of absence by the Employer and if the employee wishes to continue Pension coverage during the period of the approved leave of absence, the Employer shall collect from said employee, prior to the leave of absence being effective, sufficient monies to pay the required contributions into the Fund during the period of absence.

## ARTICLE 12 - LOCAL 929 RETIREMENT PLAN

1.     The Employer will contribute to the Local 929 Retirement Plan (hereinafter referred to as the "Retirement Plan") in the manner described in the sections below for each hour worked, or if not worked, paid for pursuant to the terms of this Agreement covering holidays, vacations and paid sick leave (not worked) to a maximum of forty hours per week.

2.     Effective July 1, 2017, Employer shall contribute into the Retirement Plan the sum of one dollar and thirty cents ($1.30) per hour per employee.

Effective July 1, 2018, Employer shall contribute into the Retirement Plan the sum of one dollar and thirty-five cents ninety- five cents ($1.35) per hour per employee.

Effective July 1, 2019, Employer shall contribute into the Retirement Plan the sum of one dollar and forty cents ($1.40) per hour per employee.

Effective July 1, 2020, Employer shall contribute into the Retirement Plan the sum of one dollar and forty-five cents ($1.45) per hour per employee.

Effective July 1, 2021, Employer shall contribute into the Retirement Plan the sum of one dollar and fifty cents ($1.50) per hour per employee.

3.     Contributions shall be made as set forth in section 2 above for each regular employee covered by this Agreement on the Employer's payroll, for each hour worked, or if not worked, paid for pursuant to the terms of this Agreement covering holidays, vacations and paid sick leave (not worked) to a maximum of forty (40) hours per week.

4.     The sums required by section 2 above shall be remitted monthly to the Retirement Plan.  Such monthly payments shall be received by the Administrator of the Plan on or before the 28th day of the month following the month in which these monies were accrued.

5.     The Union may suspend the operations of a delinquent Employer three (3) working days after receipt of a verification by telegram that such Employer is delinquent. Copies of the verification shall be sent by the Administrator of the Retirement Plan to the Employer and the Local Union. The Employer shall be liable to each of his employees for any earnings lost because of operations being suspended.

6.    Failure on the part of the Employer to contribute as specified hereinabove, shall make him liable for all claims, damages, attorney's fees, court costs, plus all arrears in payments plus ten percent (10%) liquidated damages.

7.    a.    Each Employer shall complete and deliver to the Administrator of the Retirement Plan, an Employer's Remittance Report, stating the names, social security number, and total contributions paid or due by the Employer to the Retirement Plan for each regular employee employed by the Employer during the previous calendar month in accordance with the rules and regulations covering such remittances.

b.    The Trustees of the Retirement Plan shall have the right to require any Employer covered by this Agreement to make available to the Trustees or their duly accredited representatives, all time cards, payroll records, social security records, withholding tax records, and state or municipal wage and income tax records for any or all employees covered by this Agreement.

8.    By the execution of this Agreement, the Employer authorizes entry into appropriate Trust Agreements necessary for the administration of such Fund and to designate the Employer Trustees under such Agreement, hereby waiving all notice thereof and ratifying all actions already taken or to be taken by such Trustees within the scope of their authority.

9.    An employee shall be required to abide by the rules established by the Board of Trustees of the Retirement Plan.

## ARTICLE 13 - INSPECTION PRIVILEGES

Authorized agents of the Union shall have access to the Employer's establishment during working hours for the purpose of adjusting disputes, investigating working conditions, collection of dues, examining time sheets and any other related and relevant records, pertaining to the computation of compensation or fringe benefits of any individuals, ascertaining that the Agreement is being adhered to provided, however, that there is no interruption of the Employer's working schedule.  Union will stop in the Company's office first prior to gaining access to the Employer's establishment.

## ARTICLE 14 - DISCHARGE OR SUSPENSION

1.    The Employer may discharge or suspend any employee with just cause.  In all cases involving the discharge or suspension of an employee, the Company must immediately notify the employee of his discharge or suspension and the reason therefore.  Notice shall also be given to the Shop Steward, and written notice shall be mailed to the Local Union office within one (1) working day from the time of the discharge or suspension.  Examples of misconduct justifying discharge, suspension or other discipline include but are not limited to the following:

11

a.   Violation of employer's absenteeism or lateness policy;
b.   Dishonesty;
c.   Calling an unauthorized strike or walkout;
d.   Engaging in any form of sexual, religious or racial harassment;
e.   Using, consuming or being under the influence of intoxicating or alcoholic beverages, marijuana, hallucinogens or other illegal drugs or narcotics on Company premises or while conducting Company business;
f.   Theft or attempted theft of Company property, customer's property or other employees" property;
g.   Unauthorized use of Company property;
h.   Wearing or carrying weapons of any type on Company premises or in a Company vehicle;
i.   Defacement of Company property or premises;
j.   Assault or battery committed on the Employer, co-workers, or any Employer's representative or customers.

2.      In respect to discharge, the Employer must give at least one (1) warning notice of the specific complaint against such employee in writing, and a copy of the same to the Union and the Shop Steward. The warning notice as herein provided shall not remain in effect for a period of more than twelve (12) months from the date of the occurrence upon which the complaint and warning notice are based, except that no warning notice need be given to an employee before he is discharged if the cause of such discharge is:

a.   Insubordination;
b.   Failure to perform assigned duties in a satisfactory manner;
c.   Driving a Company vehicle without a valid driver's license;
d.   Carrying unauthorized passengers in Employer's vehicle;
e.   Absence without notification for one or more consecutive days (except for emergency);
f.   Physical assault or battery on Employer, a supervisor, co-worker or any Employer's representative or customer;
g.   Theft or embezzlement of Employer monies or property regardless of value or length of service;
h.   Conviction of any felony;
i.   Sleeping on the job;
j.   Willful destruction of Employer's property and/or equipment;
k.   Reporting to work while under the influence of alcohol and/ illegal substances and/or possession of alcohol and/or illegal substances while on duty and/or while on Employer property or in Employer's vehicle;
l.   Possession or use of weapons while on duty and/or while on Employer's property;
m.   Falsification of an employee time card, or punching/marking a time card that is not the employee's own time card.
n.   Intentional or willful destruction or sabotaging of Employer's property and/or equipment or its contractor(s) or agent(s);
o.   Dishonesty.

12

3.      Any employee discharged, must be paid in full for all wages owed him by the Employer within five (5) days from the date of discharge.  Earned vacation pay shall also be paid in circumstances enumerated in paragraphs 1a, f, and 2e.

4.      A discharged or suspended employee must advise his Local Union in writing, within two (2) working days after receiving notification of such action against him, of his desire to appeal the discharge or suspension.  Notice of appeal from discharge or suspension must be made to the Employer in writing within five (5) days from the date of discharge or suspension and return to his home terminal, whichever is later.

5.      Should it be proven that an injustice has been done a discharged or suspended employee, he shall be fully reinstated in his position and compensated at his usual rate of pay for lost work opportunity.  If the Union and the Employer are unable to agree as to the settlement of the case, then it may be referred to the grievance procedure as set forth in this Agreement.

6.      A Puller employee shall be required to pull a minimum of an average of eighty (80) packages an hour, calculated on a weekly (pay period) basis.  Six (6) instances of mispicks or shortages during the employee's shift are considered as a minus one hundred (-100) packages for each error over six (6).

Employees who do not pull the minimum will be subject to the following disciplinary steps:

| | |
|---|---|
| First offense | Verbal warning |
| Second offense | Written warning |
| Third offense | 3 day suspension |
| Fourth offense | 5 day suspension |
| Fifth offense | Subject to discharge |

## ARTICLE 15 - GRIEVANCE PROCEDURE – ARBITRATION

All grievances or disputes arising under the terms of this Agreement shall be handled in accordance with the manner provided in this Article.

1.      Grievances must be reduced to writing and presented within five (5) working days of their occurrence.  Individual grievances arising under the terms of this Agreement shall be adjusted in the first instance between the Union's steward and the Employer or his representative.  If such individual grievances are not successfully adjusted in the first instance, the matter shall be adjusted, if possible, by negotiations between the officers and representatives of the Union and the designated representatives of the Employer.  In the case of grievances presented either by the Local Union or the Employer arising under the terms of this Agreement involving general interpretation of the Agreement or of general or uniform operations hereunder,

13

or affecting all or a substantial number of the employees generally, the procedure set forth in the immediately preceding sentence shall be followed initially.

2.    In the event that during the term of this Agreement there shall be any grievance, controversy, or dispute arising under the terms of this Agreement, there shall be no suspension of work on the part of the employees, but there shall be an earnest effort to settle any such differences, and same shall be taken up for adjustment as hereinabove provided. If such matter cannot be adjusted by the representatives of the Employer and the Local Union, then it may be submitted to arbitration in accordance with the rules of the American Arbitration Association. The decision of the arbitrator shall be final and binding upon the parties to this agreement. The cost of the arbitration shall be shared equally by the parties.

Within forty-eight (48) hours after notice by either party to the other of a desire to arbitrate, one arbitrator shall be selected by and represent the Employer, and one arbitrator shall be selected by and represent the Union. The two so chosen, shall, within five (5) days after such notice select a third arbitrator within said period. The selection shall be made and conducted under the prevailing rules of the American Arbitration Association.

3.    Except for the failure of the Employer to abide by an arbitration award after a decision by the arbitrator, the Union agrees that there shall be no strikes, stoppages of work, or slowdowns, for any reason whatsoever during the term of this Agreement.

## ARTICLE 16 - FUNERAL LEAVE

In case of death in an employee's immediate family (i.e. spouse, mother, father, sister, brother, children, grandparents, grandchild, mother-in-law, father-in-law) the Employer shall grant such employee a maximum of three (3) days off with pay for the express purpose of attending services for the deceased. The employee must provide the Employer with documentation verifying the death of the employee's immediate family member.

## ARTICLE 17 - WAGES

The starting straight time hourly rate for newly hired Puller employees shall be $13.00 per hour and $0.23 per case. New hires will be paid solely at the starting straight time rate for the first thirty (30) calendar days of employment, after which the employee will be paid the greater of their weekly piece rate earnings or their weekly earnings calculated at the employee's straight time hourly rate.

