**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| J. AMBROGI FOOD DISTRIBUTION, INC., | : | |
| | : | |
| *Plaintiff,* | : | CIVIL ACTION |
| | : | |
| v. | : | No. <u>2:21-cv-01907</u> |
| | : | |
| TEAMSTERS LOCAL UNION No. 929, | : | : |
| *Defendant.* | : | |

## <u>MEMORANDUM</u>

Jones, II   J.                                                                            March 29, 2022

### I.   Introduction

J. Ambrogi Food Distribution, Inc. (hereinafter "Plaintiff") commenced this action on April 26, 2021 against Teamsters Local Union No. 929 (hereinafter "Defendant"). Presently before the Court is Defendant's Motion to Dismiss (hereinafter "Motion"), which lists several reasons for dismissal, including: that Plaintiff failed to state damages for its breach of contract claim; the Collective Bargaining Agreements' (hereinafter "CBAs") no-strike provisions do not extend to non-arbitrable disputes; the matter should be stayed pending the National Labor Relations Board (hereinafter "NLRB")'s ruling on a similar issue; and the impropriety of declaratory relief in this instance. For the reasons stated herein, Defendant's Motion is denied.

### II.   Factual Background[1]

Plaintiff is a produce distribution company that deals with perishable inventory that regularly delivers to customers on a "just in time" basis. Am. Compl., ECF No. 9, ¶¶ 2, 34.

---

[1] At the motion to dismiss phase, the Court must accept all factual allegations as true and construe the Complaint in the light most favorable to Plaintiff. *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66*, 580 F.3d 185, 192 (3d Cir. 2009).

Defendant is a union that represents the drivers, pullers, packers, custodians, and warehouse employees who work at Plaintiff's New Jersey facility. Am. Compl. ¶ 6. Defendant and Plaintiff are parties to four (4) CBAs that have an effectuation period of July 1, 2017 through June 30, 2022. Am. Compl. ¶ 7. Each CBA contains identical no-strike provisions. These provisions, found in Article 15, Sections 2 & 3, read:

> 2. In the event that during the term of this Agreement there shall be any grievance, controversy, or dispute arising under the terms of this Agreement, there shall be no suspension of work on the part of the employees, but there shall be an earnest effort to settle any such differences, and same shall be taken up for adjustment as hereinabove provided. If such matter cannot be adjusted by the representatives of the Employer and the Local Union, then it may be submitted to arbitration in accordance with the rules of the American Arbitration Association. The decision of the arbitrator shall be final and binding upon the parties to this agreement. The cost of the arbitration shall be shared equally by the parties.
>
> . . .
>
> 3. Except for the failure of the Employer to abide by an arbitration award after a decision by the arbitrator, the Union agrees that there shall be no strikes, stoppages of work, or slowdowns, for any reason whatsoever during the term of this Agreement.

*See* CBAs, attached to Am. Compl. as Exhibits A-D (hereinafter "Exs. A-D").

Kristy's Kuts, Inc. (hereinafter "Kristy Kuts") is an entity that shares common ownership with Plaintiff and previously had a CBA with Defendant regarding employment. Am. Compl. ¶ 10.  In February of 2021, a majority of Kristy Kuts's employees indicated that they no longer wanted Defendant to represent them; as a result, the Union President, Rocky Bryan, Jr., threatened to strike. Am. Compl. ¶¶ 11-13.

In March of 2021, Plaintiff received reports that Defendant was planning a strike at one of their locations, so they notified Defendant that if a strike occurred, they would seek relief under Section 301 of the Taft-Hartley Act. Am. Compl. ¶¶ 14, 16. In response, Defense counsel cited Article 5 of the CBAs as authorizing a strike, which reads in relevant part:

> It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action nor shall such employee be permanently replaced in the event an employee refuses to enter upon any property involved in a primary labor dispute, or refuses to go through or work behind any primary picket line, including the primary picket line of Unions party to this Agreement, and including primary picket lines at the Employer's places of business.