The top straight time rate for this contract shall be $16.50 per hour. This Top Rate increase during the term of this contract is at the same Top Rate for the Warehouse bargaining unit. Puller employees who are not at the Top Rate shall receive an increase of twenty-five cents ($0.25) per hour every three (3) months until such employee reaches the top rate.

14

Effective 7/1 of each contract year, all employees shall receive the following wage increases:

Employees with a wage rate of $0.30 or $0.29 per package on July 1, 2017:

| | |
|---|---|
| Effective 7/1/17 | $0.01 per package increase (one cent) |
| Effective 7/1/18 | $0.0025/ per package increase (1/4 cent) |
| Effective 7/1/19 | $0.0025/ per package increase (1/4 cent) |
| Effective 7/1/20 | $0.0025/ per package increase (1/4 cent) |
| Effective 7/1/21 | $0.0025/ per package increase (1/4 cent) |

Employees with a rage rate of $0.27 or $0.28 per package on July 1, 2017:

| | |
|---|---|
| Effective 7/1/17 | $0.01 per package increase (one cent) |
| Effective 7/1/18 | $0.005/ per package increase (1/2 cent) |
| Effective 7/1/19 | $0.005/ per package increase (1/2 cent) |
| Effective 7/1/20 | $0.005/ per package increase (1/2 cent) |
| Effective 7/1/21 | $0.005/ per package increase (1/2 cent) |

Employees with a rage rate of $0.23 or $0.25 per package on July 1, 2017:

| | |
|---|---|
| Effective 7/1/17 | $0.01 per package increase (one cent) |
| Effective 7/1/18 | $0.01 per package increase (one cent) |
| Effective 7/1/19 | $0.005/ per package increase (1/2 cent) |
| Effective 7/1/20 | $0.005/ per package increase (1/2 cent) |
| Effective 7/1/21 | $0.01 per package increase (one cent) |

## ARTICLE 18 - WORK WEEK

1.      The regular work week in local area operations shall consist of five (5) days of eight (8) hours each, exclusive of meal period, Sunday through Saturday. There shall be two (2) days off for each work week. Days off shall be awarded to the employees based upon seniority based upon the number of slots for days off that occur during any work day. Up to three (3) employees based upon seniority may choose a Sunday to Thursday regular work week on a semi-annual basis, subject to the right of the Employer to reschedule those employees to cover vacation and personal holiday absences at their straight time rate.

2.      Employees may be required by Employer to work in excess of the regular work week schedules or work day schedules. All employees shall be compensated at the rate of time and one-half (1½) the regular hourly rate for all hours worked in excess of eight (8) hours in one (1) day and forty (40) hours in one (1) week. There shall be no pyramiding of overtime. Company and Union agree that a sixth (6th) day is clarified to be the day worked after the employee is paid forty (40) regular hours or paid forty (40) hours in combination of regular pay

15

and benefit day/s; (e.g. thirty-two (32) regular and eight (8) sick) until the sick day accrual is exhausted.

    3.    All employees shall be required to punch in at the start of the day, and to punch out at the end of the day. The Employer shall pay the employees based on all hours, scheduled, regular and overtime.

    4.    All employees shall continue to receive a one-half hour paid lunch period.  Lunch period does not count toward overtime in a day.

    5.    All employees shall be entitled to two (2) fifteen (15) minute rest periods per eight (8) hour day.  Company will also provide employees a fifteen (15) minute break after one (1) hour of overtime.

    6.    The company will guarantee that each employee who reports for work at his regularly scheduled time shall be paid a minimum of seven (7) hours of pay calculated at the employee's straight time hourly rate.

## ARTICLE 19 - HOLIDAYS

    1.    In any week in which one of the following legal holidays falls, that is, New Year's Day, Martin Luther King's Birthday, Presidents" Day, Memorial Day, 4th of July, Labor Day, Easter Monday, Thanksgiving Day, and Christmas Day, the regular work week shall be four (4) eight (8) hour days from Monday to Saturday and the Company shall pay holiday pay for such holidays consisting of eight (8) hours regular straight time pay.

    2.    All regular employees may be required by the Employer to work on any of the aforesaid holidays, but in such event, he shall be compensated at, double his regular rate of pay up to eight (8) hours and then time and one-half (1/2) for all hours worked after eight (8) on such holiday.

    3.    All regular employees shall be paid for each recognized holiday or the day celebrated as such, if not worked, on the basis of eight (8) hours at their straight time rate of pay, provided they work any day during the payroll period and the full scheduled shift/work day before and after the holiday, unless they were absent on either of such two (2) days because of illness or injury excluding workers compensation injury.  An employee who is scheduled to work a "working holiday" (e.g. Martin Luther King's Birthday, Presidents" Day, and Easter Monday) and calls out sick must provide a doctor's note in order to be paid a sick day for that lost day.

    4.    When a legal named holiday occurs on Saturday all regular employees shall receive holiday pay, consisting of eight (8) hours straight time pay.

5.   When a legal named holiday occurs on Sunday the holiday shall be celebrated on Monday.

6.   Personal Holidays

a.   Each employee shall be entitled to five (5) personal holidays per year provided seventy-two (72) hours" notice is given.  Approved personal holidays are not subject to bumping.  Company shall pay eight (8) hours of pay calculated at the employee's straight time hourly rate for each personal holiday used.  Company will buy back at eight (8) hours of pay calculated at the employee's straight time hour rate per unused day at the end of the calendar year.

b.   All new members hired after June 6, 2007 will accrue one (1) day of personal holiday quarterly the first two years of employment and will receive five (5) personal days starting January 1 of the next year.

7.   Black Out/Restrictive Periods

a.   In order to ensure sufficient staffing during the peak holiday business periods, the Company shall have the right to limit and/or deny requests for vacations, personal days, or leaves of absence during the seven days preceding the following holidays:

| | |
|---|---|
| New Year's Day | Independence Day (July 4th) |
| Valentine Day | Labor Day |
| Easter | Thanksgiving |
| Mother's Day | Christmas |
| Memorial Day | |

## ARTICLE 20 - SUPPLYING HELP

Subject to existing law, if an Employer requests men from the Union (and such request shall not be mandatory), the Union shall attempt to supply competent and experienced help.  In the event the men supplied by the Union are not, for good and sufficient reasons, satisfactory to the Employer, he may at his option request the Union for replacement. The wages, hours and other conditions of employment of any employee covered by this Agreement shall be as herein provided whether such employee has become a member of the Union or not.

If the Employer requests and the Union does not supply the Employer with competent and experienced help within forty-eight (48) hours, the Employer may hire new employees from any source but he is to give preference to satisfactory employees with experience in his industry. This clause shall not obligate the Employer to request help from the Union to provide men.

## ARTICLE 21 - GENERAL PROVISIONS

1.       Any employee who is scheduled to work on a day that will be an overtime day shall be paid at least for six (6) hours work.

2.       Employer will not be required to give his employees a definite starting time. (Continue Present System.)

3.       Non-Discrimination

a.       The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, national origin, disability or age. Nor will they limit, segregate or classify employees in any way to deprive any individual employee of employment opportunities because of race, color, religion, sex, national origin, disability or age.

b.       The Company and the Union agree that there will be no discrimination by the Company or the Union against any employee because of his or her membership in the Union or because of any employee's activity and/or support of the Union.

4.       The Union recognizes that the Employer covered by this Agreement must compete with other means of transportation, must keep abreast of developments in methods of distribution, and must operate efficiently and economically if Employer is to meet rising costs of operation, including rates of pay and working conditions to members of the Union. Accordingly, the Union agrees that it will cooperate with Employer to the end that his business may be operated to the utmost efficiency and further agrees that it will not interfere in any way with the Employer's right to operate and manage its business, provided that nothing herein will permit the Employer to violate any of the terms and conditions of this Agreement.

5.       The Employer shall not hire extra equipment until his own usable equipment and supply of employees is exhausted. In hiring extra equipment, the Employer, where possible, shall give preference to operators honoring the level of wages, hours and working conditions of this Agreement.

6.       Lie Detector Test

The Company shall not require, request or suggest that an employee or applicant for employment take a polygraph or any other form of lie detector test.

## ARTICLE 22 - MILITARY SERVICE

Employees enlisting or entering the military service or naval service of the United States pursuant to the provisions of the Universal Training and Service Act, or as amended, shall be granted all rights and privileges provided by the Act.

## ARTICLE 23 - COMPENSATION CLAIMS

The Employer agrees to cooperate toward the prompt settlement of employee on-the-job injury claims when such claims are due and owing as required by law. The Employer shall provide Workmen's Compensation protection for all employees even though not required by state law or the equivalent thereof if the injury arose out of or in the course of employment.

An employee who is injured on the job, and is sent home, or to a hospital, or who must obtain medical attention, shall receive pay at the applicable hourly rate for the balance of his regular shift on that day. An employee who has returned to his regular duties after sustaining a compensable injury who is required by the Workmen's Compensation doctor to receive additional medical treatment during his regularly scheduled working hours shall be entitled to the necessary time with pay.

## ARTICLE 24 - MANAGEMENT RIGHTS

The Union recognizes that, except as otherwise expressly limited in this Agreement, it is the exclusive function of the Employer to operate and manage its business, including but not limited to the right to maintain order, efficiency, and to generally operate the facility and its distribution of products; to hire, direct, classify, temporarily reassign, assign, schedule, transfer, evaluate, promote, demote, and lay off employees, and also to suspend, discipline, or to discharge employees for just cause, to make, alter and implement reasonable rules and regulations to be observed by employees; to establish job descriptions and determine job assignments; to determine the classifications, size and duties of the work force at any given time or shift; to establish reasonable production standards; to determine work methods, materials, and equipment; to determine staffing patterns, shifts and reasonable overtime requirements; to assign and allocate work within and between departments; to reorganize, discontinue, or enlarge any department or portions thereof; to determine the kind, type and location of facilities; to implement new and different operational methods and procedures and to introduce new or different services, methods or facilities.

## ARTICLE 25 - EQUIPMENT, ACCIDENTS AND REPORTS

The Employer shall provide the employee with two (2) company logo long sleeve hooded sweatshirts six (6) months after an employee's hire date.