Am. Compl. ¶¶ 17-18. Following this, Defendant sent a first strike notice to Plaintiff on April 14, 2021, and they proceeded to hold a meeting on April 25 to discuss a strike on May 1 or 2, 2021. Am. Compl. ¶¶ 21–22. As a result of this meeting, some of Plaintiff's employees did not report for work as scheduled on May 1, 2021. Am. Compl. ¶ 28. On May 7, 2021, Defendant sent another strike notice to Plaintiff. Am. Compl. ¶ 29. This notice resulted in a meeting on May 16, 2021, to advise employees that Defendant may order them to refuse Plaintiff's instructions in handling and/or delivering certain products. Am. Compl. ¶ 31. No strike resulted from this second meeting.

Despite this, Plaintiff claims they have incurred significant monetary damages from Defendant's actions. Am. Compl. ¶ 35. Specifically, given the perishable nature of their inventory and having to replace employees, Plaintiff states the following: "the Union's violation of the CBAs has caused and will continue to cause damages to the Company. . . the precise amount of [damages] cannot be ascertained at this time. . . but which the Company reasonably believes will amount to between Three and Four Million Dollars." Am. Compl. ¶¶ 37, 43. Plaintiff argues that Defendant violated Section 301 of the Taft-Hartley Act and asks this Court to issue a declaratory judgment clarifying the parties' obligations under the relevant provisions of the CBAs. Am. Compl. ¶¶ 37–50.

## III.   Procedural History

On April 26, 2021, Plaintiff commenced the present action in the Eastern District of Pennsylvania. *See* Compl., ECF No. 1. Though Defendant filed a Motion to Dismiss said

Complaint on May 17, 2021 (ECF No. 8), the Motion was mooted by Plaintiff filing an

Amended Complaint on May 28, 2021 (ECF No. 9).  Presently before Court is Defendant's

Motion to Dismiss, filed on June 11, 2021.  ECF No. 11.  Therein, Defendant argues that

Plaintiff failed to assert damages for its breach of contract claim; the CBAs' no-strike provisions

do not extend to non-arbitrable disputes; the matter should be stayed pending the NLRB's ruling

on a similar issue; and the impropriety of declaratory relief in this instance. On June 25, 2021,

Plaintiff filed a Response in Opposition (hereinafter "Response") (ECF No. 13), rebutting such

allegations. With these filings, Defendant's Motion is ripe for the Court's review.

## IV.   Standards of Review

### A.  Federal Rule of Civil Procedure 12(b)(6)

Defendant moves to dismiss Plaintiff's claim under Federal Rule of Civil Procedure

12(b)(1) and (b)(6). In deciding a Rule 12(b)(6) motion, courts must "accept all factual

allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation

marks and citation omitted). "[A]ll civil complaints must now set out sufficient factual matter to

show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d

Cir. 2009) (internal citation omitted). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

It is incumbent upon a plaintiff to plead with clarity. *Id.* "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Phillips*,

515 F.3d at 233 (internal citation omitted). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### B. Federal Rule of Civil Procedure 12(b)(1)

Fed. R. Civ. P. 12(b)(1) authorizes dismissal of a complaint for a court's lack of jurisdiction over the subject matter of a case. "At issue in a Rule 12(b)(1) motion is the court's very power to hear the case." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir.2006) (internal quotations omitted). There are two types of Rule 12(b)(1) motions: those that attack a court's subject matter jurisdiction on the complaint's face and those that attack subject matter jurisdiction as a matter of fact. *Id.* at 302 n. 3. Where a defendant does not challenge the truthfulness of the facts material to a jurisdictional analysis, a court evaluates the motion as a facial attack, and it accepts the plaintiff's factual allegations as true in assessing whether the court has jurisdiction. *Id.* Where a defendant challenges factual allegations that are material to the court's jurisdiction, there is no presumption of truthfulness for plaintiff's allegations, and "the existence of disputed material facts will not preclude [the court] from evaluating for [itself] the merits of [a] jurisdictional claim[]." *Id.*

Here, Defendant's allegations regarding 12(b)(1) do not attack any facts in the Amended Complaint. Rather, it urges that "[b]ecause Plaintiff failed to plead a sufficient [Taft-Hartley Act] claim, the Court must also dismiss the claims under the Declaratory Judgment Act due to lack of subject matter jurisdiction." Mot. 15. Such is a facial attack, and the Court will accept Plaintiff's factual allegations as true in assessing whether the Court has jurisdiction. *Petruska*, 462 F.3d at 302 n.3.