It shall not be a violation of this Agreement where employees refuse to operate equipment unless such refusal is unjustified. All equipment which is refused because of not being mechanically sound or properly equipped, shall be appropriately tagged so that it cannot be used by other employees until the maintenance department has adjusted the complaint.

19

Under no circumstances will an employee be required or assigned to engage in any activity involving dangerous conditions of work or danger to person or property or in violation of any applicable statute or court order, or in violation of a government regulation relating to safety of person or equipment. The term "Dangerous Conditions of Work" does not relate to the type of cargo which is hauled or handled. Any employee involved in any accident shall immediately report said accident and any physical injury sustained. When required by his Employer, the employee, before starting his next shift, shall make out an accident report in writing on forms furnished by the Employer and shall turn in all available names and addresses of witnesses to the accident. Failure to comply with the provision shall subject such employee to disciplinary action by the Employer.

Employees shall immediately, or at the end of their shift, report all defects of equipment. Such reports shall be made on a suitable form furnished by the Employer and shall be made in multiple copies, one copy to be retained by the Employee. The Employer shall not ask or require any employee to take out equipment that has been reported by any other employee as being in an unsafe operating condition until same has been approved as being safe by the mechanical department.

When the occasion arises where an employee gives written report on forms in use by the Employer of a vehicle being in an unsafe working or operating condition, and receives no consideration from the Employer, he shall take the matter up with the officers of the Union who will take the matter up with the Employer.

## ARTICLE 26 - WORK ASSIGNMENTS

The Employer agrees to respect the jurisdictional rules of the Union and shall not direct or require their employees or persons other than the employees in the bargaining units here involved to perform work which is recognized as the work of the employees in said units. This is not to interfere with bona fide contracts with bona fide unions.

## ARTICLE 27 – EMPLOYEE'S BAIL

1.      Employees will be bailed out of jail if accused of any offense in connection with the faithful discharge of their duties, and any employee forced to spend time in jail or in courts shall be compensated at his regular rate of pay. In addition, he shall be entitled to reimbursement for his meals, transportation, court costs, etc. provided, however, that faithful discharge of duties shall in no case include compliance with any other involving commission of a felony. In case an employee shall be subpoenaed as a Company witness, he shall be reimbursed for all time lost and expenses incurred.

## ARTICLE 28 - ABSENCE

1.      Time off for Union Activities

20

The Employer agrees to grant the necessary time off, without discrimination or loss of seniority rights and without pay, to any employee designated by the Union to attend a labor convention or serve in any capacity on other official Union business, provided forty-eight (48) hours written notice is given to the Employer by the Union, specifying length of time off. The Union agrees that, in making its request for time off for Union activities, due consideration shall be given to the number of men affected in order that there shall be no disruption of the Employer's operations due to lack of available employees.

2.    Leave of Absence

Any employee desiring leave of absence from his employment shall secure written permission from both the Union and Employer. The maximum leave of absence shall be for ninety (90) days and may be extended for like periods. Permission for same must be secured from both the Union and Employer. During the period of absence, the employee shall not engage in gainful employment in the same industry. Failure to comply with this provision shall result in the complete loss of seniority rights for the employee involved. Inability to work because of proven sickness or injury shall not result in the loss of seniority rights, provided, that such inability to work does not last beyond one (1) year.

The employee must make suitable arrangements for continuation of Health and Welfare and Pension payments before the leave may be approved by either the Union or the Employer.

An employee on a paid leave of absence or disability leave for a non-work-related injury or illness shall not continue to accrue paid leave (vacation leave, sick days or personal leave) or be entitled to holiday pay beyond the first ninety (90) days of leave. An employee on an unpaid leave of absence shall not accrue paid leave during the period of unpaid leave.

## ARTICLE 29 - JURY DUTY

When an employee is required to perform jury duty, he will be paid the difference between the pay he receives as juror and his normal regular straight time wages for the period of jury duty, provided that, if required by Employer, he works on days when not actually serving on the jury duty.

## ARTICLE 30 - SICK DAYS

Each employee shall be entitled to four (4) sick days per calendar year. Said sick days shall not be cumulative from year to year. Company shall pay eight (8) hours of pay calculated at the employee's straight time hourly rate for each sick day used. If at the end of each contract year such sick day or sick days have not been taken, the Employer shall pay such employee eight (8) hours pay at his prevailing straight time hourly rate for each sick day or days not used.

21

All employees hired after June 6, 2007 will accrue one (1) day of sick quarterly the first two years of employment.

## ARTICLE 31 - LATENESS AND ABSENCE POLICY

1.    ABSENCE:

An employee shall be disciplined according to the schedule set forth below upon the occurrence of an unexcused absence:

| | |
|---|---|
| First absence | Written warning |
| Second absence | Two (2) day suspension |
| Third absence | Five (5) day suspension |
| Fourth absence | Subject to discharge |

An unexcused absence consists of one or more consecutive days of absence by an employee who did not notify the Company more than one hour before the start of his shift that he is unable to report for work and did not obtain permission for the absence from the Employer. Any employee who is absent without permission for three (3) or more consecutive working days shall be considered to have voluntary quit their employment. Any employee who is absent on a holiday when work is scheduled shall be subject to discipline in accordance with the penalty schedule set forth above. An absence due to illness or injury that is not a paid sick day under the Agreement shall be deemed "unexcused" unless the employee is hospitalized or the absence is covered by the federal FMLA or New Jersey's Family Leave Act. The Employer reserves the right to require documentation of any such absence.

2.    LATENESS:

A lateness shall be defined as any employee who reports to their work station more than five (5) minutes and less than three (3) hours beyond his/her posted starting time or more than five (5) minutes beyond his/her return from lunch time. The penalties for lateness shall be as follows:

| | |
|---|---|
| First lateness | Verbal warning |
| Second lateness | First written warning |
| Third lateness | Two day suspension |
| Fourth lateness | Five day suspension |
| Five lateness | Subject to discharge |

Any employee reporting to their work station late from any paid break period will be subject to disciplinary action as set forth in this Article.

Any absence, lateness, warning letter or disciplinary action taken pursuant to the above shall not remain in effect, nor be admissible in any proceeding between the parties hereto as

evidence of the employer's basis for disciplinary action for a period of more than twelve (12) months from the date of such absence, lateness, warning letter or discipline. Each absence, lateness, warning letter or disciplinary action shall be deemed to be removed from the employee's work record subsequent to the expiration of such twelve (12) month period. Any disciplinary action taken by the Employer pursuant hereto shall not be subject to the grievance and appeals procedures until an employee is discharged.

## ARTICLE 32 - LABOR/MANAGEMENT COMMITTEE

During the course of the Agreement, the Employer and Union shall jointly maintain and support a Labor/Management Committee, which shall meet at least annually (once every year), at the request of either party, to discuss matters of mutual concern as they arise including but not limited to, the dissemination of general information of interest to the parties, discussions on the administration of this Agreement; the discussion of grievances which have not been processed beyond complying with the initial pre-arbitration steps of the grievance process when such discussions are mutually agreed to by the parties; notify the Union of changes contemplated by the Employer which may affect members of the Union; and provide the Union representative the opportunity to share the views of their members and/or make suggestions on the subjects of interest to their members, including alleged inequities in the treatment of employees in the bargaining unit.

No more than three (3) Union representatives, in addition to the President of Local 929, shall participate on the Labor/Management Committee.

Meeting shall be scheduled after the work day of the Union Representative so as to not result in the loss of pay of any Union member.

The Labor/Management Committee shall not be authorized to negotiate or bargain over the terms of this Agreement and no representations made during a Labor/Management Committee meeting shall be construed to modify the terms of this Agreement in the absence of a written agreement signed by the parties.

## ARTICLE 33 - IBT D.R.I.V.E. AUTHORIZATION AND DEDUCTION

The Employer agrees to deduct from the paycheck of all employees who submit authorization cards and are covered by this Agreement voluntary contributions to D.R.I.V.E. D.R.I.V.E. shall notify the Employer of the amounts designated by each contributing employee that are to be deducted from his/her paycheck on a weekly basis for all weeks worked. The phrase "weeks worked" excludes any week other than a week in which the employee earned a wage. The Employer shall transmit to:

National D.R.I.V.E.
P.O. Box 758637
Baltimore, MD 21275

23

Send on a monthly basis, in one check the total amount deducted along with the name of each employee on whose behalf a deduction is made, the employee's social security number and the amount deducted from the employee's paycheck. No such authorization shall be recognized if in violation of State and Federal law. No deductions shall be made which is prohibited by applicable law.

## ARTICLE 34 - TEAMSTERS LOCAL 929
## POLITICAL ACTION COMMITTEE ("PAC")

The Employer shall deduct, from the gross wages or salary of each employee who voluntarily executes the Teamsters Local 929 Political Action Committee (PAC) payroll deduction authorization form that is Appendix 2 to this Agreement, the contributions at the frequency of deduction so authorized on that form, and remit those contributions to the Union at the same time that the Employer remits to the Union the Union dues that are separately voluntarily authorized by employees to be deducted from their gross wages or salaries and remitted to the Union pursuant to this Article. The Employer must remit PAC contributions and Union dues to the Union by separate checks or wire transfers. With each PAC contribution remittance, the Employer shall provide the Union with a written itemization setting forth as to each contributing employee his or her name, address, occupation, rate of PAC payroll deduction by the payroll or other applicable period, and contribution amount. The parties acknowledge that the Employer's costs of administration of this PAC payroll deduction have been taken into account by the parties in their negotiation of this Agreement and have been incorporated in the wage, salary and benefits provisions of this Agreement.

## ARTICLE 35 - TERMINATION CLAUSE

This Agreement shall be in full force and effect from July 1, 2017 to and including June 30, 2022 and shall continue in full force and effect from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other at least sixty (60) days prior to the date of expiration.

It is further provided that where no such cancellation or termination notice is served and the parties desire to continue said Agreement but also desire to negotiate changes or revisions in this Agreement, either party may serve upon the other a notice, at least sixty (60) days prior to the expiration date of this Agreement, advising that such party desires to continue this Agreement but also desires to revise or change terms or conditions of such Agreement.