## V.  Discussion

### A.  Inadequately Pleading Damages

Defendant, relying on state law, argues that Plaintiff's Amended Complaint insufficiently pleads damages.[2] Specifically, Defendant states that the damages alleged are insufficient because Plaintiff does not plead any inventory was lost, nor do they list a dollar figure from employees not coming to work. Mot. 6. Plaintiff rebuts this position and argues that their Amended Complaint satisfies the obligation of asserting damages at the pleading stage. Resp. 9. Having reviewed the filings, the Court agrees with Plaintiff.

The Federal Rules of Civil Procedure set out a liberal notice pleading regime. *See* Fed. R. Civ. P. 8; *Brader v. Allegheny Gen. Hosp.*, 167 F.3d 832, 838 (3d Cir. 1999) (stating that the Federal Rules set out "liberal standards of federal notice pleading."). "[P]laintiffs 'need not plead the exact dollar amount of their loss. Instead, plaintiffs must provide enough specificity to give defendants notice of their possible damages.'" *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 594 (D.N.J. 2016) (quoting *Giordano v. Saxon Mortg. Servicing*, No. 12-CV-7937, 2014 WL 4897190, at *6 (D.N.J. Sep. 30, 2014)); *see also Sheet Metal Workers Loc. 19 v. Keystone Heating & Air Conditioning*, 934 F.2d 35, 40 (3d Cir. 1991) ("Rule 8(a)(3) of the Federal Rules of Civil Procedure does not require that the demand for judgment be pled with great specificity.").

Plaintiff claims that because of Defendant's threats to strike, some of their employees did not report for work on May 1, 2021, thereby violating the CBAs. Am. Compl. ¶ 28. Plaintiff then spells out the nature of the damages:

---

[2] Defendant cites *Corestates Bank, N.A. v. Cutillo*, 723 A.2d 1053 (Pa. Super. Ct. 1999), for the proposition that damages are a requisite element of this breach of contract claim. Mot. 6. As discussed *infra*, Pennsylvania contract law does not govern this action.

> Because the Company deals largely with perishable inventory, the Union's
> violation of the CBAs has caused and will continue to cause damages to the
> Company as a natural and probable consequence, the precise amount of which
> cannot be ascertained at this time but which the Company reasonably believes will
> amount to between Three and Four Million Dollars ($3,000,000 to $4,000,000).

Am. Compl. ¶ 43. These allegations read together give defendant "notice of their possible

damages" resulting from the first strike in May 2021. *Block*, 221 F. Supp. 3d at 594

(internal quotation marks omitted). At this early pleading stage, Plaintiff's Amended

Complaint states sufficient damages[3] to survive a motion to dismiss.[4] Accordingly,

Defendant's Motion as to Plaintiff's insufficient pleadings of damages is denied.

### B.  Interpreting the No-Strike Provision

Defendant also asks this court to dismiss Plaintiff's CBA violation claim on the ground

that the no-strike clause does not prohibit *all* strikes but only those arising from arbitrable

disputes. Mot. 9–14. Defendant argues that they did not violate the CBAs because the reason for

the strike—Kristy Kuts no longer wanting Defendant to represent them—is non-arbitrable. Mot.

9-14. To support this, Defendant urges this court to apply coterminous interpretation and hold

that the no-strike clause was a *quid pro quo* for an arbitration clause. Mot. 9-14.