24

IN WITNESS WHEREOF, the undersigned have affixed their signatures as legal representatives of the Employer and the Union respectively this __9__ day of September, 2017, to be effective as of, __July 1_____, 20_17_.

WITNESS: _____

_____
J. AMBROSI FOOD DIST., INC.
President

WITNESS: _____

_____
TEAMSTERS LOCAL UNION NO.929

KATHLEEN A. THOMAS
NOTARY PUBLIC OF NEW JERSEY
ID # 2384889
My Commission Expires 4/20/2019

25

# EXHIBIT D



# AGREEMENT

between

## J. AMBROGI FOOD DISTRIBUTION, INC. WAREHOUSE

and

## TEAMSTERS LOCAL UNION NO. 929

affiliated with

INTERNATIONAL BROTHERHOOD OF TEAMSTERS
PENNSYLVANIA CONFERENCE OF TEAMSTERS

and

JOINT COUNCIL 53

TERM OF CONTRACT:

JULY 1, 2017 TO JUNE 30, 2022

INDEX

*Article 6*
*Seniority*

ARTICLE 1 - UNION RECOGNITION ........................................................... 1
ARTICLE 2 - UNION SECURITY AND CHECKOFF ................................... 1
ARTICLE 3 - TRANSFER OF COMPANY TITLE OR INTEREST ............ 2
ARTICLE 4 - UNION ACTIVITIES ............................................................. 3
ARTICLE 5 - PROTECTION OF RIGHTS ................................................... 3
ARTICLE 7 - MAINTENANCE OF STANDARDS ....................................... 5
ARTICLE 8 - SHOP STEWARDS ................................................................ 6
ARTICLE 9 - VACATIONS .......................................................................... 7
ARTICLE 10 - HEALTH, WELFARE, AND INSURANCE ......................... 8
ARTICLE 11 - TEAMSTERS PENSION FUND .......................................... 9
ARTICLE 12 - LOCAL 929 RETIREMENT PLAN .................................. 10
ARTICLE 13 - INSPECTION PRIVILEGES ............................................. 11
ARTICLE 14 - DISCHARGE OR SUSPENSION ....................................... 12
ARTICLE 15 - GRIEVANCE PROCEDURE - ARBITRATION ................ 13
ARTICLE 16 - FUNERAL LEAVE ............................................................. 14
ARTICLE 17 - WAGES ............................................................................... 15
ARTICLE 18 - WORK WEEK .................................................................... 15
ARTICLE 19 - HOLIDAYS ......................................................................... 16
ARTICLE 20 - SUPPLYING HELP ........................................................... 17
ARTICLE 21 - GENERAL PROVISIONS ................................................. 18
ARTICLE 22 - MILITARY SERVICE ........................................................ 18
ARTICLE 23 - COMPENSATION CLAIMS ............................................. 19
ARTICLE 24 - MANAGEMENT RIGHTS ................................................ 19
ARTICLE 25 - EQUIPMENT, ACCIDENTS AND REPORTS ................. 19
ARTICLE 26 - WORK ASSIGNMENTS .................................................... 20
ARTICLE 27 - EMPLOYEE'S BAIL .......................................................... 20
ARTICLE 28 - ABSENCE ........................................................................... 21
ARTICLE 29 - JURY DUTY ....................................................................... 21
ARTICLE 30 - SICK DAYS ........................................................................ 22
ARTICLE 31 - LATNESS AND ABSENCE POLICY ............................... 22
ARTICLE 32 - LABOR/MANAGEMENT COMMITTEE ......................... 23
ARTICLE 33 – IBT D.R.I.V.E. AUTHORIZATION AND DEDUCTION ............ 24
ARTICLE 34 - TEAMSTERS LOCAL 929 ............................................... 24
POLITICAL ACTION COMMITTEE ("PAC") ......................................... 24
ARTICLE 35 - TERMINATION CLAUSE ................................................ 24

THIS AGREEMENT entered into as of this 1st day of July 2017, by and between **J. AMBROGI FOOD DISTRIBUTION, INC., (WAREHOUSE)** (hereinafter referred to as the "Employer") and **TEAMSTERS LOCAL UNION NO. 929** of Philadelphia, Pennsylvania, (hereinafter referred to as the "Union"), affiliated with the International Brotherhood of Teamsters, PA Conference of Teamsters and Joint Council No. 53.

NOW THIS 1ST day of July 2017, the parties hereto agree as follows:

In this Agreement, whenever a word is used in the masculine gender, it is intended to and does include both men and women equally.

## ARTICLE 1 - UNION RECOGNITION

The Employer recognizes the Union as the sole and exclusive bargaining agency during the life of this Agreement for all classifications of employees covered by this contract and coming under the jurisdiction of the Union in Philadelphia, Pennsylvania and vicinity as provided by the National Labor Relations Act in Case No. 4-RC-18550.

## ARTICLE 2 - UNION SECURITY AND CHECKOFF

1.     Union Security

All present employees who are members of the Local Union on the effective date of this Agreement shall remain members of the Local Union in good standing as a condition of employment. All present employees who are not members of the Local Union and all employees who are hired hereafter shall become and remain members in good standing of the Local Union as a condition of employment on and after the 31ST day following the beginning of their employment or on and after the 31ST day following the effective date of this section or the date of this Agreement, whichever is the later. This provision shall be made and become effective as of such time as it may be made and become effective under the provisions of the National Labor Relations Act, but not retroactively.

The failure of any person to become a member of the Union at the required time shall obligate the Employer, upon notice from the Union to such effect and to the further effect that Union membership was available to such person on the same terms and conditions generally available to other members, to forthwith discharge such person. Further, the failure of any person to maintain his Union Membership in good standing as required herein shall, upon written notice to the Employer by the Union to such effect, obligate the Employer to discharge such person.

In the event of any change in the law during the term of this Agreement the Employer agrees that the Union will be entitled to receive the maximum Union Security which may be lawfully permissible.

No provision of this Article shall apply in any state to the extent that it may be prohibited by state law. If under applicable state law additional requirements must be met before any such provision may become effective, such additional requirements shall first be met.

If any provisions of this Article is invalid under the law of any state wherein this Agreement is executed, such provision shall be modified to comply with the requirements of state law or shall be re-negotiated for the purpose of adequate replacement. If such negotiation shall not result in a mutually satisfactory agreement, the Union shall be permitted all legal or economic recourse.

2.    Check Off

The Employer agrees to deduct from the pay of all employees covered by this Agreement the dues, initiation fees and/or uniform assessments of the Local Union having jurisdiction over such employees and agrees to remit to said Local Union all such deductions prior to the end of the month for which the deduction is made. Where laws require written authorization by the employees, the same is to be furnished in the form required. No deduction shall be made which is prohibited by applicable law.

3.    The Employer shall add to the list submitted to the Union the names of all new employees hired since the last list was submitted and delete the names of employees who are no longer employed.

## ARTICLE 3 - TRANSFER OF COMPANY TITLE OR INTEREST

This Agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. It is understood by this section that the parties hereto shall not use any leasing device to a third party to evade this contract.

The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, assignee, etc., of the operation covered by this Agreement or any part thereof. Such notice shall be in writing with a copy to the Union at the time the seller, transferor or lessor executes a contract of the type of transaction as herein described.

In the event the Employer fails to give the notice herein required, it shall be liable to the Union and to the employees covered for all damages sustained as a result of such failure to give such notice.

## ARTICLE 4 - UNION ACTIVITIES

Any employee member of the Union acting in any official capacity whatsoever shall not be discriminated against for his acts as such officer of the Union so long as such acts do not interfere with the conduct of the Employer's business nor shall any employee covered by this Agreement be discriminated against, discharged, laid off or otherwise punished because of Union membership or activities.

## ARTICLE 5 - PROTECTION OF RIGHTS

1.    Picket Lines

It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action nor shall such employee be permanently replaced in the event an employee refuses to enter upon any property involved in a primary labor dispute, or refuses to go through or work behind any primary picket line, including the primary picket line of Unions party to this Agreement, and including primary picket lines at the Employer's places of business.

2.    Struck Goods

It shall not be a violation of this Agreement and it shall not be a cause for discharge or disciplinary action nor shall such employee be permanently replaced if any employee refuses to perform any service which his Employer undertakes to perform as an ally of an Employer or person whose employees are on strike, and which service, but for such strikes, would be performed by the employees of the Employer or person on strike.

## ARTICLE 6 - SENIORITY

1.    Seniority

Straight seniority shall prevail particularly as to layoffs, and re-employment, promotions, transfers from one job to another or from one department to another in the Warehouse bargaining unit, or for assignments for overtime work in the Warehouse bargaining unit and shall be conditioned upon the ability of the employee to perform the duties of the job to which seniority privileges may otherwise entitle him.

2.    Layoffs and Recall

a.    In the event of layoffs, employees shall be laid off in order of their seniority by job classification and shall be recalled in the inverse order to their layoff. An employee to be laid off in his job classification shall be permitted to bump the employee in a job within either the Warehouse bargaining unit or the Puller bargaining unit paying the same or less in which he is experienced and shall receive the rate of pay of the job to

3

which he bumps. If an employee's job is abolished he shall be free to bump anywhere within the Warehouse unit or the Pullers unit which his seniority will allow, provided he is capable of performing the job. The employee who is displaced by the initial bump shall not be permitted to bump into another position nor shall any other employee have any right to bump into another position.

      b.    When the Warehouse bargaining unit workforce is again increased, the laid off employees are to return to work in their job classification as of their layoff and in the reverse order in which they were laid off according to their seniority roster.

      c.    A registered letter mailed to the employee's last known mailing address will constitute reasonable effort by the Employer to re-engage employees laid off. A registered copy of such letter shall be mailed to the Union.

      3.    Injury Absence

Any employee who has been injured in the course of his employment shall retain and accrue his seniority during such absence for a maximum of one year for reemployment purposes only.