Plaintiff responds that the no-strike clause includes non-arbitrable disputes and that the

coterminous interpretation doctrine does not apply. Resp. 10-16. As further explanation, Plaintiff

points to the two (2) no-strike provisions and reasons that the first applies to arbitrable disputes,

---

[3] As a seemingly side argument, Plaintiff suggests that it is unnecessary for them to allege any damages for breach of a CBA. Resp. 9 n. 6. In support of this, they cite to *Pittsburgh Mack Sales & Servs., Inc.*, 580 F.3d at 189-90. However, that case dealt with how Congress relaxed federal jurisdictional requirements in bringing a claim under 29 U.S.C. § 185. At no point in the opinion does the Third Circuit state that damages are not required in bringing a violation under such statute. Moreover, because the Court finds that Plaintiff has pled sufficient damages, it is unnecessary for the Court to consider whether damages are required for purposes of deciding the present Motion.
[4] Defendant also argues that, assuming actual damages were not sufficiently pled, Plaintiff's alleged prospective damages for future strikes against Plaintiff are not appropriate for this Court to consider. Mot. 7-8. However, Plaintiff's mention of possible harm from future strikes is appropriate and relevant to their claim for declaratory relief. Therefore, any mention of future damages or future strikes will be considered as they relate to Plaintiff's request for declaratory relief.

while the second[5] applies to non-arbitrable disputes. Resp. 7–10. Having reviewed the filings, the Court agrees.

Put simply, the Court must determine whether Defendant waived its right to strike *in toto* or only for issues subject to arbitration.[6] The Third Circuit has historically considered "'coterminous interpretation' when construing the scope of a no-strike clause and its application to nonarbitrable disputes." *Just Born, Inc. v. Local Union No. 6, BCTGM*, No. 16-CV-5114, 2017 WL 6731647, at *3 (E.D. Pa. Dec. 29, 2017). Applying coterminous interpretation, "a no-strike clause is presumed to be no broader than the arbitration clause in a collective bargaining agreement." *Pacemaker Yacht Co. v. NLRB*, 663 F2d 455, 457 (3d Cir. 1981). "This rule, however, does not preclude a different result if warranted by the specific language of the CBA, or by extrinsic evidence." *Just Born, Inc.*, 2017 WL 6731647, at *3 (citing *Int'l Bhd. of Elec. Workers v. NLRB*, 826 F.2d 1283, 1293-94 (3d Cir. 1987)). In determining whether coterminous interpretation applies to the present case, the rationale in *Pacemaker Yacht Co.* and *Just Born, Inc.*[7] is illustrative.

In *Pacemaker Yacht Co.*, there were two (2) no-strike clauses in question. The first was found in Article IX: Grievance Procedure, and stated:

> 9.1 Should difference arise between the Company and its employees or between the Company and the Union as to the interpretation or application of the provisions of this Agreement, there shall be no suspension or stoppage of work

---

[5] The second no-strike clause states that "there shall be no strikes, stoppages of work, or slowdowns, for any reason whatsoever during the term of this Agreement." Resp. 13-15.

[6] By raising this issue in their Motion, Defendant agrees to this Court's authority to interpret the CBAs at this stage in the proceedings. Plaintiff does not challenge the Court's authority but, rather, actively engages Defendant's argument. Therefore, both sides agree, implicitly, that the scope of the CBAs no-strike provisions can be determined in this opinion. The Court's independent research also reveals precedent supporting that position. *See, e.g.*, *Voegele Mech., Inc. v. Local Union No. 690*, 403 F. Supp. 3d 447. 455–60 (E.D. Pa. 2019) (interpreting—at the motion to dismiss stage—the scope of the CBA's arbitration clause); *Negron v. Oxford Airport Tech. Servs.*, No. 09-CV-4326, 2009 WL 50158, at *12 (E.D. Pa. Jan. 6, 2009) (deciding that "the court must interpret and apply the Northwest CBA to resolve plaintiff's claims" at the motion to dismiss phase).