      4.    Loss of Seniority

All rights of an employee accrued to him under this Article shall be lost in the event of a break in his continuous service for the employer caused by any one of the following:

      a.    Violation of employer's absenteeism or lateness policy;
      b.    Dishonesty;
      c.    Insubordination;
      d.    Engaging in any form of sexual, religious or racial harassment;
      e.    Consumption of alcoholic beverages on Company premises, reporting to work intoxicated or consuming intoxicating beverages during working hours;
      f.    Using or being under the influence of intoxicating beverages, marijuana, hallucinogens other illegal drugs or narcotics on Company premises or while conducting Company business;
      g.    Voluntary termination of employment;
      h.    Any discharge for just cause or job forfeiture;
      i.    When recalled after layoff, upon the failure to return to work within five (5) workdays after the employee has received notification in accordance with Section 2 (c);
      j.    Acceptance of other employment while on leave;
      k.    Layoff in excess of one (1) year:
      l.    Non-work-related illness or disability in excess of six (6) months, unless extended by mutual agreement of the parties.

When an employee whose continuous service has been broken by any of the causes listed in the above section is re-employed subsequent thereto, the employee shall begin as a new employee of the Employer.

5.    Seniority List

A seniority list showing the classification of each employee shall be posted by the Employer at a place accessible to the employees and a copy thereof mailed to the Union.

6.    Probationary Period

The probationary period for employees shall consist of ninety (90) consecutive calendar days of employment from the date of beginning employment, during which time the employees shall not be covered in any way by the terms and conditions of this Agreement, and may be disciplined or discharged for any reason whatsoever at the exclusive discretion of the Employer without recourse to the grievance or arbitration provisions of this Agreement. In order to permit the Company to further observe the qualifications and suitability of any probationary employee, it may request the Union's consent to an extension of an additional thirty (30) days, provided such request is in writing. The Union shall not unreasonably withhold its agreement to this request. If still employed at the end of such period, the seniority of the employee shall be effective as of the beginning of employment and his name shall be added forthwith to the employees' seniority list and notice thereof shall be furnished by the Employer to the Union.

## ARTICLE 7 - MAINTENANCE OF STANDARDS

1.    Protection of Conditions

The Employer agrees that all conditions of employment relating to wages, hours of work and general working conditions which the parties hereto have inadvertently or mistakenly failed to address and agree upon in this Agreement shall be maintained at the level in effect at the signing of this Agreement. This provision shall be inapplicable respect to each and every subject that is mentioned and agreed upon or addressed in the text of this Agreement.

It is agreed that the provisions of this section shall not apply to inadvertent or bona fide errors made by the Employer or the Union in applying the terms and conditions of this Agreement if such error is corrected within ninety (90) days from the date of error.

This provision does not give the Employer the right to impose or continue wages, hours, and working conditions less than those contained in this Agreement.

2.    Extra Contract Agreements

The Employer agrees not to enter into any agreement or contract with his employees, individually or collectively, which in any way conflicts with the term and provisions of this Agreement.  Any such agreement shall be null and void.

All new Company policies will be negotiated with the Union.

## ARTICLE 8 - SHOP STEWARDS

1.    The Employer recognizes the right of the Union to designate shop stewards and alternates.

2.    The authority of shop stewards and alternates so designated by the Union shall be limited to, and shall not exceed, the following duties and activities:

a.    The investigation and presentation of grievances in accordance with the provisions of the collective bargaining agreement;

b.    The collection of dues, when authorized by appropriate Local Union Action;

c.    The transmission of such messages and information which shall originate with and are authorized by the Local Union or its officers, provided such messages and information:

1.    Have been reduced to writing, or

2.    If not reduced to writing are of a routine nature and do not involve work stoppage, slowdowns, refusal to handle goods, or any other interference with the Employer's business.

3.    Shop stewards and alternates have no authority to take strike action, or any other action interrupting the Employer's business, except as authorized by official action of the Union.

4.    The Employer recognizes these limitations upon the authority of shop stewards and their alternates, and shall not hold the Union liable for any unauthorized acts.  The Employer in so recognizing such limitations shall have the authority to impose proper discipline, including discharge, in the event the shop steward has taken unauthorized strike action, slowdown, or work stoppage in violation of this Agreement.

5.      Stewards shall be permitted to investigate, present and process grievances on or off the property of the Employer. Such time spent in handling grievances shall be considered working hours in computing daily and/or weekly overtime.

6.      Shop Stewards or alternates shall be entitled to leave of one (1) day off each calendar year with pay for shop steward training and education.

## ARTICLE 9 - VACATIONS

1.      Employees shall be paid forty (40) straight time hours for each week of vacation for which they qualify.

2.      All employees shall earn vacation on a pro-rata basis as follows:

    a.      Every regular employee who has been continuously employed in the employ of the Employer for a period of one (1) year shall be entitled to receive one (1) weeks' vacation with pay.

    b.      Every regular employee who has been continuously employed in the employ of the Employer with three (3) years of continuous service shall be entitled to two (2) weeks' vacation with pay.

    c.      Every regular employee who has been continuously in the employ of the Employer for a period of five (5) years or more shall be entitled to receive three (3) weeks' vacation with pay.

    d.      Every regular employee who has been continuously in the employ of the Employer for a period often (10) years shall be entitled to receive four (4) weeks' vacation with pay.

3.      a.      The Employer shall have the right to schedule the number of employees in each classification who shall receive vacations at a particular time. Employees within a particular classification must select their vacations according to their seniority, unless mutually agreed to by the Union and the Employer. The vacation period of each qualified employee shall be set with due regard to the desire, and preference of the employees, consistent with the efficient operation of the Employer's business. Vacations shall be scheduled on a year-round basis.

    b.      As to a man eligible for a four (4) weeks' vacation, the Employer shall have the option, after working same out with the Union, of paying the man or having him take the fourth (4TH) week off. The fourth (4TH) weeks' vacation need not be consecutive. When the man works the fourth (4TH) week, the man shall receive his vacation pay plus pay for the fi.me worked.

    c.    The vacation period for eligible employees shall consist of consecutive days, provided that in the case of employees entitled to two (2) weeks' vacation, the Employer may split the vacation into two (2) separate one-week periods with the consent of the eligible employee.

    d.    If, in the future, Employer and Union agree that a man-power shortage has developed, an employee may be required to work during the vacation period, but in such event, he shall receive, in addition to his earnings for that week, vacation pay equal to fifty (50) hours at his straight time hourly rate.

    e.    If an employee's vacation falls in a week in which a holiday recognized by this Agreement falls, the employee shall receive an additional day's vacation or a day's pay at the straight in lieu thereof be determined by the Employer.

    f.    Vacation pay shall be paid to the eligible employee before he starts his vacation.

    g.    Upon permanent layoff or under circumstances that do not involve circumstances described in Article 14, paragraphs 1 b, d, e, and paragraphs 2 a, b, c or d, any employee on the seniority list with one or more years of service shall be entitled to vacation pay on a pro rata basis.

    h.    Returning servicemen who would be entitled to receive a vacation under the Uniformed Services Employment and Reemployment Rights Act, by virtue of this Agreement, shall receive a vacation, or pay in lieu thereof, as set forth above. The number of days after his return, but prior to his anniversary date of the year in which the vacation is to be granted, which a serviceman may have missed from work and still qualify for the vacation, shall be apportioned to the time since his return to work. For example, if a serviceman has returned to work six (6) months prior to his anniversary date of the year in which the vacation is to be granted, he shall not have missed work more than twenty-five (25) days on which work was available to him. If he returned three (3) months prior to his anniversary date of the year in which the vacation is to be granted he shall not have missed more than twelve (12) days on which work was made available. (If a fraction results in any computation of the percentage, the next lower number of days shall be considered.)

    i.    The anniversary of the employment date of each employee shall determine to what vacation he or she is entitled.

## ARTICLE 10 - HEALTH, WELFARE, AND INSURANCE

SEE MASTER AGREEMENT

## ARTICLE 11 - TEAMSTERS PENSION FUND

1.      Effective July 1, 2017, the Employer agrees to remit contributions to the Teamsters Pension Fund of Philadelphia and Vicinity, (hereinafter referred to as the "Fund") in the manner described in the Sections below.

2.      Effective July 1, 2017, the Employer will remit contributions at the rate of thirty-one dollars and fifty cents ($31.50) per week per employee to the Fund.

Effective July 1, 2018, the Employer will remit contributions at the rate of thirty-three dollars and eight cents ($33.08) per week per employee to the Fund.

Effective July 1, 2019, the Employer will remit contributions at the rate of thirty-four dollars and seventy-three cents ($34.73) per week per employee to the Fund.

Effective July 1, 2020, the Employer will remit contributions at the rate of thirty-six dollars and forty-seven cents ($36.47) per week per employee to the Fund.

Effective July 1, 2021, the Employer will remit contributions at the rate of thirty-eight dollars and twenty-nine cents ($38.29) per week per employee to the Fund.

3.      The contributions to the Fund shall be made for each seniority employee for each week worked or paid.  Contributions for new employees will commence on the first day following the day that the employee has completed his probationary period.

4.      The sums required above shall be remitted monthly to the Fund.  Such monthly payments shall be submitted to the Fund on or before the 28TH day of the month following the month in which these monies were accrued.

5.      Should the Employer become delinquent in its contributions to the Fund, the Union may suspend the operations of the Employer three (3) working days after receipt of a verification by certified mail, that the Employer is delinquent in its contributory obligations to the Fund.  Copies of the verification shall be sent to the Administrator of the Fund, the Employer and the Local Union.

6.      Failure on the part of the Employer to contribute as specified hereinabove shall make the Employer Liable for all claims, damages, attorney's fees and costs, plus all arrears in payments, plus ten percent (10%) as liquidated damages.

7.      The Employer shall complete and deliver to the Fund, on forms supplied by the Fund, an Employer's Contribution Report stating the name and social security number for each employee employed by the Employer along the contributions accrued during the calendar month.

8.      The Trustees of the Fund or their duly accredited representatives shall have the authority to audit the payroll, tax and wage records of the Employer for all

individuals performing work within the scope of and/or covered by this Agreement, for the purpose of determining the accuracy of contributions to the Fund and adherence to the requirements of this Agreement regarding coverage and contributions. For purposes of such audit, the Trustees or their designated representatives shall have access to the payroll, wage and tax records of all employees.