[7] Though the Court has closely considered the merits of *Just Born, Inc.*, as will be explained further, it finds them inapposite to the present case.

and an earnest effort shall be made to settle such differences immediately or in the manner described below. (grievance procedures follow)

*Pacemaker Yacht Co.* 663 F.2d at 458. The second no-strike clause was found in Article

X: No Strikes or Lockouts, and said:

> 10.1 So long as this Agreement is in effect, the Company agrees that there shall be no lockouts and the Union agrees that there will be no strikes, picketing, slow downs, deliberate curtailment of production, work stoppages of any kind or other interruption of the Company's operations. In the event one or more employees fail to abide by the provisions of this article, the Company retains full right to take any disciplinary action it deems necessary, including discharge.

> 10.2 In the event that there is any disagreement as to whether or not the employee has participated in such conduct, then this shall be deemed to be a grievance to be settled in accordance with Article IX.

*Id.*

Reviewing such clauses, the Court reasoned that coterminous interpretation did not apply. "First, the language of Article X plainly prohibits all 'strikes, picketing . . . or other interruption of the Company's operations.'" *Id.* Second, "[i]t is also clear that the parties intended Article IX to bar strikes over arbitrable disputes and Article X to bar strikes over all other disputes." *Id.* A coterminous interpretation of Article X's no-strike clause would have it cover the same exact ground as Article IX's, rendering Article X superfluous and a nullity. *Id.* Avoiding such a result is in line with the "'settled rule of contract interpretation that contract language should not be interpreted to render the contract promise illusory or meaningless.'" *Id.* (quoting *Retail Clerks Local 455 v. NLRB*, 166 U.S. App. D.C. 422, 510 (D.C. Cir. 1975)).

Following the Third Circuit's methodology, the Court must conduct a two-part inquiry. First, it must consider the wording of the relevant no-strike provision to see how strongly and broadly the language bars strikes. Second, the Court needs to look to the relationship between the two no-strike clauses to see if a coterminous interpretation would render one superfluous.

9

The first of the two relevant no-strike provisions in this case is Article X, Section

2 and reads:

> In the event that during the term of this Agreement there shall be any grievance, controversy, or dispute arising under the terms of this Agreement, *there shall be no suspension of work on the part of the employees, but there shall be an earnest effort to settle any such differences, and same shall be taken up for adjustment as hereinabove provided*. If such matter cannot be adjusted by the representatives of the Employer and the Local Union, then *it may be submitted to arbitration* in accordance with the rules of the American Arbitration Association. The decision of the arbitrator shall be final and binding upon the parties to this agreement. The cost of the arbitration shall be shared equally by the parties.

Exs. A–D, Article 15, Section 2 (emphasis added). The second is found in Section 3 and

states:

> Except for the failure of the Employer to abide by an arbitration award after a decision by the arbitrator, *the Union agrees that there shall be no strikes, stoppages of work, or slowdowns, for any reason whatsoever during the term of this Agreement*.

Exs. A-D, Article 15, Section 3 (emphasis added).

Considering the analysis of *Pacemaker Yacht Co.*, applying coterminous interpretation to

Section 3 would be inappropriate. First, the language in Section 3 is explicitly strong, barring a

global right to strike during the term of the CBA. Such global waivers should be upheld when

they are "clearly and unmistakably" established, as they plausibly are here. *Pacemaker Yacht

Co.*, 663 F.2d at 458. *Contra Just Born, Inc.*, 2017 WL 6731647, at *4 (The clause from

*Pacemaker Yacht* "is in stark contrast to the no-strike clause in the instant CBA, which prohibits

strikes 'until the grievance procedure has been exhausted.'").

Second, while Section 2 speaks to the parties' abilities to resolve disputes through

arbitration, Section 3 contains categorical language barring *all* strikes. Thus, because Section 2

already covers whether Defendant can strike over arbitrable disputes, Section 3 could plausibly

be interpreted to bar strikes over nonarbitrable disputes. Finding otherwise would go against the

"settled rule of contract interpretation that contract language should not be interpreted to render the contract promise illusory or meaningless." *Pacemaker Yacht Co.*, 663 F.2d at 458.

For these reasons, the Court finds that coterminous interpretation is plausibly inappropriate, and Defendant's Motion regarding whether the no-strike provision covers non-arbitrable disputes is denied.