9.     By execution of this Agreement, the Employer authorizes the Employer's Association to enter into appropriate trust agreements necessary for the administration of the Fund and agrees to be bound by the terms of said trust agreements, thereby waiving all notice thereof and ratifying all actions already taken or to be taken by the Trustees within the scope of their authority.

10.    If an employee is granted a leave of absence by the Employer and if the employee wishes to continue Pension coverage during the period of the approved leave of absence, the Employer shall collect from said employee, prior to the leave of absence being effective, sufficient monies to pay the required contributions into the Fund during the period of absence.

## ARTICLE 12 - LOCAL 929 RETIREMENT PLAN

1.     The Employer will contribute to the Local 929 Retirement Plan (hereinafter referred to as the "Retirement Plan") in the manner described in the sections below for each hour worked, or if not worked, paid for pursuant to the terms of this Agreement covering holidays, vacations and paid sick leave (not worked) to a maximum of forty (40) hours per week.

2.     Effective July 1, 2017, Employer shall contribute into the Retirement Plan the sum of one dollar and thirty cents ($1.30) per hour per employee.

Effective July 1, 2018, Employer shall contribute into the Retirement Plan the sum of one dollar and thirty-five cents ($1.35) per hour per employee.

Effective July 1, 2019, Employer shall contribute into the Retirement Plan the sum of one dollar and forty cents ($ 1.40) per hour per employee.

Effective July 1, 2020, Employer shall contribute into the Retirement Plan the sum of one dollar and forty-five cents ($ 1.45) per hour per employee.

Effective July 1, 2021, Employer shall contribute into the Retirement Plan the sum of one dollar and fifty cents ($1.50) per hour per employee.

3.     Contributions shall be made as set forth in section 2 above for each regular employee covered by this Agreement on the Employer's payroll, for each hour worked, or if not worked, paid for pursuant to the terms of this Agreement covering holidays, vacations and paid sick leave (not worked) to a maximum of forty (40) hours per week.

4.      The sums required by section 2 above shall be remitted monthly to the Retirement Plan Such monthly payments shall be received by the Administrator of the Plan on or before the 28th day of the month following the month in which these monies were accrued.

5.      The Union may suspend the operation of a delinquent Employer three (3) working days after receipt of the verification by telegram that such Employer is delinquent. Copies of the verification shall be sent by the Administrator of the Retirement Plan to the Employer and the Local Union. The Employer shall be liable to each of his employees for any earnings lost because of operations being suspended.

6.      Failure on the part of the Employer to contribute as specified hereinabove, shall make him liable for all claims, damages, attorney's fees, court costs, plus all arrears in payments plus ten percent (10%) liquidated damages.

7.      a.      Each Employer shall complete and deliver to the Administrator of the Retirement Plan, an Employer's Remittance Report, the names, social security number, and total contributions paid or due by the Employer to the Retirement Plan for each regular employee employed by the Employer during the previous calendar month in accordance with the rules md regulations covering such remittances.

b.      The Trustees of the Retirement Plan shall have the right to require any Employer covered by this Agreement to make available to the Trustees or their duly accredited representatives, all time cards, payroll records, social security records, withholding tax records, and state or municipal wage and income tax records for any or all employees covered by this Agreement.

8.      By the execution of this Agreement, the Employer authorizes entry into appropriate Trust Agreements necessary for the administration of such Fund and to designate the Employer Trustees under such Agreement, hereby waiving all notice thereof and ratifying all actions already taken or to be taken by such Trustees within the scope of their authority.

9.      An employee shall be required to abide by the rifles established by the Board of Trustees of the Retirement Plan.

## ARTICLE 13 - INSPECTION PRIVILEGES

Authorized agents of the Union shall have access to the Employer's establishment during working hours for the purpose of adjusting disputes, investigating working conditions, collection of dues, examining time sheets and any other related and relevant records, pertaining to the computation of compensation or fringe benefits of any individuals, ascertaining that the Agreement is being adhered to provided, however, that there is no interruption of the Employer's schedule. Union will stop in the Company's office first prior to gaining access to the Employer's establishment

11

## ARTICLE 14 - DISCHARGE OR SUSPENSION

1.    The Employer may discharge or suspend any employee with just cause.  In all cases involving the discharge or suspension of an employee, the Company must immediately notify the employee of his discharge or suspension and the reason therefore. Notice shall also be given to the Shop Steward, and notice shall be mailed to the Local Union office within one (1) working day from the time of the discharge or suspension Examples of misconduct justifying discharge, suspension or other discipline include but are not limited to the following:

    a.    Violation of employer's absenteeism or lateness policy;
    b.    Dishonesty;
    c.    Calling an unauthorized strike or walkout;
    d.    Engaging in any form of sexual, religious or racial harassment;
    e.    Using, consuming or being under the influence of intoxicating or alcoholic beverages, marijuana, hallucinogens or other illegal drugs or narcotics on Company premises or while conducting Company business;
    f.    Theft or attempted theft of customer's property or another employees' property;
    g.    Unauthorized use of Company property;
    h.    Wearing or carrying weapons of any type on Company premises or in a Company vehicle;
    i.    Defacement of Company property or premises;
    j.    Assault or battery committed on the Employer, co-workers, or any Employer's representative or customers;

2.    In respect to discharge, the Employer must give at least one (1) warning notice of the specific complaint against such employee in writing, and a copy of the same to the Union and the Shop Steward.  The warning notice as herein provided shall not remain in effect for a period of more than twelve (12) months from the date of the occurrence upon which the complaint and warning notice are based, except that no warning notice need be given to an employee before he is discharged if the cause of such discharge is:

    a.    Insubordination;
    b.    Failure to perform assigned duties in a satisfactory manner;
    c.    Driving a Company vehicle without a valid driver's license;
    d.    Carrying unauthorized passengers in Employer's vehicle;
    e.    Absence without notification for one or more consecutive days (except for emergency).
    f.    Physical assault or battery on Employer, a supervisor, co-worker or any Employer's representative or customers.

g.    Theft or embezzlement of Employer monies or property, regardless of value or length of service;

h.    Conviction of a felony;

i.    Sleeping on the job;

j.    Reporting to work while under the influence of alcohol and/ illegal substances and/or possession of alcohol and/or illegal substances while on duty and/or while on Employer property or vehicle;

k.    Possession or use of weapons while on duty and/or while on Employer's property;

l.    Falsification of an employee time card, or punching/marking a time card that is not the employee's own time card.

m.    Intentional or willful destruction or sabotaging of Employer's property and/or equipment or its contractor(s) or agent(s);

m.    Willful destruction of Employer's property and/or equipment;

o.    Dishonesty.

3.    Any employee discharged, must be paid in full for all wages owed him by the Employer within five (5) days from the date of discharge. Earned vacation pay shall also be paid in circumstances enumerated in paragraphs 1a, f, and 2e.

4.    A discharged or suspended employee must advise his Local Union in writing, within two (2) working days after receiving notification of such action against him, of his desire to appeal the discharge or suspension. Notice of appeal from discharge or suspension must be made to the Employer in within five (5) days from the date of discharge or suspension and return to his home terminal, whichever is later.

5.    Should it be proven that an injustice has been done a discharged or suspended employee, he shall be fully reinstated in his position and compensated at his usual rate of pay for lost work opportunity. If the Union and the Employer are unable to agree as to the settlement of the case, then it may be referred to the grievance procedure as set forth in this Agreement.

## ARTICLE 15 - GRIEVANCE PROCEDURE - ARBITRATION

All grievances or disputes arising under terms of this Agreement shall be handled in accordance with the manner provided in this Article.

1.    Grievances must be reduced to and presented within five (5) working days of their occurrence. Individual grievances arising under the terms of this Agreement shall be adjusted in the first instance between the Union's steward and the Employer or his representative. If such individual grievances are not successfully adjusted in the first instance, the matter shall be adjusted, if possible by negotiations between the officers and representatives of the Union and the designated representatives of the Employer. In the case of grievances presented either by the Local Union or the Employer arising under the

13

terms of this Agreement involving general interpretation of the Agreement or of general or uniform operations hereunder, or affecting all or a substantial number of employees generally, the procedure set forth in the immediately preceding sentence shall be followed initially.

2.    In the event that during the term of this Agreement there shall be any grievance, controversy, or dispute arising under the terms of this Agreement, there shall be no suspension of work on the part of the employees, but there shall be an earnest effort to settle any such differences, and same shall be taken up for adjustment as hereinabove provided.  If such matter cannot be adjusted by the representatives of the Employer and the Local Union, then it may be submitted to arbitration in accordance with the rules of the American Arbitration Association.  The decision of the arbitrator shall be final and binding upon the parties to this Agreement.  The cost of the arbitration shall be shared equally by the parties.

Within forty-eight (48) hours after notice by either party to the other of a desire to arbitrate, one arbitrator shall be selected by and represent the Employer, and one arbitrator shall be selected by and represent the Union The two so chosen, shall, within five (5) days after such notice select a third arbitrator within said period. The selection shall be made and conducted under the prevailing rules of the American Arbitration Association.

3.    Except for the failure of the Employer to abide by an arbitration award after a decision by the arbitrator, the Union agrees that there shall be no strikes, stoppages of work, or slowdowns, for any reason whatsoever during the term of this Agreement.

## ARTICLE 16 - FUNERAL LEAVE

In case of death in an employee's immediate family (i.e. spouse, mother, father, sister, brother, children, grandparents, grandchild, mother-in-law, father-in-law) the Employer shall grant such employee a maximum of three (3) days off with pay for the express purpose of attending services for the deceased. The employee must provide the Employer with documentation verifying the death of the employee's immediate family member.

## ARTICLE 17 - WAGES

All employees are to receive the following across-the-board wage increases:

| | |
|---|---|
| Effective 7/6/17 | $0.35 per hour |
| Effective 7/6/18 | $0.25 per hour |
| Effective 7/6/19 | $0.25 per hour |
| Effective 7/6/20 | $0.40 per hour |
| Effective 7/6/21 | $0.40 per hour |

The starting rate shall be $13.00 per hour.

In addition to the yearly contract raises, employees who are not at the top rate shall receive an increase of one dollar ($1.00) per hour (or portion thereof) every six (6) months based upon the employee's anniversary date until such employee reaches the top rate in his classification. Employees in the Starting Rate progression will not receive the negotiated increases until after they have reached the top contract rate.