### C.  Request to Stay

In the event their Motion is denied, Defendant asks this court to stay this proceeding pending a ruling from the NLRB on a related matter.[8] Mot. 13–14. Plaintiff responds that this Court owes no deference to the NLRB on contract interpretation, so the request to stay should be denied. Resp. 22. The Court agrees with Plaintiff.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). "[A] court may hold one lawsuit in abeyance to abide the outcome of another [proceeding] which may substantially affect it or be dispositive of the issues." *Bechtel Corp. et al. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO et al.*, 544 F.2d 1207, 1215 (3d Cir. 1976).

"Although the Board has occasion to interpret collective-bargaining agreements in the context of unfair labor practice adjudication, the Board is neither the sole nor the primary source of authority in such matters." *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 202 (1991) (internal citation and quotation marks omitted). "Arbitrators and courts are still the principal sources of contract interpretation." *Id.* (quoting *NLRB v. Strong*, 393 U.S. 357, 360–61 (1969)).

---

[8] Specifically, the NLRB is currently considering whether Defendant violated the National Labor Relations Act by threatening Plaintiff's employees with fines, suspension, and denial of future employment opportunities if they declined to strike. Mot. 14-15; Resp. 21-22.

"Section 301 of the Labor Management Relations Act, 1946 (LMRA), 29 U.S.C. § 185, 'authorizes *federal courts* to fashion a body of federal law for the enforcement of . . . collective bargaining agreements.'" *Id.* (quoting *Textile Workers*, 353 U.S. at 451 (1951) (emphasis in original)).

> We would risk the development of conflicting principles were we to defer to the Board in its interpretation of the contract, as distinct from its devising a remedy for the unfair labor practice that follows from a breach of contract. We cannot accord deference in contract interpretation here only to revert to our independent interpretation of collective-bargaining agreements in a case arising under § 301.

*Id.* at 203 (citing *Local Union 1395, Int'l Bhd. of Elec. Workers v. NLRB*, 797 F.2d 1027, 1030–31 (D.C. Cir. 1986)). "The NLRB's primary jurisdiction does not preempt a court's jurisdiction over § 301 actions, even if the matter is arguably subject to § 7 or § 8 of the NLRA." *Mack Trucks, Inc. v. Int'l Union, et al.*, 856 F.2d 579, 585 (3d Cir. 1988). In the face of this instruction, and because this is a matter of contract interpretation, this Court owes no deference to the NLRB's ruling on this matter and denies Defendant's request to issue a stay.

### D.  Federal Question Jurisdiction and Declaratory Judgment

Defendant also argues that declaratory relief is inappropriate because the Declaratory Judgment Act only applies to breaching parties, and Plaintiff, as the non-breaching party, cannot seek such recourse.[9] Mot. 15–16. Plaintiff rebuts that declaratory judgment is not reserved for

---

[9]Along with arguing that declaratory relief is inappropriate, Defendant characterizes Plaintiff's request for declaratory relief as a hidden request for an injunction and claims that such is improper. Mot. at 17. This argument is not one new to this Circuit. *See Bituminous Coal Operators' Ass'n v. Int'l Union*, 585 F.2d 586, 595 (3d Cir. 1978) ("The International contends, however, that if the district court should issue a declaratory judgment specifying the union's obligations in the ongoing relationship, the effect of that judgment would be identical to the effect of an injunction issued in the terms of the contract."). However, as precedent shows us, such an argument is meritless as an injunction and a declaratory judgment are different. *See id.* ("Unlike an injunction, which commands immediate obedience on pain of contempt, a declaratory judgment has approximately the same sanctioning effect with respect to future conduct as does a judgment in an action at law for money damages."). The Third Circuit expressed approval of declaratory judgment in these types of situations:

> The fundamental difference between the declaratory remedy and the damage remedy does not lie in their judgment preclusion effects. Rather, the difference is that the declaratory remedy may be resorted to before there has been a change in the status quo which results in injury, while the

breaching parties, and the Third Circuit has held that a non-breaching party may seek such relief where the defendant union declined to honor a contractual commitment. Resp. 23.  Having reviewed the filings, the Court agrees with Plaintiff.