Warehouse Top Rates:

| | |
|---|---|
| Effective 7/1/17 | $16.85 |
| Effective 7/1/18 | $17.10 |
| Effective 7/1/19 | $17.35 |
| Effective 7/1/20 | $17.75 |
| Effective 7/1/21 | $18.15 |

In addition to the foregoing, all employees with over five years of service as of July 1, 2017 shall receive an additional $0.50 per wage increase effective July 1, 2017. The Warehouse Top Rates shall not preclude this additional $0.50 per hour wage increase from being awarded to eligible employees.

## ARTICLE 18 - WORK WEEK

1.    The regular work week in local area operations shall consist of five (5) days of eight (8) hours each, exclusive of meal period, Monday through Sunday. There shall be two days off for each work week. Days off shall be awarded to the employees based upon seniority within the bargaining unit and based upon the number of slots for days off that occur during any work day. Up to five (5) employees based upon seniority may choose a Monday to Friday regular work week on a semi-annual basis, subject to the operational needs of the Employer as may be determined by the Employer and subject to the right of the Employer to reschedule those employees to cover vacation and personal holiday absences at their straight time rate.

2.    Employees may be required by Employer to work in excess of the regular work week schedules or work day schedules. All employees shall be compensated at the

rate of time and one-half (1½) the regular hourly rate for all hours worked in excess of eight (8) hours in one (1) day and forty (40) hours in one (1) week. There shall be no pyramiding of overtime. Company and Union agree that a sixth (6th) day is clarified to be the day worked after the employee is paid forty (40) regular hours or paid forty (40) hours in combination of regular pay and benefit day/s; (e.g. thirty-two (32) regular and eight (8) sick) until the sick day accrual is exhausted.

3.    All employees shall be required to punch in at the start of the day, and to punch out at the end of the day. The Employer shall pay the employees based on all hours, scheduled, regular and overtime.

4.    All employees shall continue to receive a one-half hour paid lunch period. Lunch period does not count toward overtime in a day.

5.    All employees shall be entitled to two (2) fifteen (15) minute rest periods per eight (8) hour day. Company will also provide employees a fifteen (15) minute break after one (1) hour of overtime.

6.    The Company guarantee seven (7) hours work for each Warehouse employee who reports for work at his regularly scheduled time.

### ARTICLE 19 - HOLIDAYS

1.    In any week in which one of the following legal holidays falls, that is, New Year's Day, Martin Luther King's Birthday, Presidents' Day, Memorial Day, 4th of July, Labor Day, Easter Monday, Thanksgiving Day, Day after Thanksgiving, and Christmas Day, the regular work week shall be four (4) eight (8) hour from Monday to Saturday and the Company shall pay holiday pay for such holidays consisting of eight (8) hours regular straight time pay.

2.    All regular employees may be required by the Employer to work on any of the aforesaid holidays, but in such event, they shall be paid their Holiday Pay plus their straight time rate for the first eight (8) hours of work and then one and one-half times their straight time rate for each hour of work in excess of eight (8) on such holiday.

3.    All regular employees shall be paid for each recognized holiday or the day celebrated as such, if not worked, on the basis of eight (8) hours at their straight time rate of pay, provided they work any day during the payroll period and the full scheduled shift/work day before and after the holiday, unless they were absent on either of such two (2) days because of illness or injury, excluding workers compensation injury, and did not provide the Employer with a verifiable doctor's note. An employee who is scheduled to work a "working holiday" (e.g. Presidents' Day, Day after Thanksgiving, Martin Luther King's Birthday, and Easter Monday) and calls out sick must provide a doctor's note in order to be paid a sick day for that lost day.

16

4.    When a legal named holiday occurs on Saturday all regular employees shall receive holiday pay, consisting of eight (8) hours straight time pay.

5.    When a legal named holiday occurs on Sunday the holiday shall be celebrated on Monday.

6.    Personal Holidays

    a.    Each employee shall be entitled to five (5) personal holidays per year provided seventy-two (72) hours' notice is given.  Approved personal holidays are not subject to bumping.  Company will buy back at eight (8) hours per unused day at the end of the calendar year.
    b.    All new members hired after June 6, 2007 will accrue one (1) day of personal holiday quarterly the first two years of employment and will receive five (5) personal days starting January 1 of the next year.

7.    Black Out/Restrictive Periods

    a.    In order to ensure sufficient staffing during the peak holiday business periods, the Company shall have the right to limit and/or deny requests for vacations, personal days, or leaves of absence during the seven days preceding the following holidays:

| | |
|---|---|
| New Year's Day | Independence Day (July 4th) |
| Valentine Day | Labor Day |
| Easter | Thanksgiving |
| Mother's Day | Christmas |
| Memorial Day | |

## ARTICLE 20 - SUPPLYING HELP

Subject to existing law, if an Employer requests men from the Union (and such request shall not be mandatory), the Union shall attempt to supply competent and experienced help.  In the event the men supplied by the Union are not, for good and sufficient reasons, satisfactory to the Employer, he may at his option request the Union for replacement.  The wages, hours and other conditions of employment of any employee covered by this Agreement shall be as herein provided whether such employee has become a member of the Union or not.

If the Employer requests and the Union does not supply the Employer with competent and experienced help within forty-eight (48) hours, the Employer may hire new employees from any source but he is to give preference to satisfactory employees with experience in his industry.  This clause shall not obligate the Employer to request help from the Union to provide men.

17

## ARTICLE 21 - GENERAL PROVISIONS

1.    Any employee who is scheduled to work on a day that will be an overtime day shall be paid at least for six (6) hours work.

2.    Employer will not be required to give his employees a definite starting time. (Continue Present System.)

3.    Non-Discrimination

a.    The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, national origin, disability or age. Nor will they limit, segregate or classify employees in any way to deprive any individual employee of employment opportunities because of race, color, religion, sex, national origin, disability or age.

b.    The Company and the Union agree that there will be no discrimination by the Company or the Union against any employee because of his or her membership in the Union or because of any employee's activity and/or support of the Union.

4.    The Union recognizes that the Employer covered by this Agreement must compete with other means of transportation, must keep abreast of developments in methods of distribution, and must operate efficiently and economically if Employer is to meet rising costs of operation, including rates of pay and working conditions to members of the Union. Accordingly, the Union agrees that it will cooperate with Employer to the end that his business may be operated to the utmost efficiency and further agrees that it will not interfere in any way with the Employer's right to operate and manage its business, provided that nothing herein will permit the Employer to violate any of the terms and conditions of this Agreement.

5.    The Employer shall not hire extra equipment until his own usable equipment and supply of employees is exhausted. In hiring extra equipment, the Employer, where possible, shall give preference to operators honoring the level of wages, hours and working conditions of this Agreement.

6.    Lie Detector Test

The Company shall not require, request or suggest that an employee or applicant for employment take a polygraph or any other form of lie detector test.

## ARTICLE 22 - MILITARY SERVICE

18

Employees enlisting or entering the military service or naval service of the United States pursuant to the provisions of the Universal Training and Service Act, or as amended, shall be granted all rights and privileges provided by the Act.

## ARTICLE 23 - COMPENSATION CLAIMS

The Employer agrees to cooperate toward the prompt settlement of employee on-the-job injury claims when such claims are due and owing as required by law. The Employer shall provide Workers' Compensation protection for all employees even though not required by state law or the equivalent thereof if the injury arose out of or in the course of employment.

An employee who is injured on the job, and is sent home, or to a hospital, or who must obtain medical attention, shall receive pay at the applicable hourly rate for the balance of his regular shift on that day. An employee who has returned to his regular duties after sustaining a compensable injury who is required by the Workers' Compensation doctor to receive additional medical treatment during his regularly scheduled working hours shall be entitled to the necessary time with pay.

## ARTICLE 24 - MANAGEMENT RIGHTS

The Union recognizes that, except as otherwise expressly limited in this Agreement, it is the exclusive function of the Employer to operate and manage its business, including but not limited to the right to maintain order, efficiency, and to generally operate the facility and its distribution of products; to hire, direct, classify, temporarily reassign, assign, schedule, transfer, evaluate, promote, demote, and lay off employees, and also to suspend, discipline, or to discharge employees for just cause, to make, alter and implement reasonable rules and regulations to be observed by employees; to establish job descriptions and determine job assignments; to determine the classifications, size and duties of the work force at any given time or shift; to establish reasonable production standards; to determine work methods, materials, and equipment; to determine staffing patterns, shifts and reasonable overtime requirements; to assign and allocate work within and between departments; to reorganize, discontinue, or enlarge any department or portions thereof; to determine the kind, type and location of facilities; to implement new and different operational methods and procedures and to introduce new or different services, methods or facilities.

## ARTICLE 25 - EQUIPMENT, ACCIDENTS AND REPORTS

On the employee's anniversary date, the Company will reimburse the employee up to $50.00 for the purchase of work shoes upon presentation of a receipt for the shoes.

It shall not be a violation of this Agreement where employees refuse to operate equipment unless such refusal is unjustified. All equipment which is refused because of not being mechanically sound or properly equipped shall be appropriately tagged so that it cannot be used by other employees until the maintenance department has adjusted the complaint.

Under no circumstances will an employee be required or assigned to engage in any activity involving dangerous conditions of work or danger to person or property or in violation of any applicable statute or court order, or in violation of a government regulation relating to safety of person or equipment. The term "Dangerous Conditions of Work" does not relate to the type of cargo which is hauled or handled. Any employee involved in any accident shall immediately report said accident and any physical injury sustained. When required by his Employer, the employee, before starting his next shift, shall make out an accident report in writing on forms furnished by the Employer and shall turn in all available names and addresses of witnesses to the accident. Failure to comply the provision shall subject such employee to disciplinary action by the Employer.

Employees shall immediately, or at the end of their shift, report all defects of equipment Such reports shall be made on a suitable form furnished by the Employer and shall be made in multiple copies, one copy to be retained by the employee. The Employer shall not ask or require any employee to take out equipment that has been reported by any other employee as being in an unsafe operating condition until same has been approved as being safe by the mechanical department.