The Declaratory Judgment Act states, in relevant part: "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[O]ne of the principal goals of the Declaratory Judgment Act is to allow a party, when uncertainty has been injected into a legal relationship, to have an adjudication clarifying its rights 'without having to wait until his adversary should decide to bring suit, and to act at his peril in the interim.'" *Mack Trucks, Inc.*, *v. Int'l Union, et al.*, 671 F. Supp. 1027, 1032 (E.D. Pa. 1987) (quoting *Shell Oil Co. v. Frusetta*, 290 F.2d 689, 692 (9th Cir. 1961); *Berlitz Schl. of Languages of America, Inc. v. Donnelly & Suess, Inc.*, 84 F. Supp. 75, 77 (E.D. Pa. 1949)). However, "[t]he Declaratory Judgment Act has only a procedural effect. Although it enlarges the range of remedies available

---

damage remedy presupposes the occurrence of injury and the need to compensate that injury with money. When the issue of contract interpretation has not been relegated by the parties to an arbitrable forum, we can think of no policy reasons why the declaratory judgment should be generally unavailable in labor contract litigation. Such unavailability would encourage resort to self-help, with the resultant damages, to resolve disputes over the extent of contractual obligations. That is the very result the declaratory judgment remedy was designed to avoid.

*Id.* at 596. Moreover, Defendant's arguments regarding the Norris-LaGuardia Act and its limitations on the Court's ability to issue injunctions are unfounded and must be denied. Mot. 17. Notably:

The fundamental difference between the declaratory remedy and the damage remedy does not lie in their judgment preclusion effects. Rather, the difference is that the declaratory remedy may be resorted to before there has been a change in the status quo which results in injury, while the damage remedy presupposes the occurrence of injury and the need to compensate that injury with money. When the issue of contract interpretation has not been relegated by the parties to an arbitrable forum, we can think of no policy reasons why the declaratory judgment should be generally unavailable in labor contract litigation. Such unavailability would encourage resort to self-help, with the resultant damages, to resolve disputes over the extent of contractual obligations. That is the very result the declaratory judgment remedy was designed to avoid.

*Bituminous Coal Operators' Ass'n*, 585 F.2d at 596.

in federal courts, it does not create subject matter jurisdiction. Thus, a court must find an independent basis for jurisdiction before it can consider a declaratory judgment action." *Mack Trucks, Inc.*, 856 F.2d at 583 n.4.

In addition to requiring independent subject-matter jurisdiction before using the Declaratory Judgment Act, the claim must be ripe for judicial resolution. *Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n Maya Van Rossum*, 894 F.3d 509, 522 (3d Cir. 2018). "'The contours of the ripeness doctrine are particularly difficult to define with precision when a party seeks a declaratory judgment.'" *Id.* (quoting *Marathon Petroleum Corp. v. Sec'y of Fin. for Del.*, 876 F.3d 481, 496 (3d Cir. 2017)). In determining ripeness of an action seeking declaratory relief, Courts consider three (3) factors: (1) the adversity of the parties' interests; (2) the conclusiveness of the judgment; and (3) the practical utility of that judgment. *Id.* (citing *Marathon Petroleum Corp.*, 876 F.3d at 496).

As stated above, Plaintiff has properly pled a 29 U.S.C. § 185 claim. To adopt Defendant's position—that Plaintiff cannot use the Declaratory Judgment Act because they are the non-breaching party—would frustrate the purpose of the Act. It would force parties to continue interacting with one another until one side decides to risk a breach, ask for declaratory relief, and hope the Court adopts their reading of the relevant law/contract. This position is untenable given the broad language of the statute allowing courts to "declare the rights and other legal relations of *any interested party seeking such declaration*, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Furthermore, cases like this are routinely brought under 29 U.S.C. § 185 and the Declaratory Judgment Act. *See, e.g.*, *Resco Prods. v. Int'l Union of Bricklayers & Allied Craftworkers*, No. 20-CV-127, 2021 WL 1197620, at *6–7 (W.D. Pa. Mar. 30, 2021) (finding that because the court had jurisdiction to hear