When the occasion arises where an employee gives written report on forms in use by the Employer of a vehicle being in an unsafe working or condition, and receives no consideration from the Employer, he shall take the matter up the officers of the Union who will take the matter up with the Employer.

## ARTICLE 26 - WORK ASSIGNMENTS

The Employer agrees to respect the jurisdictional rules of the Union and shall not direct or require its employees or persons other than the employees in the bargaining units here involved to perform work which is recognized as the work of the employees in said units. This is not to interfere with bona fide contracts with bona fide unions.

## ARTICLE 27 - EMPLOYEE'S BAIL

1.      Employees will be bailed out of jail if accused of any offense in connection with the faithful discharge of their duties, and any employee forced to spend time in jail or in courts shall be compensated at his regular rate of pay. In addition, he shall be entitled to reimbursement for his meals, transportation, court costs, etc., provided, however, that faithful discharge of duties shall in no case include compliance with any other involving commission of a felony. In case an employee shall be

subpoenaed as a company witness, he shall be reimbursed for all fine lost and expenses incurred.

## ARTICLE 28 - ABSENCE

1.    Time off for Union Activities

The Employer agrees to grant the necessary time off, without discrimination or loss of seniority rights and without pay, to any employee designated by the Union to attend a labor convention or serve in any capacity on other official Union business, provided forty-eight (48) hours written notice is given to the Employer by the Union, specifying length of time off.  The Union agrees that, in making its request for off for Union activities, due consideration shall be given to the number of men affected in order that there shall be no disruption of the Employer's operations due to lack of available employees.

2.    Leave of Absence

Any employee desiring leave of absence from his employment shall secure written permission from both the Union and Employer.  The maximum leave of absence shall be for ninety (90) days and may be extended for like periods.  Permission for same must be secured from both the Union and Employer.  During the period of absence, the employee shall not engage in gainful employment in the same industry.  Failure to comply with this provision shall result in the complete loss of seniority rights for the employee involved.  Inability to work because of proven sickness or injury shall not result in the loss of seniority rights, provided, that such inability to work does not last beyond one (1) year.

The employee must make suitable arrangements for continuation of Health and Welfare and Pension payments before the leave may be approved by either the Union or the Employer.

An employee on a paid leave of absence or disability leave for a non-work-related injury or illness shall not continue to accrue paid leave (vacation leave, sick days or personal leave) or be entitled to holiday pay beyond the first ninety (90) days of the leave. An employee on an unpaid leave of absence shall not accrue paid leave during the period of unpaid leave.

## ARTICLE 29 - JURY DUTY

When an employee is required to perform jury duty, he will be paid the difference between the pay he receives as a juror and his normal regular straight time wages for the

period of jury duty, provided that, if required by Employer, he works on days when not actually serving on the jury duty.

## ARTICLE 30 - SICK DAYS

Each employee shall be entitled to four (4) sick days per calendar year. Said sick days shall not be cumulative from year to year. If at the end of each contract year such sick day or sick days have not been taken, the Employer shall pay such employee eight (8) hours pay at his prevailing straight time hourly rate for each sick day or days not used.

All employees hired June 6, 2007 will accrue one (1) day of sick quarterly the first two years of employment

## ARTICLE 31 - LATENESS AND ABSENCE POLICY

1.    ABSENCE:

An employee shall be disciplined according to the schedule set forth below upon the occurrence of an unexcused absence:

| | |
|---|---|
| First absence | First written warning |
| Second absence | Two (2) day suspension |
| Third absence | Five (5) day suspension |
| Fourth absence | Subject to discharge |

An unexcused absence consists of one or more consecutive days of absence by an employee who did not notify the Company more than one hour before the start of his shift that he is unable to report for work and did not obtain permission for the absence from the Employer. Any employee who is absent without permission for three (3) or more consecutive working days shall be considered to have voluntary quit their employment. Any employee who is absent on a holiday when work is scheduled shall be subject to discipline in accordance with the penalty schedule set forth above. An absence due to illness or injury that is not a paid sick day under the Agreement shall be deemed "unexcused" unless the employee is hospitalized or the absence is covered by the federal FMLA or New Jersey's Family Leave Act. The Employer reserves the right to require documentation of any such absence.

2.    LATENESS:

A lateness shall be defined as any employee who reports to their work station more than five (5) minutes and less than three (3) hours beyond his/her posted starting time or more than five (5) minutes beyond his/her return from lunch time. The penalties for lateness shall be as follows:

| First lateness | Verbal warning |
| Second lateness | First written warning |
| Third lateness | Two day suspension |
| Fourth lateness | Five day suspension |
| Five lateness | Subject to discharge |

Any employee reporting to his work station late from any paid break period will be subject to disciplinary action as set forth in this Article.

Any absence, lateness, warning letter or disciplinary action taken pursuant to the above shall not remain in effect, nor be admissible in any proceeding between the parties hereto as evidence of the Employer's basis for disciplinary action for a period of more than twelve (12) months from the date of such absence, lateness, warning letter or discipline. Each absence, lateness, warning letter or disciplinary action shall be deemed to be removed from the employee's work record subsequent to the expiration of such twelve (12) month period. Any disciplinary action taken by the Employer pursuant hereto shall not be subject to the grievance and appeals procedures until an employee is discharged.

## ARTICLE 32 - LABOR/MANAGEMENT COMMITTEE

During the course of the Agreement, the Employer and Union shall jointly maintain and support a Labor/Management Committee, which shall meet at least annually (once every year), at the request of either party, to discuss matters of mutual concern as they arise including but not limited to, the dissemination of general information of interest to the parties, discussions on the administration of this Agreement; the discussion of grievances which have not been processed beyond complying with the initial pre-arbitration steps of the grievance process when such discussions are mutually agreed to by the parties; notify the Union of changes contemplated by the Employer which may affect members of the Union; and provide the Union representative the opportunity to share the views of their members and/or make suggestions on the subjects of interest to their members, including alleged inequities in the treatment of employees in the bargaining unit.

No more than three (3) Union representatives, in addition to the President of Local 929, shall participate on the Labor/Management Committee.

Meeting shall be scheduled after the work day of the Union Representative so as to not result in the loss of pay of any Union member.

The Labor/Management Committee shall not be authorized to negotiate or bargain over the terms of this Agreement and no representations made during a Labor/Management Committee meeting shall be construed to modify the terms of this Agreement in the absence of a written agreement signed by the parties.

## ARTICLE 33 – IBT D.R.I.V.E. AUTHORIZATION AND DEDUCTION

The Employer agrees to deduct from the paycheck of all employees who submit authorization cards and are covered by this Agreement voluntary contributions to D.R.I.V.E. D.R.I.V.E. shall notify the Employer of the amounts designated by each contributing employee that are to be deducted from his/her paycheck on a weekly basis for all weeks worked. The phrase "weeks worked" excludes any week other than a week in which the employee earned a wage. The Employer shall transmit to:

National D.R.I.V.E.
P.O. Box 758637
Baltimore, MD 21275

Send on a monthly basis, in one check the total amount deducted along with the name of each employee on whose behalf a deduction is made, the employee's social security number and the amount deducted from the employee's paycheck. No such authorization shall be recognized if in violation of State and Federal law. No deductions shall be made which is prohibited by applicable law.

## ARTICLE 34 -TEAMSTERS LOCAL 929
## POLITICAL ACTION COMMITTEE ("PAC")

The Employer shall deduct, from the gross wages or salary of each employee who voluntarily executes the Teamsters Local 929 Political Action Committee (PAC) payroll deduction authorization form that is Appendix 2 to this Agreement, the contributions at the frequency of deduction so authorized on that form, and remit those contributions to the Union at the same time that the Employer remits to the Union the Union dues that are separately voluntarily authorized by employees to be deducted from their gross wages or salaries and remitted to the Union pursuant to this Article. The Employer must remit PAC contributions and Union dues to the Union by separate checks or wire transfers. With each PAC contribution remittance, the Employer shall provide the Union with a written itemization setting forth as to each contributing employee his or her name, address, occupation, rate of PAC payroll deduction by the payroll or other applicable period, and contribution amount. The parties acknowledge that the Employer's costs of administration of this PAC payroll deduction have been taken into account by the parties in their negotiation of this Agreement and have been incorporated in the wage, salary and benefits provisions of this Agreement.

### ARTICLE 35 - TERMINATION CLAUSE

This Agreement shall be in full force and effect from July 1, 2017 to and including June 30, 2022 and shall continue in full force and effect from year to year

24

thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other at least sixty (60) days prior to the date of expiration.

It is further provided that where no such cancellation or termination notice is served and the parties desire to continue said Agreement but also desire to negotiate changes or revisions in this Agreement, either party may serve upon the other a notice, at least sixty (60) days prior to the expiration date of this Agreement, advising that such party desires to continue this Agreement but also desires to revise or change terms or conditions of such Agreement.

IN WITNESS WHEREOF, the undersigned have affixed their signatures as legal representatives of the Employer and the Union respectively this ___9___ day of September, 2017 to be effective as of July 1, 2017.

WITNESS:

INC.

J. AMBROGI FOOD DISTRIBUTION,

WITNESS:

TEAMSTERS LOCAL UNION NO.929

KATHLEEN A. THOMAS
NOTARY PUBLIC OF NEW JERSEY
ID # 2384889
My Commission Expires 4/20/2019

25

Warehouse

# EXHIBIT E



**ATTENTION**            **ATTENTION**

# TEAMSTERS LOCAL 929

# <u>UPDATE NOTICE OF</u>

# <u>PENDING STRIKE</u>

## Open Meeting for all Employees of
## AMBROGI FOODS and KRISTY'S KUTS

<u>**Meeting Date:**</u>  **SUNDAY,  APRIL 25, 2021**
<u>**Meeting time** </u>:  **Promptly at 11:00am**
<u>**Meeting Place**</u>:
The Holiday Inn  1 Pureland Drive
Interstate 295 At Exit 10, Swedesboro, NJ 08085

The Local 929 Officers will be in attendance for all questions or concerns

Also in attendance will be a Spanish Interpreter
to assist in the Meeting.

Please contact Local 929 with all questions regarding the meeting
1-215-288-1430