14

Plaintiff's 29 U.S.C. § 185 claim, it could proceed under the Declaratory Judgment Act);

*Schneider's Dairy v. Serv. Pers. & Emples of the Dairy Indus., Teamsters Local Union No. 205*,

No. 13-CV-1325, 2013 WL 6485367, at *1–2 (W.D. Pa. Dec. 10, 2013) (bringing an action

under 29 U.S.C. § 185(a) and the Declaratory Judgment Act to ask for a judicial declaration that

the CBA does not require Plaintiff to arbitrate a particular grievance filed by the Union).

 Turning to whether Plaintiff's action is ripe for declaratory relief, the Court looks to the

aforementioned factors: the adversity of the parties' interests; the conclusiveness of the

judgment; and the practical utility of that judgment. Adversity is assessed by asking "[w]hether

the claim involves uncertain and contingent events, or presents a real and substantial threat of

harm." *Wayne Land & Mineral Grp. LLC*, 894 F.3d at 523 (quoting *Surrick v. Killion*, 449 F.3d

520, 527 (3d Cir. 2006)). "It is not necessary for the party seeking review to have suffered a

completed harm in order to establish adversity of interest so long as there is a substantial threat

of real harm that remains throughout the course of the litigation." *Id.* (quoting *Surrick*, 449 F.3d

at 527).

 The claim here involves a real and substantial threat of harm. Taking the facts in the

complaint as true, Defendant has already commenced one stoppage or slowing of work, while

also threatening to do so again through the second-strike notice. This threat of harm will remain

absent a declaratory judgment clarifying the terms of the CBAs. Therefore, the parities adversity

of interest is established.

 The second factor is the conclusiveness of the judgment. "A claim is fit for adjudication

if a 'declaratory judgment would in fact determine the parties' rights, as distinguished from an

advisory opinion based on a hypothetical set of facts.'" *Id.* (quoting *Surrick*, 449 F.3d at 528).

"'Cases presenting predominately legal questions are particularly amenable to a conclusive

determination in a pre[-]enforcement context, and generally require less factual development.'" *Id.* (quoting *Surrick*, 449 F.3d at 528).

Here, declaratory judgment would not be based upon a hypothetical set of facts or be akin to an advisory opinion. This issue of declaratory relief is predominantly legal—interpreting the CBAs to determine the scope of the no-strike provisions. This legal analysis can be done with little or in the absence of facts. Thus, a judgment doing so would be conclusive in "'determin[ing] the parties' rights'" while not being based on a "'hypothetical set of facts.'" *Id.* (quoting *Surrick*, 449 F.3d at 528).

The last factor the Court must consider is the practical utility of the judgment. A judgment has utility when it "'will affect the parties' plans of actions by alleviating legal uncertainty.'" *Id.* at 524 (quoting *Surrick*, 449 F.3d at 529). "In the context of the Declaratory Judgment Act, utility exists when the judgment would 'materially affect the parties and serve ... [to] clarify[] legal relationships so that plaintiffs ... [can] make responsible decisions about the future.'" *Id.* (quoting *Surrick*, 449 F.3d at 529).

In this case, declaratory judgment would clarify the legal relationship between parties. Currently, neither knows whether Defendant's actions were permitted by the CBAs. Declaratory judgment would allow them to move forward with certainty about the ways in which non-arbitrable disputes are to be handled. This would be of great utility to both parties as it would help them make responsible decisions when voicing disputes in the future.

Considering the foregoing, this Court has jurisdiction over Plaintiff's Declaratory Judgment Act claim. The factors for assessing the prudence of declaratory judgment also point in favor of issuing a declaratory judgment.  Therefore, Defendant's request for this court to not consider Plaintiff's claim under the Declaratory Judgment Act is denied.

## VI.    Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss is denied.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II J.